04 234

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK AND
MAUREEN YORK

VS C. A. NO. 04-551S

DAY TRANSFER COMPANY,
APOLLO VAN LINES, INC. AND
ANDREWS EXPRESS &
STORAGE WAREHOUSE, INC.

VS

WILLIAMS MOVING COMPANY

**DAY TRANSFER MOVING & STORAGE'S OBJECTION TO THE PLAINTIFFS' MOTION TO FILE A 2ND AMENDED COMPLAINT**

Now comes the defendant Day Transfer Moving & Storage incorrectly sued as "Day Transfer Company", hereinafter referred to as Day Transfer and objects to the plaintiffs' motion for leave to file a second amended complaint. The said defendant relies upon the attached memorandum.

Thomas C. Plunkett #1662
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
TEL (401) 831-2900
FAX (401) 331-7123

Sarah L. Fifield, Esq.
DOMBROFF & GILMORE
40 Broad Street
Suite 2000
New York, NY 10004-2382

TO Joseph R. Palumbo, Jr., Esq.
194 Valley Road
Middletown, RI 02842

Daniel Crocker, Esq.
180 South Main Street
Providence, RI 029093

Thomas L. Grady, Esq.
Lenihan, Grady & Steele
6 Canal Street
P. O. Box 541
Westerly, RI 02891

James P. Marusak, Esq.
GIDLEY SARLI & MARUSAK
One Turks Head Place, Suite 900
Providence, RI 02903

George W. Wright, Esq.
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: July 11, 2005

Barbara A. Brown

04 234

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK AND
MAUREEN YORK

VS C. A. NO. 04-551S

DAY TRANSFER COMPANY,
APOLLO VAN LINES, INC. AND
ANDREWS EXPRESS &
STORAGE WAREHOUSE, INC.

VS

WILLIAMS MOVING COMPANY

**MEMORANDUM OF DAY TRANSFER MOVING & STORAGE IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT**

Defendant Day Transfer Moving & Storage, incorrectly sued as "Day Transfer Company," hereinafter referred to as "Day Transfer," by and through its attorneys, Kiernan, Plunkett & Redihan and Dombroff & Gilmore, hereby submits its Memorandum of Law in Partial Opposition to plaintiff's Motion to File a Second Amended Complaint, to the extent it includes Count II and III against Day Transfer.

STATEMENT OF MATERIAL FACTS

1. On or about June 4, 2004, Jason York contracted with Day Transfer to have his household property shipped interstate from its origin in Guadalupe, Texas to York's new residence in Rhode Island.

2. At the time of the shipment, the parties' relationship was governed by a comprehensive contract of carriage entitled "Household Goods Bill of Lading"

which was issued by Day Transfer, a true copy of which is annexed hereto as Exhibit A.

3. Day Transfer subcontracted its contractual obligation to arrange packing, interstate hauling, and storage services attendant to this interstate move to Williams Moving Company, third party defendant herein. This subcontracting of the transportation services in the industry is known as "interlining."

4. The dispute now before the court concerns a claim that the plaintiff's household goods were damaged either during the interstate transportation or during their storage at Andrew's warehouse.

5. As a result, this entire dispute concerns a shipment over which the Surface Transportation Board has jurisdiction pursuant to 49 U.S.C. Section 13501(1)(A), and over which the provisions of the Carmack Amendment 49 U.S.C. Section 14706 would govern.

## ARGUMENT

### I. AS AN INTERSTATE MOTOR CARRIER, DAY TRANSFER'S ACTIVITIES AND OPERATIONS ARE GOVERNED BY THE ICC TERMINATION ACT 49 U.S.C. SECTION 13501.

The Surface Transportation Board (formerly the Interstate Commerce Commission) has jurisdiction over transportation by motor carrier "and the procurement of that transportation" wherever the property is transported "between a place in . . . a State and a place in another State." 49 U.S.C. Sect. 13501. The Carmack Amendment applies to shipments over which the Surface Transportation Board has jurisdiction. See Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697 (11th Cir.

1986); Chubb Group of Insurance Companies v. H.A. Transportation Systems, Inc., 243 F. Supp.2d 1064 (2002); Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 799 (4th Cir. 1992); Project Hope v. M/V IBN Sina, et al., 250 F.3d 67, 70-71, 73 (2d Cir. 2001).

Plaintiff erroneously argues that Day Transfer should be deemed a "broker" because "it was not involved in the actual transport of plaintiffs' household goods" but rather, "engaged the services of Williams Moving Company to hire" third parties. Plaintiff misunderstands the standard for distinguishing between "broker" and "motor carrier."

A "motor carrier" is defined as the entity "providing motor vehicle transportation for compensation." 49 U.S.C. Sect. 13102(12). "Transportation" is not merely trucking, but is broadly defined to include providing "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit. . . storage, handling, packing . . ." among other services. 49 U.S.C. Sect. 13102(19). Additionally, under the law, a "motor carrier" is the entity which issues the bill of lading whereby it is (1) authorized to transport the shipper's goods and (2) it is legally bound to transport them. Custom Cartage, Inc. v. Motorola, Inc., 1999 U.S. Dist. LEXIS 1684 (N.D. Ill. Feb. 16, 1999).

In their proposed Second Amended Complaint, Plaintiffs themselves acknowledge that Day Transfer (1) is a motor carrier within the meaning of the ICC Termination Act, (2) was engaged to provide interstate transportation services under the Act, and (3) issued its bill of lading under the Act. See plaintiff's Second Amended Complaint, annexed hereto as **Exhibit B**, specifically paragraphs 4 and 5. Plaintiffs contradict themselves in their Memorandum of Law by erroneously concluding that the "nature of what Day Transfer did *sounds* like brokerage services" because a subcontractor, Williams Moving, arranged the plaintiffs' transportation services.

