UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON YORK and MAUREEN YORK, Plaintiffs, | : | |
| v. | : | CA 04-551S |
| DAY TRANSFER COMPANY,[1] APOLLO VAN LINES, INC., and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC., Defendants, | : | |
| v. | : | |
| WILLIAMS MOVING COMPANY, Third-Party Defendant. | : | |

**MEMORANDUM AND ORDER**
**GRANTING IN PART PLAINTIFFS'**
**MOTION TO FILE SECOND AMENDED COMPLAINT**

Before the court is Plaintiffs' Motion to File Second Amended Complaint (Document ("Doc.") #47) (the "Motion"). Defendants Day Transfer Company ("Day Transfer") and Apollo Van Lines, Inc. ("Apollo"), have filed objections to the Motion. See Day Transfer Moving & Storage's Objection to the Plaintiffs' Motion to File a 2nd Amended Complaint (Doc. #59); Objection of Defendant Apollo Van Lines, Inc.[,] to Plaintiffs' Motion to File Second Amended Complaint (Doc. #60). Defendant Andrews Express & Storage Warehouse, Inc. ("Andrews"), and Third-Party Defendant Williams Moving Company ("Williams") did not file objections to the Motion. A hearing was held on August 3, 2005. Thereafter, the Motion was taken under advisement.

---

[1] The correct name of Day Transfer Company is "Day Transfer Moving & Storage." Day Transfer Moving & Storage's Objection to the Plaintiffs' Motion to File a 2nd Amended Complaint (Doc. #59).

**The Motion**

By the Motion, Plaintiffs seek to add four counts to the action and to make minor changes in the wording of the First Amended Complaint. The wording changes primarily involve correcting the name of Day Transfer to Day Transfer Moving & Storage Company. The Defendants do not object to these word changes or to the name correction. The new counts which Plaintiffs wish to add are discussed below.

**Count 3[2] (Broker Liability)**

In Count 3 of the proposed Second Amended Complaint ("2nd Amended Complaint"), Plaintiffs allege that Day Transfer acted as a broker with respect to the transportation of Plaintiffs' goods by engaging Williams, in turn, to hire the services of various third parties. See 2nd Amended Complaint ¶¶ 22-23. Plaintiffs further allege that Day Transfer was negligent in the performance of its brokerage services by, inter alia, failing to insure that Plaintiffs' goods would be stored in transit in a suitable storage facility. See id. ¶ 24.

Day Transfer argues that the Motion should be denied because it is a "motor carrier," 49 U.S.C.A. § 13102(12), conducting operations in interstate commerce and providing "transportation," 49 U.S.C.A. § 13102(21), and that under the Carmack Amendment an action sounding in negligence and brokerage liability is preempted. See Memorandum of Day Transfer Moving & Storage in Support of Its Objection to Plaintiff's [sic] Motion to File a Second Amended Complaint ("Day Mem.") at 2-8 (citing, inter alia,

---

[2] Although Plaintiffs have used Roman numerals to number the counts of their proposed Seconded Amended Complaint ("2nd Amended Complaint"), the court eschews this method of identification in favor of Arabic numbers. Use of Arabic numbers speeds comprehension and reduces the possibility of error. Here, for example, Plaintiffs' proposed 2nd Amended Complaint has only ten counts, but the last count is denominated as "Count XI."

Chubb Group of Ins. Cos. v. H.A. Transp. Sys., Inc., 243 F.Supp.2d 1064, 1068 (C.D. Cal. 2002)(stating that the Carmack Amendment governs motor carriers and that "[t]he statute absolutely preempts all state common law claims against such carriers ....")).