Memorandum of Joseph Palumbo, Esq., page 2. Plaintiffs have misinterpreted the state of the law and the holding in Custom Cartage v. Motorola. As the Second Amended Complaint acknowledges, Day Transfer is the entity which issued the bill of lading and the entity legally bound to transport them. See also **Exhibit A**, Day Transfer bill of lading, referencing Day Transfer as the carrier. Day Transfer sold transportation services to the plaintiffs, agreeing to be responsible to arrange packing, hauling and storage services to the plaintiffs. It is of no moment that Day Transfer subcontracted the responsibility to arrange transportation services to Williams Moving. Interlining is common practice in the shipping industry and does not affect Day Transfer's status as the party legally bound to arrange the transportation services i.e. the "motor carrier." The litmus test is the bill of lading entered into with the plaintiffs which clearly lists Day Transfer as carrier and does not contain any reference to Williams Moving. Day Transfer is a "motor carrier" conducting operations in interstate commerce and providing "transportation" under the Act. See 49 U.S.C. Sect. 13102(12),(19).

Conversely, a "broker" is defined as "a person, *other than a motor carrier*, . . .that as a principal or agent sells . . . transportation by motor carrier for compensation." 49 U.S.C. Sect. 13102(2). Day Transfer does not meet this definition, as plaintiff and Day Transfer agree, it is a bonified motor carrier legally bound to provide transportation services under 49 U.S.C. Sect.13102(19).

## II. THE INTERSTATE COMMERCE ACT PREEMPTS ALL STATE AND COMMON LAW REMEDIES FOR LOSS OF GOODS MOVING IN INTERSTATE COMMERCE AND PLAINTIFF IS LIMITED TO CLAIMS CONSISTENT WITH THE CARMACK AMENDMENT.

Plaintiffs' motion should be denied to the extent it seeks to add causes of action sounding in negligence and brokerage liability against Day Transfer. Such actions

against a motor carrier are preempted by the ICCTA. Federal law preempts state statutory and common law remedies when Congress expressly provides that the federal law supplants state authority in a particular field, or when its intent to do so may be inferred from a pervasive system of regulation which does not leave sufficient vacancy within which any state can act. See Louisiana Public Service Comm'n v. F.C.C., 476 U.S. 355, 368 (1986); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Preemption may also be inferred where state legislation would impede the purposes and objectives of legislation enacted by Congress. See Hillsborough County v. Automated Medical Lab., Inc., 471 U.S. 707, 713 (1985).

The United States Supreme Court has long interpreted the Interstate Commerce Act as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading. In Adams Express Co. v. Croninger, 226 U.S. 491 (1913), the Supreme Court held that:

> "Almost every detail of the subject [of the liability of a carrier under a bill of lading] is covered so completely [by the Interstate Commerce Act] that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." Id.

The Supreme Court restated this broad view of preemption of claims against a common carrier in numerous cases following Adams Express. See Chicago, R I & P R Co. v. Cramer, 232 U.S. 490 (1914); Barrett v. City of New York, 232 U.S. 14 (1914); Atchison, T. & S.F. Ry. Co. v. Harold, 241 U.S. 371 (1916); Missouri Pac. R. Co. v. Porter, 273 U.S. 341 (1927); New York, N.H. & Hartford R. Co. v. Nothnagle, 346 U.S. 128 (1953).

Every United States court of appeals that has considered the issue has similarly concluded that the ICCTA[1] preempts a shipper's common law and state statutory claims for loss of goods moving in interstate commerce through a common carrier. preempts a shipper's common law and state statutory claims for loss of goods moving in interstate commerce through a common carrier. See Intech, Inc. v. Consolidated Freightways, Inc., 836 F.2d 672, 677 (1st Cir. 1987) (First Circuit Court rejects the plaintiff's state law claims as completely preempted by the federal Act as the damage to plaintiff's property occurred during the transportation and thus, the suit is "nothing more than an action for damages against the delivering carrier" for which "the [Interstate Commerce Act] provides the exclusive remedy."); North American Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 234 (2d Cir. 1978) ("Congress has created a broad, comprehensive scheme covering interstate shipment of freight, aimed at preventing preferential treatment among shippers and establishing national equality of rates and services"); Ting-Hwa Shao v. Link Cargo Limited, 986 F.2d 700, 706 (4th Cir. 1993) ("the [Interstate Commerce Act] was intended by Congress to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment"); Air Products and Chemicals, Inc. v. Illinois Central Gulf R. Co., 721 F.2d 483, 487 (5th Cir. 1983) ("Congress intended by the [Interstate Commerce Act] to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common

---

[1]The Interstate Commerce Act [the "Carmack Amendment"] was amended and recodified effective January 1, 1996. Prior to this recodification, the Interstate Commerce Commission was given jurisdiction under 49 U.S.C. § 10521 over all shipments of goods in interstate commerce through a motor common carrier. See 49 U.S.C. § 10521(a)(1)(A)(West 1995). Pursuant to the I.C.C. Termination Act, the Interstate Commerce Commission was abolished and jurisdiction over interstate shipment of property was transferred to the Surface Transportation Board pursuant to 49 U.S.C. § 13501.

carrier"), cert. denied sub nom, Illinois Central Gulf R. Co. v. Air Products and Chemical. Inc., 469 U.S. 832 (1984); W.D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419, 421 (6th Cir. 1972) ("as to... whether or not the [Interstate Commerce Act] preempted common law suits of the nature of the first count stated in this case..., we hold that it did."); Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir. 1987)("the remedy provision of the [Interstate Commerce Act] preempts all state and common law remedies inconsistent with the Interstate Commerce Act"), cert. denied, 485 U.S. 913 (1988); Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261, 1264 (8th Cir. 1984) ("all actions against a common carrier... are governed by the federal statute"); Hughes Aircraft Co. v. North American Van Lines, 970 F.2d 609, 613 (9th Cir. 1992) ("it is clear that the [Interstate Commerce Act] established a uniform national liability policy for interstate carriers" which "preempts any state common law action against [a carrier] acting solely as a common carrier").