In an attempt to counter this argument, Plaintiffs contend that "[a] number of courts have ruled that a broker's liability is not governed by the Carmack Amendment and that a broker may be liable under state law claims for negligence." Memorandum in Support of Plaintiffs' Motion to File Second Amended Complaint ("Plaintiffs' Mem.") at 2 (citing Custom Cartage, Inc. v. Motorola, Inc., 98 C 5182, 1999 U.S. Dist. LEXIS 1684 (N.D. Ill. Feb. 16, 1999)). However, as the Custom Cartage, Inc., opinion explains, such state law claims are only valid if the defendant is a broker and not a carrier. See Custom Cartage, Inc., 1999 U.S. Dist. LEXIS 1684, at *4 ("the Carmack Amendment preempts state law claims against carriers"). Here Plaintiffs specifically allege in their proposed 2nd Amended Complaint that Day Transfer "provid[es] transportation services within the meaning of the ICC Termination Act ...," 2nd Amended Complaint ¶ 4, and that "Day Transfer was engaged to provide services with respect to the transportation of the Yorks' household goods and belongings ... and issued its bill of lading, as a carrier, in connection therewith," id. ¶ 5. Thus, it appears that Plaintiffs do not dispute Day Transfer's claim that it is a motor carrier subject to the Carmack Amendment. Consequently, Plaintiffs' proposed Count 3 for broker liability is preempted and cannot succeed. Accordingly, as to Count 3 the Motion must be denied as futile. See Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)("Leave to amend is to be 'freely given,' Fed. R. Civ. P. 15(a), unless it would be futile ....").

**Count 5 (Inducement by Misrepresentation)**

In Count 5, Plaintiffs allege that, prior to the time Plaintiffs' household goods and possessions left Plaintiffs' former residence in Texas, an employee of Apollo told Plaintiff "Jason York to write the phrase 'per GBL' on the Day Transfer bill of lading to signify the actual value of the Yorks' goods and possessions." 2nd Amended Complaint ¶ 31. Plaintiffs further allege that, to the extent Defendants contend that by writing this phrase Plaintiffs agreed to a limitation of the amount Plaintiffs could recover in the event of damage to or loss of their household goods and possessions, Jason York was induced to write those words by the misrepresentation of Apollo's employee. See id. ¶ 33. Thus, Plaintiffs claim that Apollo is liable to them for the damages they suffered if such phrase is construed as limiting the amount of their recovery. See id. ¶ 34.

Apollo argues that there is no legal or factual basis for Plaintiffs' claim of inducement by misrepresentation "because the GBL is the contract of carriage which by its terms limits carrier liability to $1.25 per pound times the weight of the shipment ...." Memorandum of Law in Support of Apollo Van Lines, Inc.[,] Objection to Plaintiffs' Motion to File Second Amended Complaint ("Apollo Mem.") at 3. Apollo asserts that as a matter of law Plaintiffs could not have obtained full replacement value coverage by annotation of the Day Transfer bill of lading because it is not a contractual document for Plaintiffs' shipment. See id. at 5.

In support of this argument, Apollo cites to three exhibits which it has attached to its memorandum. See Apollo Mem., Ex. A (Bill of Lading), B (Domestic Personal Property Rate Solicitation D-8 Page No. 3-3), and C (Domestic Personal Property Rate Solicitation D-8 Page No. 4-47). The exhibits are of poor

quality, and the court is unable to confirm Apollo's statement that "Item 306 of solicitation D-8 (Exhibit B) limits the contractual carrier liability for loss and damage to plaintiffs' shipment to $1.25 per pound times the net weight of the shipment (in pounds) unless a different valuation is otherwise stated **on the GBL**," Apollo Mem. at 3 (emphasis added). Item 306 of Solicitation D-8 actually appears to read "unless otherwise stated on BL," id., Ex. B at 1, and BL is not defined in the exhibits. Thus, although Apollo asserts that "[t]he Day Transfer bill of lading does not modify any terms of the GBL contract between the government and Day Transfer to which plaintiffs are not parties," Apollo Mem. at 5, the court is unable to determine this conclusively from the exhibits submitted.

Also problematic is the fact that Apollo misquotes Exhibit C. On page 4 of its memorandum Apollo purports to reproduce "Exception 2" from Exhibit C. However, the language is different from that which appears in the Exhibit. Additionally, Apollo argues facts which are not in the record. See Apollo Mem. at 4-5 (asserting that "[a]ll service members prior to their moves are counseled by experienced military managers as to their rights in shipping their household goods at government expense and offered the right to obtain full replacement coverage.").