The Supreme Court of the United States has held that the Interstate Commerce Act is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation...." Georgia, Florida & Alabama Ry. v. Blish Milling Co., 241 U.S. 190, 196 (1916). Plaintiffs cannot evade the effect of the Act by denominating their action as one other than a claim under the Act. "A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed." Id. at 197. See also Neal v. Republic Airlines, Inc., 605 F. Supp. 1145 (N.D. Ill. 1985) and Starmakers Pub. Corp. v. Acme Fast Freight, Inc., 615 F. Supp. 787 (S.D.N.Y. 1985).

The case law cited herein demonstrates that state law and common law claims such as the negligence claims in Counts II and III of the Second Amended Complaint by the Yorks are preempted. The Court should deny leave to file an amended complaint which contains state or common law claims versus Day Transfer.

## III. PLAINTIFFS' ARTFUL DESCRIPTION OF NEGLIGENCE CLAIMS FOR CONSEQUENTIAL DAMAGES CONTRAVENES THE PURPOSE AND AIMS OF THE CARMACK FEDERAL PREEMPTION SCHEME.

Plaintiffs attempt to circumvent the limitations of the Carmack Amendment by describing their alleged consequential losses, clearly barred by the Amendment, as damages caused by defendants' failure to "remediate." If such a claim is allowed, it would severely undermine the entire purpose and scheme of the federal Carmack Amendment.

> "A carrier providing transportation *or service* subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and *is providing transportation or service subject to jurisdiction* under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading." 49 U.S.C. Sect. 14706(a)(1.)

According to the foregoing statute, losses which occur during the provision of any services i.e. procurement of transportation related to the bill of lading, storage and warehousing, are all covered by the Act. To the extent that plaintiffs seek damages for a wrong which occurred during the provision of these services, the remedies fall within the scope of the Act and the state law and common law claims are preempted. Plaintiffs' Complaint makes clear they are seeking to recover for water damage which occurred during the transportation. Plaintiffs' hotel bills, lodging, meals and other consequential damages set forth in Count II of the Second Amended Complaint are all barred. The plaintiffs, in their Complaint, allege that "during the course of delivery of said items to the [plaintiffs'] residence . . .plaintiff Maureen York discovered for the first time the presence of mildew, mold and water damage on . . .[plaintiffs'] possessions." **Exhibit B**, paragraph 9. Thus, plaintiffs' Complaint demonstrates that the alleged

damage had to have occurred during transportation of the property, bringing the claims within the purview of Carmack. Any ruling allowing recovery for damages beyond the limits set forth in the bill of lading would defeat the purpose and scheme of the Carmack Amendment. To hold otherwise would open the floodgates for claims beyond the contractual limitations. In future interstate shipping cases, plaintiffs would only have to use the term "failure to remediate" in order to disable the entire bill of lading contract including the parties' agreed per pound damage limits in favor of unlimited state law recovery and the federal scheme would be undermined.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion to file a Second Amended Complaint should be denied to the extent plaintiffs seek to add state law and/or common law claims against Day Transfer, including claims of negligence and brokerage liability. To the extent that plaintiffs' seeks to file a Second Amended Complaint which does not include state law and/or common law claims and which is confined to damages under the Carmack Amendment, Day Transfer would not object.

DOMBROFF & GILMORE

By: Sarah L. Fifield
Sarah L. Fifield, Esq

40 Broad Street, Suite 2000
New York, N.Y. 10004
Telephone: (212) 742-8450

KIERNAN, PLUNKETT & REDIHAN

By: ____________________
Thomas C. Plunkett, Esq.(1662)
91 Friendship Street
Providence, R.I. 02903
Telephone: (401) 831-2900

Attorneys for Defendant
Day Transfer Moving & Storage

TO Joseph R. Palumbo, Jr., Esq.
194 Valley Road
Middletown, RI 02842

Daniel Crocker, Esq.
180 South Main Street
Providence, RI 029093

Thomas L. Grady, Esq.
Lenihan, Grady & Steele
6 Canal Street
P. O. Box 541
Westerly, RI 02891

James P. Marusak, Esq.
GIDLEY SARLI & MARUSAK
One Turks Head Place, Suite 900
Providence, RI 02903

George W. Wright, Esq.
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: July 11, 2005

Barbara Braun

# EXHIBIT A

UNIFORM HOUSEHOLD GOODS BILL OF LADING AND FREIGHT BILL

NO. T 57926 MO
I.C.C. NO. 72958

**DAY TRANSFER CO.**
2094 SOUTHERN EXPRESSWAY
CAPE GIRARDEAU, MISSOURI 63703
PHONE: 573-335-3327

VEHICLE NO. DT-05-13-04

Nº 5134

IN CASE OF NEED: CONTACT TRAFFIC CONTROL MGR. AT ABOVE ADDRESS OR TELEPHONE NUMBER

CONNECTING OR INTERLINING CARRIER (IF ANY) ______ ADDRESS ______ PHONE ______

RECEIVED, subject to classifications, tariffs, rules and regulations including all terms printed or stamped hereon or on the reverse side hereof in effect on the date of issue of this bill of lading