In short, although Apollo's argument (that the annotation on the Day Transfer bill of lading is of no legal consequence) may ultimately prevail, the court is unable to conclude from the exhibits which Apollo has submitted that Plaintiffs have failed in Count 5 to state a cause of action on which relief may be granted. See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)("If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of

Civil Procedure 12(b)(6)."); Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 215 (1st Cir. 2000)(affirming dismissal under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). Accordingly, as to Count 5, Apollo's objection is overruled, and the Motion is granted.

**Count 9 (Negligence in Voiding Plaintiffs' Insurance Coverage)**

In Count 9 Plaintiffs allege: 1) that it was reasonably foreseeable to Andrews that, "given the artificial limitations under the Carmack Amendment on the amount of recovery for loss or damage to household goods during interstate shipment including storage in transit, the Yorks would procure an insurance policy to cover their household goods for the full depreciated value in the event of damage or loss during shipment," 2nd Amended Complaint ¶ 52; 2) that Andrews knew or should have known that "any such policy would exclude from coverage damage or loss due to mildew and mold," id. ¶ 53; 3) that Andrews "negligently caused the Yorks' household goods to be damaged and lost due to the presence of mildew and mold in its warehouse facility, resulting from the wet conditions thereof which were known or should have been known to [Andrews]," id. ¶ 54; and 4) that as a direct and proximate result of the negligence of Andrews Plaintiffs suffered the loss of their insurance coverage on their household goods, see id. ¶ 55. According to Plaintiffs, "liability would arise under the proposed new claim if it was foreseeable to Andrews that (a) Plaintiffs would have an insurance policy and (b) that such policy would have a mold damage exclusion." Plaintiffs' Mem. at 6.

Although Andrews has not filed an objection to the Motion, the court independently must determine whether Plaintiffs should be allowed to file an amended complaint containing this count. See Fed. R. Civ. P. 15(a) ("Otherwise a party may amend the

party's pleading only by leave of court ...."). The court is not persuaded by the cases cited by Plaintiffs, Splendorio v. Bilray Demolition Co., 682 A.2d 461 (R.I. 1996), and Mercurio v. Burrillville Racing Assoc., 187 A.2d 665 (R.I. 1963), that Plaintiffs have pled a valid cause of action. The court is unaware of any precedent for the cause of action which Plaintiffs attempt to plead. Plaintiffs averments fall within the realm of "bald assertions," Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002), and "unsupportable conclusions," id. Although Plaintiffs assert that as a proximate result of the negligence of Andrews they suffered the loss of their insurance coverage on their household goods, Plaintiffs never had insurance coverage for damage caused by mold. Thus, Andrews cannot be said to have caused the loss of such coverage. Accordingly, as to Count 9, the Motion is DENIED.

**Count 11 (Broker Liability)**

Count 11[3] of the proposed 2nd Amended Complaint is directed against Williams and alleges: 1) that Williams acted as a broker for the transportation of Plaintiffs' household goods and also for the failed attempt to remediate certain of those goods, see id. ¶ 57; 2) that Williams was negligent in the performance of its brokerage services, see id. ¶ 58; and 3) that Plaintiffs suffered severe financial losses as a result, see id. ¶ 59. As previously noted, Williams has not objected to Plaintiffs' Motion, and the court finds nothing in the proposed 2nd Amended Complaint to indicate that such a claim cannot be directed against Williams. Accordingly, as to Count 11, the Motion is granted.

**Summary**

In summary, the Motion is granted as to the wording changes

---

[3] See n.2.

and as to Counts 5 and 11 of the proposed 2nd Amended Complaint. The Motion is denied as to Counts 3 and 9 of the proposed 2nd Amended Complaint. Plaintiffs are directed to use Arabic numbers to identify the counts of any amended complaint hereafter filed.

So ordered.

ENTER:

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
August 19, 2005

BY ORDER:

Deputy Clerk