SHIPPER YORK, JASON D. MAJ DATE 04 JUN 04 — CONSIGNED TO YORK, JASON D. MAJ
ADDRESS 2721 ASHLEY MEADOW — ADDRESS ______
FLOOR ______ ELEV. ______ TEL. 210/566-8035 — FLOOR ______ ELEV. ______ TEL. ______
CITY SCHERTZ COUNTY GUADALUPE STATE TX — CITY NEWPORT COUNTY NEWPORT STATE RI

| ACTUAL PICKUP DATE | AGREED PICKUP DATE or period of time | GUARANTEED PICKUP DATE | AGREED DELIVERY DATE | GUARANTEED DELIVERY DATE |
|---|---|---|---|---|
| | 04 JUN 04 (if applicable) | (if applicable) | RDD 17 JUN 04 (if applicable) Only Alternative | (if applicable) |

**NOTIFICATION OF CHARGES**

SHIPPER REQUESTS NOTIFICATION OF ACTUAL CHARGES TO PARTY SHOWN BELOW ☐ (C.O.D. SHIPMENTS ONLY)
NOTIFY ______
ADDRESS ______ TEL. ______
IN CASE OF DELAY OR IF CHARGES EXCEED ESTIMATE BY MORE THAN 10%
NOTIFY ______
ADDRESS ______ TEL. ______
Payment in Cash or Certified Check, Money Order, Traveler's Check or Cashier's Check
BILLING INFORMATION ZY711231
NAME ______
ADDRESS ______
CITY & STATE ______
ATTENTION OF ______

INSURANCE: The shipper declares the actual cash value of the shipment to be $ XXXX
Insurance Rate $ XXXXXXX per hundred dollars, premium $ XXXXXXXXXXXX
Signature ______

Notice: Carrier's tariffs, by this reference, are made a part of this bill of lading and may be inspected at carrier's facility, or, on request, carrier will furnish a copy of any tariff provision containing carrier's rates, rules or charges governing the shipment.

**SPECIAL SERVICES**

☐ EXPEDITED SERVICE ORDERED BY SHIPPER DELIVERED ON OR BEFORE ______
☐ SHIPMENT COMPLETELY OCCUPIED A ______ CU. FT. VEHICLE
☐ EXCLUSIVE USE OF A ______ CU. FT. VEHICLE ORDERED
☐ SPACE RESERVATION ______ CU. FT. ORDERED
☐ ______ ☐ ______

Tariff D-8 SEC 3

| | ORIGINAL | REWEIGH |
|---|---|---|
| Gross | | |
| Tare | | |
| Net | | |
| Min. Wt. | | |

| SERVICES | CHARGES |
|---|---|
| Transportation FROM ZIP 78154 TO ZIP 02840 | |
| Origin/Destination Fee | |
| Fuel Surcharge (when applicable) | |
| Insurance Surcharge (when applicable) | |
| Valuation | |
| Containers, Packing & Unpacking | |
| Storage-In-Transit at ZIP Location ______ Date In ______ Date Out ______ | |
| SIT Pickup and Delivery | |
| Extra Pickups or Deliveries No. ______ at ZIP(s) ______ | |
| Extra Labor, Special Services or Waiting Time | |
| Bulky Articles | |
| Additional Weight Additives | |
| Advanced Charges | |
| Shuttle Service | |
| Self-Storage/Mini-Warehouse Pickups or Deliveries | |
| Overtime Pickups or Deliveries | |
| Other Additional Services | |
| | |
| | |

**FULL AND CUSTOM CONTAINER SERVICE**

FULL SERVICE — NOTE: For shipments with origin/destination in California, Customer agrees that title to all packing materials and other property sold to customer passes to customer prior to the transportation of such property to the customer by carrier. The sale price of the containers and container material is $ ______ This sale price is included in the total packing service charge.

CONTAINERS & PACKING $ ______ UNPACKING $ ______

| CUSTOM SERVICE CARTON DESCRIPTION | CONTAINERS & PACKING QUANTITY | UNPACKING QUANTITY |
|---|---|---|
| DISH PACKS | | |
| CARTONS Less Than 3 cft. | | |
| CARTONS 3 cft. | | |
| CARTONS 4.5 | | |
| CARTONS 6 | | |
| CARTONS 6.5 | | |
| WARDROBE CTN. | | |
| CRIB MATTRESS CTN. | | |
| MATTRESS CTN., TWIN/TWIN LONG | | 1N 4134 HAL |
| MATTRESS CTN., DOUBLE (NOT EXCEEDING 54" X 75") | | |
| MATTRESS CTN., KING/QU. (EXCEEDING 54" X 75") | | SIT # 4168001 |
| HEAVY DUTY | | |
| OTHER | | |
| OTHER | | |
| TOTAL CONTAINERS & PACKING | $ | TOTAL UNPACKING $ |

TOTAL CONTAINERS & PACKING AND UNPACKING

**CUSTOMER'S DECLARATION of VALUE**
**THIS IS A TARIFF LEVEL OF CARRIER LIABILITY - IT IS NOT INSURANCE**

You must select, in your own handwriting, one of the following two options for your shipment. The option you select establishes your mover's maximum liability for your goods, subject to the rules contained in your mover's tariff.

OPTION 1) Full (Replacement) Value Protection. If any article is lost, destroyed or damaged while in your mover's custody, your mover will either 1) repair the article to the extent necessary to restore it to the same condition as when it was received by your mover, or pay you the cost of such repairs; or 2) replace the article with an article of like kind and quality, or pay you for the cost of such a replacement. An additional charge applies for this option.

To select Option 1, you must write, on the line below, either a lump sum dollar amount for the value of your shipment that may not be less than $6000, or an amount per pound that may not be less than $4.00 per pound, whichever is greater.

The value of my shipment is: X per GBL

You must also select one of the following deductible amounts that will apply for your shipment:

No Deductible (______) Initial $250 Deductible (______) Initial $500 Deductible (______) Initial

OPTION 2 Released Value of 60 Cents Per Pound Per Article. If any article is lost, destroyed or damaged while in your mover's custody, your mover's liability is limited to the actual weight of the lost, destroyed or damaged article multiplied by 60 cents per pound per article. This is the basic liability level and is provided at no charge. It is considerably less than the average value of household goods.

To select Option 2, you must write, on the line below, the words "60 cents per pound".

The value of my shipment is: ______

Your signature is required here: I acknowledge that I have 1) declared a value for my shipment and selected a deductible amount, if appropriate, and 2) received and read a copy of the mover's brochure explaining these provisions and the applicable charges.

Customer's Signature X [signature] Date X 060404

| | |
|---|---|
| Minimum Weight or Volume Charge | |
| Terms & Conditions for Payment of Total Charges Charge ☐ Prepaid ☐ C.O.D. ☐ | |
| Maximum amount to be paid at time of delivery to obtain delivery of an estimated C.O.D. shipment | |
| BALANCE DUE (30 Working Days, Credit Extended if Requested) | |
| Prepayment Collected By | |
| **BALANCE DUE** ▶ | |

DELIVERY ACKNOWLEDGEMENT: SHIPMENT WAS RECEIVED IN APPARENT GOOD CONDITION EXCEPT AS NOTED ON INVENTORY, AND SERVICES ORDERED WERE PERFORMED.

SHIPPER ______ ______

REC'D FOR STORAGE ______ CONSIGNEE ______
BY ______ DATE ______ DATE ______

**Extraordinary (Unusual) Value Article Declaration**

I acknowledge that I have prepared and retained a copy of the "Inventory of Items Valued in Excess of $100 Per Pound Per Article" that are included in my shipment and that I have given a copy of this inventory to the mover's representative. I also acknowledge that the mover's liability for loss of or damage to any article valued in excess of $100 per pound will be limited to $100 per pound for each pound of such lost or damaged article (based on actual article weight), not to exceed the declared value of the entire shipment, unless I have specifically identified each article for which a claim for loss or damage is made on the attached inventory.

Customer's Signature ______ Date ______

© COPYRIGHT 2002, MILLER PRINTING, INC., 1290 MOTOR PKWY., HAUPPAUGE, NY 11749 (631) 582-4900

FORM 1 XXXX (Rev. 7/02)

ExH. A.

# CONTRACT TERMS AND CONDITIONS

Except when transportation is performed under the provisions of Item 1 (b) of tariff, the following Contract Terms and Conditions apply to all transportation performed by carrier in addition to all other rules, regulations, rates, and charges in this and other applicable tariffs, which are available for inspection at the location(s) specified by the carrier.

This contract is subject to all the rules, regulations, rates and charges in carrier's currently effective applicable tariffs including, but not limited to, the following terms and conditions:

SECTION 1: The carrier or party in possession shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage-in-transit EXCEPT loss, damage or delay caused by or resulting:

(a) From an act, omission or order of shipper;

(b) From defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein;

(c) From (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (A) by any government or sovereign power, or by any authority maintaining or using military, naval or air forces or (B) by military, naval or air forces, or (C) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence; (4) seizure or destruction under quarantine or customs regulations; (5) confiscation by order of any government or public authority; or (6) risks of contraband or illegal transportation or trade.

(d) From delay caused by strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder, and from loss or damage when carrier, after notice to shipper or consignee of a potential risk of loss or damage to the shipment from such causes, is instructed by the shipper to proceed with such transportation and/or delivery, notwithstanding such risk.

(e) From Acts of God.

SUBJECT: in addition to the foregoing, to the further following limitations on the carrier's or the party's in possession liability:

The carrier's or the party's in possession maximum liability shall be either:

(1) The lump sum value declared by shipper, which may not be less than $5,000 or $4.00 per pound multiplied by the actual weight of the shipment, in pounds, whichever is greater,

(2) The actual loss or damage not exceeding sixty (60) cents per pound of the weight of any lost or damaged article when the shipper has released the shipment to carrier, in writing, with liability limited to sixty (60) cents per pound per article, or

(3) The actual (depreciated) value of the lost or damaged articles if carrier fails to obtain a shipper's valuation declaration and signature on the Customer's Declaration of Value notice on the face of this document.

SECTION 2. The carrier shall not be liable for delay caused by highway obstruction, or faulty or impassable highways, or lack of capacity of any highway, bridge or ferry, or caused by breakdown or mechanical defect of vehicles or equipment, or from any cause other than negligence of the carrier, nor shall the carrier be bound to transport by any particular schedule, means, vehicle or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination.

SECTION 3.

(a) The shipper, upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment. The extension of credit to either shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges.

(b) The shipper shall indemnify carrier against loss or damage caused by inclusion in the shipment of explosives or dangerous articles or goods.

SECTION 4. If for any reason other than the fault of carrier, delivery cannot be made at address shown on the face hereof, or at any changed address of which carrier has been notified, carrier, at its option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery or at other available points, at the cost of the owner, and subject to a lien for all accrued tariff charges.

SECTION 5. If shipment is refused by consignee at destination, or if shipper, consignee or owner of property fails to receive or claim it within fifteen (15) days after written notice by United States mail addressed to shipper and consignee at post office addresses shown on face hereof, or if shipper fails or refuses to pay applicable charges in accordance with carrier's applicable tariff, carrier may sell the property at its option, either (a) upon notice in the manner authorized by law, or (b) at public auction to highest bidder for cash at a public sale to be held at a time and place named by carrier, thirty (30) days notice of which sale shall have been given in writing to shipper and consignee, and there shall have been published at least once a week for two consecutive weeks in a newspaper of general circulation at or near the place of sale, a notice thereof containing a description of the property as described in the bill of lading, and the names of the consignor and consignee. The proceeds of any sale shall be applied toward payment of tariff charges applicable to shipment and toward expenses of notice, advertising and sale, and of storing, caring for and maintaining property prior to sale, and the balance if any shall be paid to owner of property; PROVIDED that any perishable articles contained in said shipment may be sold at public or private sale without such notices, if, in the opinion of carrier, such action is necessary to prevent deterioration or further deterioration.

SECTION 6. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

DS-213L Rev 4/02

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JASON YORK and MAUREEN YORK** | } | |
| **Plaintiffs** | } | |
| **v.** | } | **CA No. 04-551S** |
| **DAY TRANSFER MOVING & STORAGE CO., APOLLO VAN LINES, INC., ANDREWS EXPRESS & STORAGE WAREHOUSE, INC., and WILLIAMS MOVING COMPANY** | } | |
| **Defendants** | } | |
| **v.** | } | |
| **WILLIAMS MOVING COMPANY** | } | |
| **Third Party Defendant** | } | |

## SECOND AMENDED COMPLAINT

### Allegations Common To All Counts

1. Plaintiffs Jason York and Maureen York (the "Yorks") currently reside in Montgomery, Alabama.

2. In or about February, 2004 plaintiff Jason York, a Major in the United States Marine Corps., received orders of a permanent change of station from San Antonio, Texas to the Naval War College in Newport, Rhode Island. Thereupon, the Yorks began to make arrangements to move all of their household goods and possessions to Rhode Island.

ExH. B

3. The Yorks located housing for themselves and their minor children at 505 Wolcott Avenue, Middletown, Rhode Island and on or about March 3, 2004 signed a lease of said premises for the period September 2004 through June 30, 2005, with an agreed actual move-in date of August 16, 2004.

4. Defendant Day Transfer Moving & Storage Co. ("Day Transfer") is a Missouri corporation conducting business in interstate commerce and providing transportation services within the meaning of the ICC Termination Act, so-called.

5. Day Transfer was engaged to provide services with respect to the transportation of the Yorks' household goods and belongings to Newport, Rhode Island and issued its bill of lading, as carrier, in connection therewith.

6. On information and belief, Day Transfer contracted with defendant Williams Moving Company ("Williams Moving") to arrange for the third party transportation services, and, Williams Moving hired Lonestar Relocation Service of San Antonio, Texas ("Lonestar") to pack the Yorks' household goods and possessions at their former Texas residence, and, Williams Moving hired defendant Apollo Van Lines, Inc. ("Apollo Van Lines") to deliver the same to Newport, Rhode Island.

7. Apollo delivered the Yorks' goods and possessions from Texas to a warehouse owned by the defendant Andrews Express & Storage Warehouse, Inc. ("Andrews Express and Storage"), arriving on or about

June 16, 2004, whereupon Andrews Express & Storage accepted possession of same, and, agreed to store the Yorks' household goods and possessions until the Yorks could move into their 505 Wolcott Avenue residence and to deliver the Yorks' household goods and possessions to the Yorks' Wolcott Avenue residence at such time.

8. On or about August 16, 2004 the Yorks' household goods and possessions were moved from Andrews Express & Storage's warehouse in Newport, Rhode Island to the 505 Wolcott Avenue residence.

9. During the course of the delivery of said items into the residence at 505 Wolcott Avenue on August 16, 2004, plaintiff Maureen York discovered for the first time the presence of mildew, mold, and water damage on substantially all of the Yorks' goods and possessions. The Andrews Express & Storage employees who delivered the shipment to the 505 Wolcott Avenue residence informed Mrs. York that the items were damaged when they picked them up at Andrews Express & Storage due to the poor condition of the warehouse where they were stored, including a leaking roof.

10. The Yorks arranged to have their household goods and possessions inspected by an expert for the presence of mold, and, as a result of said inspection the Yorks were informed that due to the existence of mold and mildew damage, much of their household goods and possessions, which included family heirlooms and memorabilia, were damaged beyond repair.

11. The Yorks were also informed that as a result of the placement of the mold infested items inside the dwelling at 505 Wolcott Avenue, the dwelling was contaminated with mold as well and presented a health hazard for the Yorks and their children, and the mold contamination in the house had to be remediated before the Yorks could live there.

12. The Yorks attempted to resolve the situation with Andrews Express & Storage, Day Transfer, and Williams Moving however, none of Said defendants took any action to correct the problem for over two weeks until Major York was forced to involve his military chain of command and whatever influence it might wield.

13. As a result of the inhabitability of their 505 Wolcott Avenue residence and the failure of Day Transfer, Williams Moving, and Andrews Express & Storage to act responsibly in remediating the damage caused to the interior of said dwelling, the Yorks and their children were forced to live in series of hotels, and, eventually move into government housing.

**COUNT I – Day Transfer & Storage Co. (Claim Under Carmack Amendment)**

14. The plaintiffs incorporate herein by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

15. Defendant Day Transfer, by agreeing to provide transportation services for the Yorks' household goods and possessions from their former residence in Texas to Newport, Rhode Island, became responsible for the safe and secure delivery thereof, including but not limited to reasonably ensuring

that the Yorks' goods and possessions would be safely and suitably stored until delivery to their ultimate destination.

16. Day Transfer breached its duty owed to the Yorks and is liable to the Yorks for all damages allowable under the Carmack Amendment to the Interstate Commerce Act.

17. As a direct and proximate result of Day Transfer's breach of duty owed to the Yorks, as aforesaid, the Yorks suffered severe financial losses and other damages, including but not limited to the loss of substantially all of their household goods and possessions.

WHEREFORE, plaintiffs demand Judgment against defendant Day Transfer & Storage Co. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**Count II – Day Transfer & Storage Co. (Negligence)**

18. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

19. Separate and distinct from its contract with the Yorks to safely and securely transport their goods and possessions from Texas to Rhode Island, defendant Day Transfer undertook the responsibility to remediate the damage caused to the interior of the dwelling at 505 Wolcott Avenue to make it habitable, and, to remediate the damage to such of the Yorks' goods and possessions which were salvageable including priceless family heirlooms and memorabilia.

20. Day Transfer negligently undertook its remediation responsibility and as a result the Yorks were damaged, including but not limited to (a) the loss of substantially all of their household goods and possessions, including priceless family heirlooms and memorabilia, (b) the incurrence of expenses for lodging and meals and associated incidental costs, (c) the forced abandonment of the 505 Wolcott Avenue residence while still incurring the rental and utility payments under the terms of the lease, (d) the loss of their monthly housing allowance, which, because it exceeded the actual monthly rent payable at 505 Wolcott Avenue, represented a loss of income, (e) physical and emotional pain and suffering, and (f) damage to Major York's military career on account of being forced to extend his tour of duty at the Naval War College in order to attend to the Day Transfer's failure to act in a reasonably prudent manner with respect to the handing of its remediation responsibilities.

WHEREFORE, plaintiffs demand Judgment against defendant Day Transfer & Storage Co. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**COUNT III- Day Transfer & Storage Co. (Broker Liability)**

21. The plaintiffs incorporate herein by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

22. On information and belief, Day Transfer engaged the services of Williams Moving to in turn hire the services of various third parties to provide

services with respect to the transportation of the Yorks' household goods and possessions from Texas to Rhode Island.

23. In doing so, Day Transfer acted as a broker with respect to the transportation of the Yorks' household goods and possessions.

24. Day Transfer was negligent in the performance of its brokerage services in that, among other things, it failed to reasonably ensure that the Yorks' goods and possessions would be stored in transit in a suitable storage facility.

25. As a direct and proximate result of Day Transfer's negligence, the Yorks suffered severe financial losses and other damages, including but not limited to the loss of substantially all of their household goods and possessions.

**COUNT IV -Apollo Van Lines, Inc. (Claim Under Carmack Amendment)**

26. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

27. Defendant Apollo Van Lines by agreeing to deliver the Yorks' goods and possessions from San Antonio, Texas to their new residence in Rhode Island, became responsible for the safe delivery thereof, including but not limited to reasonably ensuring that the Yorks' goods and possessions were delivered to a facility which was safe and suitable for storage of said items.

28. Apollo Van Lines breached its duty owed to the Yorks, as aforesaid and is liable to the Yorks for all damages allowable under the Carmack Amendment to the Interstate Commerce Act, 49 U.S C. Section 11707, et seq.

29. As a direct and proximate result of Apollo Van Lines' breach of duty owed to the Yorks, as aforesaid, the Yorks suffered severe financial losses and other damages, including but not limited to the loss of substantially all of their household goods and possessions.

WHEREFORE, plaintiffs demand Judgment against defendant Apollo Van Lines, Inc. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**COUNT V – Apollo Van Lines, Inc. (Claim for Inducement By Misrepresentation)**

30. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

31. Prior to the time the Yorks' household goods and possessions left their former residence in Texas, an employee of Apollo Van Lines told plaintiff Jason York to write the phrase "per GBL" on the Day Transfer bill of lading to signify the actual value of the Yorks' goods and possessions.

32. Based on said representation, plaintiff Jason York wrote "per GBL" on the bill of lading, understanding that it signified the full value of the Yorks' goods and possessions and not that it placed some artificial value

on the amount the Yorks' could recover in the event of damage to or loss of their household goods and possessions.

33. To the extent defendants contend and it is construed that by writing "per GBL" on the Day transfer bill of lading, plaintiff Jason York signified the plaintiffs' agreement to a limitation of recovery in the event of the damage to or loss of their household goods and possessions to something less than the full depreciated value thereof, plaintiffs aver that plaintiff Jason York was induced to write those words by the misrepresentation of Apollo Van Lines' employee.

34. To the extent such phrase is construed as limiting the amount of the Yorks' recovery for the loss of their household goods and possessions to less than its full depreciated value, Apollo is liable to the Yorks for the damages suffered thereby.

WHEREFORE, plaintiffs demand Judgment against defendant Apollo Van Lines, Inc. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**COUNT VI – Andrews Express & Storage Warehouse, Inc. (Claim Under Carmack Amendment)**

35. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

36. Defendant Andrews Express & Storage by agreeing to deliver the Yorks' goods and possessions to their new residence within Rhode Island, became responsible for the safe delivery thereof.

37. Andrews Express & Storage breached its duty owed to the Yorks, as aforesaid and is liable to the Yorks for all damages allowable under the Carmack Amendment to the Interstate Commerce Act, 49 U.C.S. Section 11707, et seq.

38. As a direct and proximate result of Andrews Express & Storage's breach of duty owed to the Yorks, as aforesaid, the Yorks suffered severe financial losses and other damages, including but not limited to the loss of substantially all of their household goods and possessions.

WHEREFORE, plaintiffs demand Judgment against defendant Andrews Express & Storage for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**Count VII - Andrews Express & Storage Warehouse, Inc. (Claim for Negligence As Bailee)**

39. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above as though fully set forth herein.

40. Defendant Andrews Express & Storage, by agreeing to store the Yorks' household goods and possessions in its facility, expressly or impliedly became a bailee thereof, and was responsible to exercise due care to see to it that said goods and possessions would be stored safely and

suitably and not be exposed to injury, loss, or damage.

41. Defendant Andrews Express & Storage breached its duty owed to the Yorks, as aforesaid.

42. As a direct and proximate result of Andrews Express & Storage's breach of duty owed to the Yorks, as aforesaid, the Yorks suffered severe financial losses and other damages, including but not limited to (a) the loss of substantially all of their household goods and possessions, (b) the incurrence of expenses for lodging and meals and associated incidental costs, (c) the forced abandonment of the 505 Wolcott Avenue residence while still incurring the rental and utility payments under the terms of their lease, (d) the loss of their monthly housing allowance, which, because it exceeded the actual monthly rent payable at 505 Wolcott Avenue, represented a loss of income, (e) physical and emotional pain and suffering, and (f) damage to Major York's military career on account of being forced to extend his tour of duty at the Naval War College in order to attend to the Yorks' losses and damage.

WHEREFORE, plaintiffs demand Judgment against defendant Andrews Express & Storage Warehouse, Inc. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**COUNT VIII - Andrews Express & Storage Warehouse, Inc.**
**(Claim for Negligence In Making Dwelling Uninhabitable)**

43. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above.

44. Andrews Express & Storage knew or should have known the mold infested condition of the Yorks' household goods and possessions when they delivered the same from Newport, Rhode Island to their dwelling at 505 Wolcott Avenue in Middletown, Rhode Island.

45. Andrews Express & Storage negligently placed mold infested articles in said dwelling and thereby rendered the same uninhabitable for occupancy by the Yorks.

46. As a result, the Yorks incurred damages, including but not limited to (a) the forced abandonment of the 505 Wolcott Avenue residence while still incurring the rental and utility payments under the terms of the lease, (b) the incurrence of expenses for lodging and meals and associated incidental costs, (c) the loss of their monthly housing allowance, which, because it exceeded the actual monthly rent payable at 505 Wolcott Avenue, represented a loss of income, and, (b) physical and emotional pain and suffering.

WHEREFORE, plaintiffs demand Judgment against Andrews Express & Storage Warehouse, Inc. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**COUNT IX- Andrews Express & Warehouse, Inc. (Claim for Negligence In Voiding Plaintiffs' Insurance Coverage)**

47. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above.

48. Prior to the shipment of their household goods and possessions, the Yorks procured an insurance policy for damage or loss to same during moving and storage.

49. Under said insurance policy, coverage was expressly excluded for loss or damage due to mildew and mold during moving and storage.

50. On information and belief, exclusion from coverage for damage or loss due to mildew and mold is a standard exception in such policies of insurance.

51. On information and belief, Andrews Express has been in the business of providing transportation and storage services for the interstate shipment of household goods under the Carmack Amendment for many years.

52. It was reasonably foreseeable to Andrews Express & Storage that, given the artificial limitations under the Carmack Amendment on the amount of recovery for loss or damage to household goods during interstate shipment including storage in transit, the Yorks would procure an insurance policy to cover their household goods for the full depreciated value in the event of damage or loss during shipment.

53. Andrews Express & Storage knew or should have known that any such policy would exclude from coverage damage or loss due to mildew and mold.

54. Andrews Express & Storage negligently caused the Yorks' household goods to be damaged and lost due to the presence of mildew and mold in its warehouse facility, resulting from the wet conditions thereof which were known or should have been known to Andrews Express & Storage.

55. As a direct and proximate result of the negligence of Andrews Express & Storage, the Yorks suffered the loss of their insurance coverage on their household goods.

WHEREFORE, plaintiffs demand Judgment against defendant Andrews Express & Storage Warehouse, Inc. for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

**COUNT XI – Williams Moving Company**
**(Claim for Common Law Negligence as Broker)**

56. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-13 above.

57. On information and belief, defendant Williams Moving Company was at all times relevant hereto acting as a broker for the transportation of the Yorks' household goods and possessions from Texas to Rhode Island and with regard to the failed attempt to remediate certain of the Yorks'

household goods and possessions and of the 505 Wolcott Avenue residence subsequent to the delivery of same to said premises.

58. Defendant Williams Moving Company was negligent in its performance of said brokerage services, including but not limited to its arrangement to have the plaintiffs' goods and possessions stored at a facility while in transit, its failure to procure competent professionals to remediate said premises and plaintiffs' goods and possession, and its failure to diligently attend to the remediation undertaking.

59. As a direct and proximate result of defendant Williams Moving Company's negligence, the Yorks suffered severe financial losses and other damages, including but not limited to (a) the loss of substantially all of their household goods and possessions, (b) the incurrence of expenses for lodging and meals and associated incidental costs, (c) the forced abandonment of the 505 Wolcott Avenue residence while still incurring the rental and utility payments under the terms of their lease, (d) the loss of their monthly housing allowance, which, because it exceeded the actual monthly rent payable at 505 Wolcott Avenue, represented a loss of income, (e) physical and emotional pain and suffering, and (f) damage to Major York's military career on account of being forced to extend his tour of duty at the Naval War College in order to attend to the Yorks' losses and damage.

WHEREFORE, plaintiffs demand Judgment against defendant Williams Moving Company for compensatory damages in a sum at least sufficient to invoke the jurisdiction of this Honorable Court, plus interest and costs.

By their Attorney,

**Joseph R. Palumbo, Jr., #0405**
294 Valley Road
Middletown, RI 02842
(401) 846-5200

PLAINTIFFS CLAIM A TRIAL BY JURY.