UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and MAUREEN YORK,

Plaintiffs,

v.

DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.,

Defendants,

v.

WILLIAMS MOVING COMPANY,

Third-Party Defendant.

C.A. No. 04-551S

**DAY TRANSFER'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' APPEAL OF MAGISTRATE'S MEMORANDUM AND ORDER DENYING IN PART MOTION TO FILE SECOND AMENDED COMPLAINT**

**LEGAL ARGUMENT**

**AS THE BILL OF LADING CARRIER, DAY TRANSFER HAS NO BROKER LIABLITY TO PLAINTIFFS**

Plaintiffs appeal from that part of the Memorandum and Order, dated August 19, 2005, of Hon. David L. Martin, U.S.M.J. denying their motion for leave to assert a new count against defendant DAY TRANSFER COMPANY ("DAY TRANSFER"). Plaintiffs seek to allege DAY TRANSFER's liability as a broker as defined by the I.C.C. Termination Act of 1995 ("ICCTA"), 49 U.S.C. §13102(2). Taking

into account plaintiffs' admissions in their own proposed amended Complaint that DAY TRANSFER acted as a motor carrier, not a broker, and applying the relevant law, the Magistrate correctly held that the proposed count is meritless and denied the amendment.

That plaintiffs' proposed second Amended Complaint contains a count against DAY TRANSFER for alleged broker liability is ironic in view of the principle that a broker is generally not liable for loss or damage to property in transit. Phoenix Assur. Co. v. K-Mart Corp., 977 F.Supp. 319, 325 (D.N.J. 1997). Plaintiffs apparently hope to circumvent DAY TRANSFER's contractual limitation of liability with the theory, contradicted by their own admissions, that defendant is not really a motor carrier with respect to their shipment, despite DAY issuing an interstate Bill of Lading so identifying itself. The Court should deny plaintiffs' appeal from the Magistrate's Order.

The interstate transportation of plaintiffs' household goods was performed under DAY TRANSFER's Household Goods Bill of Lading and Freight Bill No. 5134, dated May 13, 2004 ("Bill of Lading"), (Exhibit "A" hereto). DAY TRANSFER's Bill of Lading bears its federal motor carrier authority number (ICC No. 72958) in the upper left-hand corner of the document. Furthermore, DAY TRANSFER's motor carrier listing maintained by the United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA") on its "FMCSA Motor Carrier" public website (Exhibit "B" hereto) identifies DAY with interstate motor carrier license numbers USDOT No. 73336 and Docket No. MC072958. The "FMCSA Motor Carrier" listing for DAY TRANSFER reflects that it has no broker authority. Contrary to plaintiffs' suggestion, DAY TRANSFER has not admitted or implied in any way that it acted as a "broker" in connection with plaintiffs' interstate shipment.

Plaintiffs acknowledge in their proposed Second Amended Complaint that DAY TRANSFER is the motor carrier responsible for the interstate transportation of their goods. As a matter of law, DAY TRANSFER was either a motor carrier or a broker. Plaintiffs cannot have it both ways.

In their proposed Second Amended Complaint plaintiffs aver, in part, as follows:

> 4. Defendant Day Transfer Moving & Storage Co. ("Day Transfer") is a Missouri corporation conducting business in interstate commerce and providing transportation service within the meaning of the ICC Termination Act, so called. (emphasis added).
>
> 5. Day Transfer was engaged to provide services with respect to the transportation of the Yorks' household goods and belongings to Newport, Rhode Island and issued its bill of lading, as carrier, in connection therewith." (emphasis added).
>
> * * *
>
> 15. Defendant Day Transfer, by agreeing to provide transportation services for the Yorks' household goods and possessions from their former residence in Texas to Newport, Rhode Island, became responsible for the safe and secure delivery thereof...." (emphasis added).

The ICC Termination Act of 1995 ("ICCTA") defines a "carrier" as "a motor carrier, a water carrier and a freight forwarder." 49 U.S.C. §13102(3). A "motor carrier" is defined as, "a person providing motor vehicle transportation for compensation." 49 U.S.C. §13102(12).

In plaintiffs' appeal from the Magistrate's Order, dated August 19, 2005, they concede, "Certainly the plaintiffs do not dispute that Day Transfer is generally

speaking a motor carrier and thereby subject to the Carmack Amendment. (Plaintiffs' Appeal of Magistrate's Memorandum and Order, pp. 4-5). Thus, plaintiffs admit that DAY TRANSFER is "generally speaking a motor carrier" and their proposed Second Amended Complaint further admits that DAY TRANSFER was hired to provide the "transportation of [plaintiffs'] household goods and belongings to Newport, Rode Island and issued its bill of lading, as carrier." Yet, plaintiffs equivocally argue:

> In this case, plaintiffs allege that Day Transfer, by its own admissions, was not acting as a motor carrier but as a broker. By its own admissions, other than to issue a bill of lading at the request of Williams, Day Transfer never laid a hand on the plaintiff's goods: it provided no "motor carrier" services with respect to same. (Plaintiffs' Appeal of Magistrate's Memorandum and Order, p. 5).

Additionally, plaintiffs disregard the ICCTA's broad definition of motor carrier "transportation." They also mistakenly downplay the crucial legal effect of a carrier's issuance of a bill of lading. The bill of lading makes the carrier contractually responsible to the shipper for the transportation regardless of the carrier's subcontractual arrangements with other parties to perform portions of the transportation service. By contrast, a broker does not issue the shipper a bill of lading as a carrier and does not accept responsibility for the actual performance of the transportation. Instead, a broker merely agrees to procure transportation service from a carrier for the shipper, a role akin to a travel agent. Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126, 129 (2d Cir. 2000); Natl. Bus Traffic Assn. v. U.S., 143 F.Supp. 689, 694 (D.N.J. 1956), affd. 352 U.S. 1020 (1957); George Weintraub & Sons, Inc. v. E.T.A. Transp., Inc., 2003 WL 22023907, *4 (S.D.N.Y. 2003).

In Custom Cartage, Inc. v. Motorola Inc., 1999 WL 965686 (N.D. Ill. 1999) the District Court held:

> Further, included in the "transportation" motor carriers provide are "services related to that movement, including arranging for, receipt, delivery elevation, transfer in transit … of passengers and property." 49 U.S.C. §13102(19)(B). So, even if Custom's understood role was to arrange the transportation of Motorola's goods, Custom is not necessarily a broker. The Code of Federal Regulations adds:
>
> Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they have accepted and legally bound themselves to transport. 49 C.F.R. Sec. 371.2(a).
>
> Thus Custom would be precluded from being a broker if it had been authorized to transport the goods and accepted and legally bound itself to so transport them. (emphasis added). (Id. at *8).

The dispositive fact that DAY TRANSFER was, as phrased above, "authorized to transport the goods and accepted and legally bound itself to so transport them" is admitted by plaintiffs in their proposed pleading and on this appeal. Thus, plaintiffs' speculation that DAY TRANSFER's contractual relationship with WILLIAMS MOVING COMPANY "sounds like brokerage services" simply misconceives DAY TRANSFER's legal status as the Bill of Lading motor carrier of record.

As the District Court recognized in Custom Cartage, Inc., supra, a motor carrier may, as part of its "transportation" service within the meaning of 49 U.S.C. §13102(19)(B), undertake to "arrange for" the actual hauling of the goods by others and still remain a "motor carrier" and not a "broker." The Court commented, "One is not

precluded from being a motor carrier by the mere fact that none of its own motor vehicles are used in the transporting of the goods." 1999 WL 965868, *8.

The ICCTA defines a "broker" as:

> … a person, other than an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for, transportation by motor carrier for compensation. 49 U.S.C. §13102(2).

Despite plaintiffs' semantic efforts to characterize DAY TRANSFER as a "broker" in hopes of pinning unlimited liability on it, plaintiffs cannot escape the undisputed facts, admitted in their own proposed Second Amended Complaint, that DAY TRANSFER (1) provided the "interstate transportation service" (¶4); (2) "issued its bill of lading, as carrier" (¶5) and (3) thus "became responsible for the safe and secure delivery" of the goods from Texas to Rhode Island (¶15).

The Magistrate's Order correctly applies the relevant federal law and recognizes the mutually exclusive roles and legal status of motor carriers and brokers under the ICCTA. Based on sound reasoning and plaintiffs' admission of undisputed facts, the Magistrate properly held that Count Three of plaintiffs' proposed Second Amended Complaint alleging broker liability against DAY TRANSFER is futile and must be denied.

This Memorandum is jointly submitted by counsel for DAY TRANSFER and WILLIAMS MOVING COMPANY because WILLIAMS has agreed to assume the defense of DAY TRANSFER in this action.

Dated: September 19, 2005

Attorney for Defendant
DAY TRANSFER COMPANY
Thomas C. Plunkett, Esq.
Kiernan, Plunkett & Redihan
91 Friendship Street
Providence, RI 02903
(401) 831-2900

-and-

Sarah L. Fifield, Esq.
Dombroff & Gilmore, P.C.
40 Broad Street, Suite 2000
New York, NY 10004
(212) 742-8450

Attorney for Third-Party Defendant
WILLIAMS MOVING COMPANY
James P. Marusak, Esq.
Gidley Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644

-and-

George W. Wright, Esq.
George W. Wright & Associates, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
(201) 342-8884

# EXHIBIT "A"

I.C.C. NO. 72958

No 5134

# DAY TRANSFER CO.

2094 SOUTHERN EXPRESSWAY
CAPE GIRARDEAU, MISSOURI 63703
PHONE: 573-335-3327

NO. DT-05-13-04

IN CASE OF NEED: CONTACT TRAFFIC CONTROL MGR. AT ABOVE ADDRESS OR TELEPHONE NUMBER

CONNECTING OR INTERLINING CARRIER (IF ANY) ______ ADDRESS ______ PHONE ______

RECEIVED, subject to classifications, tariffs, rules and regulations including all terms printed or stamped hereon or on the reverse side hereof in effect on the date of issue of this bill of lading

SHIPPER YORK, JASON D. MAJ DATE 04 JUN 04
ADDRESS 2721 ASHLEY MEADOW
FLOOR ______ ELEV. ______ TEL. 210/566-8035
CITY SCHERTZ COUNTY GUADALUPE STATE TX

CONSIGNED TO YORK, JASON D. MAJ
ADDRESS ______
FLOOR ______ ELEV. ______ TEL. ______
CITY NEWPORT COUNTY NEWPORT STATE RI

ACTUAL PICKUP DATE ______ | AGREED PICKUP DATE 04 JUN 04 (if applicable) | GUARANTEED PICKUP DATE (If applicable) | AGREED DELIVERY DATE RDD 17 JUN 04 (if applicable) Daily Allowance | GUARANTEED DELIVERY DATE (if applicable)

## NOTIFICATION OF CHARGES

SHIPPER REQUESTS NOTIFICATION OF ACTUAL CHARGES TO PARTY SHOWN BELOW ☐ (C.O.D. SHIPPERS ONLY)
NOTIFY ______
ADDRESS ______ TEL. ______

IN CASE OF DELAY, OR IF CHARGES EXCEED ESTIMATE BY MORE THAN 10%
NOTIFY ______
ADDRESS ______ TEL. ______

Payment in Cash or Certified Check, Money Order, Traveler's Check or Cashier's Check

BILLING INFORMATION ZY711231
NAME
ADDRESS
CITY & STATE
ATTENTION OF

INSURANCE: The shipper declares the actual cash value of the shipment to be $ XXXX
Insurance Rate $ XXXXXXX per hundred dollars, premium $ XXXXXXXXXXXX
Signature ______

Notice: Carrier's tariffs, by this reference, are made a part of the bill of lading and may be inspected at carrier's facility, or, on request, carrier will furnish a copy of any tariff provision containing carrier's rates, rules or charges governing the shipment.

Tariff D-8 SEC 3

| | ORIGINAL | REWEIGH |
|---|---|---|
| Gross | | |
| Tare | | |
| Net | | |
| Min. Wt. | | |

| SERVICES | CHARGES |
|---|---|
| Transportation FROM ZIP 78154 TO ZIP 02840 | |
| Origin/Destination Fee | |
| Fuel Surcharge (when applicable) | |
| Insurance Surcharge (when applicable) | |
| Valuation | |
| Containers, Packing & Unpacking | |
| Storage-In-Transit at ZIP Location ______ Date In ______ Date Out ______ | |
| SIT Pickup and Delivery | |
| Extra Pickups or Deliveries No. ______ at ZIP(s) ______ | |
| Extra Labor, Special Services or Waiting Time | |
| Bulky Articles | |
| Additional Weight Additives | |
| Advanced Charges | |
| Shuttle Service | |
| Self-Storage/Mini-Warehouse Pickups or Deliveries | |
| Overtime Pickups or Deliveries | |
| Other Additional Services | |

## SPECIAL SERVICES

☐ EXPEDITED SERVICE ORDERED BY
SHIPPER DELIVERED ON OR BEFORE ______
☐ SHIPMENT COMPLETELY OCCUPIED A ______ CU. FT. VEHICLE
☐ EXCLUSIVE USE OF A ______ CU. FT. VEHICLE ORDERED
☐ SPACE RESERVATION ______ CU. FT. ORDERED
☐ ______ ☐ ______

## FULL AND CUSTOM CONTAINER SERVICE

**FULL SERVICE** NOTE: For shipments with origin/destination in California, Customer agrees that title to all packing materials and other property sold to customer passes to customer prior to the transporation of such property to the customer by carrier. The sale price of the containers and container material is $______. This sale price is included in the total packing service charge.

| CONTAINERS & PACKING | $ | UNPACKING | $ |
|---|---|---|---|
| | | | |

| CUSTOM SERVICE CARTON DESCRIPTION | | CONTAINERS & PACKING QUANTITY | UNPACKING QUANTITY |
|---|---|---|---|
| DISH PACKS | | | |
| CARTONS | Less Than 3 cft. | | |
| CARTONS | 3 cft. | | |
| CARTONS | 4.5 | | |
| CARTONS | 6 | | |
| CARTONS | 6.5 | | |
| WARDROBE, CTN. | | | |
| CRIB MATTRESS CTN. | | | |
| MATTRESS CTN., TWIN/TWIN LONG | | | IN 2134 MV2 |
| MATTRESS CTN., DOUBLE (NOT EXCEEDING 54" X 75") | | | |
| MATTRESS CTN., KING/QU. (EXCEEDING 54" X 75") | | | SIT # 4168001 |
| HEAVY DUTY | | | |
| OTHER | | | |
| OTHER | | | |

TOTAL CONTAINERS & PACKING $ ______ TOTAL UNPACKING $ ______

TOTAL CONTAINERS & PACKING AND UNPACKING

## CUSTOMER'S DECLARATION of VALUE

**THIS IS A TARIFF LEVEL OF CARRIER LIABILITY - IT IS NOT INSURANCE**

You must select, in your own handwriting, one of the following two options for your shipment. The option you select establishes your mover's maximum liability for your goods, subject to the rules contained in your mover's tariff.

OPTION 1: Full (Replacement) Value Protection. If any article is lost, destroyed or damaged while in your mover's custody, your mover will either 1) repair the article to the extent necessary to restore it to the same condition as when it was received by your mover, or pay you the cost of such repairs; or 2) replace the article with an article of like kind and quality, or pay you for the cost of such a replacement. An additional charge applies for this option.

To select Option 1, you must write, on the line below, either a lump sum dollar amount for the value of your shipment that may not be less than $5000, or an amount per pound that may not be less than $4.00 per pound, whichever is greater.

The value of my shipment is: $ 50,000

You must also select one of the following deductible amounts that will apply for your shipment:
No Deductible ( ______ ) Initial $250 Deductible ( ______ ) Initial $500 Deductible ( ______ ) Initial

OPTION 2 Released Value of 60 Cents Per Pound Per Article. If any article is lost, destroyed or damaged while in your mover's custody, your mover's liability is limited to the actual weight of the lost, destroyed or damaged article multiplied by 60 cents per pound per article. This is the basic liability level and is provided at no charge. It is considerably less than the average value of household goods.

To select Option 2, you must write, on the line below, the words "60 cents per pound".

The value of my shipment is: ______

Your signature is required here: I acknowledge that I have 1) declared a value for my shipment and selected a deductible amount, if appropriate, and 2) received and read a copy of the mover's brochure explaining these provisions and the applicable charges.

[signature]

Minimum Weight or Volume Charge

Terms & Conditions for Payment of Total Charges: Charges ☐ Prepaid ☐ C.O.D. ☐

Maximum amount to be paid at time of delivery to obtain delivery of an estimated C.O.D. shipment

BALANCE DUE (30 Working Days, Credit Extended If Requested)

Prepayment Collected By

**BALANCE DUE**

DELIVERY ACKNOWLEDGEMENT: SHIPMENT WAS RECEIVED IN APPARENT GOOD CONDITION EXCEPT AS NOTED ON INVENTORY, AND SERVICES ORDERED WERE PERFORMED.

SIGNED ______

REC'D FOR STORAGE ______ (WAREHOUSE) CONSIGNEE ______
BY ______ (WAREHOUSEMAN'S SIGNATURE) DATE ______ PER ______

**Extraordinary (Unusual) Value Article Declaration**

I acknowledge that I have prepared and retained a copy of the "Inventory of Items Valued in Excess of $100 Per Pound Per Article" that are included in my shipment and that I have given a copy of this inventory to the mover's representative. I also acknowledge that the mover's liability for loss of or damage to any article valued in excess of $100 per pound will be limited to $100 per pound for each pound of such lost or damaged article (based on actual article weight), not to exceed the declared value of the entire shipment, unless I have specif-

# CONTRACT TERMS AND CONDITIONS

Except when transportation is performed under the provisions of Item 1 (b) of tariff, the following Contract Terms and Conditions apply to all transportation performed by carrier in addition to all other rules, regulations, rates, and charges in this and other applicable tariffs, which are available for inspection at the location(s) specified by the carrier.

This contract is subject to all the rules, regulations, rates and charges in carrier's currently effective applicable tariffs including, but not limited to, the following terms and conditions:

SECTION 1: The carrier or party in possession shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage-in-transit EXCEPT loss, damage or delay caused by or resulting:

(a) From an act, omission or order of shipper;

(b) From defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein;

(c) From (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack: (A) by any government or sovereign power, or by any authority maintaining or using military, naval or air forces; or (B) by military, naval or air forces; or (C) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence; (4) seizure or destruction under quarantine or customs regulations; (5) confiscation by order of any government or public authority; or (6) risks of contraband or illegal transportation or trade.

(d) From delay caused by strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder, and from loss or damage when carrier, after notice to shipper or consignee of a potential risk of loss or damage to the shipment from such causes, is instructed by the shipper to proceed with such transportation and/or delivery, notwithstanding such risk.

(e) From Acts of God.

SUBJECT, in addition to the foregoing, to the further following limitations on the carrier's or the party's in possession liability:

The carrier's or the party's in possession maximum liability shall be either:

(1) The lump sum value declared by shipper, which may not be less than $5,000 or $4.00 per pound multiplied by the actual weight of the shipment, in pounds, whichever is greater,

(2) The actual loss or damage not exceeding sixty (60) cents per pound of the weight of any lost or damaged article when the shipper has released the shipment to carrier, in writing, with liability limited to sixty (60) cents per pound per article, or

(3) The actual (depreciated) value of the lost or damaged articles if carrier fails to obtain a shipper's valuation declaration and signature on the Customer's Declaration of Value notice on the face of this document.

SECTION 2. The carrier shall not be liable for delay caused by highway obstruction, or faulty or impassable highways, or lack of capacity of any highway, bridge or ferry, or caused by breakdown or mechanical defect of vehicles or equipment, or from any cause other than negligence of the carrier; nor shall the carrier be bound to transport by any particular schedule, means, vehicle or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination.

SECTION 3.

(a) The shipper, upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment. The extension of credit to either shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges.

(b) The shipper shall indemnify carrier against loss or damage caused by inclusion in the shipment of explosives or dangerous articles or goods.

SECTION 4. If for any reason other than the fault of carrier, delivery cannot be made at address shown on the face hereof, or at any changed address of which carrier has been notified, carrier, at its option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery or at other available points, at the cost of the owner, and subject to a lien for all accrued tariff charges.

SECTION 5. If shipment is refused by consignee at destination, or if shipper, consignee or owner of property fails to receive or claim it within fifteen (15) days after written notice by United States mail addressed to shipper and consignee at post office addresses shown on face hereof, or if shipper fails or refuses to pay applicable charges in accordance with carrier's applicable tariff, carrier may sell the property at its option, either (a) upon notice in the manner authorized by law, or (b) at public auction to highest bidder for cash at a public sale to be held at a time and place named by carrier, thirty (30) days notice of which sale shall have been given in writing to shipper and consignee, and there shall have been published at least once a week for two consecutive weeks in a newspaper of general circulation at or near the place of sale, a notice thereof containing a description of the property as described in the bill of lading, and the names of the consignor and consignee. The proceeds of any sale shall be applied toward payment of tariff charges applicable to shipment and toward expenses of notice, advertising and sale, and of storing, caring for and maintaining property prior to sale, and the balance if any shall be paid to owner of property; PROVIDED that any perishable articles contained in said shipment may be sold at public or private sale without such notices, if, in the opinion of carrier, such action is necessary to prevent deterioration or further deterioration.

SECTION 6. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

# EXHIBIT "B"

# FMCSA Motor Carrier

USDOT Number: **73336**
Docket Number: **MC072958**
Legal Name: **DAY TRANSFER COMPANY**

DBA (Doing-Business-As) Name

FMCSA

**Addresses**

Business Address: **2094 SOUTHERN EXPRESSWAY**
**CAPE GIRARDEAU, MO 63703**

Business Phone: **(573) 335-3327** Business Fax: **Fax: (573) 335-3328**

Mail Address:

Mail Phone: Mail Fax: Undeliverable Mail **NO**

**Authorities:**

| | | | | | |
|---|---|---|---|---|---|
| Common Authority: | **ACTIVE** | Application Pending: | **NO** | | |
| Contract Authority: | **ACTIVE** | Application Pending: | **NO** | | |
| Broker Authority: | **NONE** | Application Pending: | **NO** | | |
| Property: | **YES** | Passenger: | **NO** | Household Goods: | **YES** |

**Insurance Requirements:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BIPD Exempt: | **NO** | BIPD Waiver: | **NO** | BIPD Required: | **$750,000** | BIPD on File: | **$1,000,000** |
| Cargo Exempt: | **NO** | | | Cargo Required | **YES** | Cargo on File: | **YES** |
| BOC-3: | **YES** | | | Bond Required: | **NO** | Bond on File: | **NO** |

Blanket Company: **AMERICAN MOVING AND STORAGE ASSOCIATION**

Comments: **TRANS T0: B & J MOVING & STORAGE CO. MC-72958 PER FC-77582 CONS: 7-6-78**

**Active/Pending Insurance:**

Form: **91X** Type: **BIPD/Primary** Posted Date: 03/01/2004
Policy/Surety Number: **TCP110014** Coverage From: **$0** To: **$1,000,000**
Effective Date: **10/01/2003** Cancellation Date:

Insurance Carrier TRANSGUARD INSURANCE COMPANY OF AMERICA INC.
Attn: SUSAN L. RICHARDSON, MANAGING VP
Address: 700 OAKMONT LANE
WESTMONT, IL 60559 US
Telephone: (630) 570 - 3540 Fax: (630) 717 - 4883

Form: **34** Type: **CARGO** Posted Date: 03/01/2004
Policy/Surety Number: **TCP110014** Coverage From: **$0** To: **$5,000***
Effective Date: **10/01/2003** Cancellation Date:

Insurance Carrier TRANSGUARD INSURANCE COMPANY OF AMERICA INC.
Attn: SUSAN L. RICHARDSON, MANAGING VP
Address: 700 OAKMONT LANE
WESTMONT, IL 60559 US
Telephone: (630) 570 - 3540 Fax: (630) 717 - 4883

# FMCSA Motor Carrier

USDOT Number: **73336**
Docket Number: **MC072958**
Legal Name: **DAY TRANSFER COMPANY**

DBA (Doing-Business-As) Name

**Note:**
* If a carrier is in compliance, the amount of coverage will always be shown as the required Federal minimum ($5,000 per vehicle, $10,000 per occurrence for cargo insurance and $10,000 for bond/trust fund).
The carrier may actually have higher levels of coverage.

**Rejected Insurances:**

Form: Type:
Policy/Surety Number: Coverage From: **$0** To: **$0**
Received: Rejected:
Rejected Reason:

# FMCSA Motor Carrier

USDOT Number: **73336**
Docket Number: **MC072958**
Legal Name: **DAY TRANSFER COMPANY**

DBA (Doing-Business-As) Name

FMCSA

**Insurance History:**

Form: **91X** Type: **BIPD/Full (1)**
Policy/Surety Number: **MS 055-0225** Coverage From **$0** To: **$0**
Effective Date From: **10/01/2003** To: **03/01/2004** Disposition: **Cancelled**

Insurance Carrier SECURITY INSURANCE CO. OF HARTFORD
Attn:
Address: 9 FARM SPRINGS DRIVE
FARMINGTON, CT 06032 US
Telephone: (860) 674 - 6600 Fax: (860) 674 - 6991

Form: **91X** Type: **BIPD/Primary**
Policy/Surety Number: **MS0410570** Coverage From **$0** To: **$2,000,000**
Effective Date From: **10/01/2000** To: **10/01/2003** Disposition: **Replaced**

Insurance Carrier SECURITY INSURANCE CO. OF HARTFORD
Attn:
Address: 9 FARM SPRINGS DRIVE
FARMINGTON, CT 06032 US
Telephone: (860) 674 - 6600 Fax: (860) 674 - 6991

Form: **91X** Type: **BIPD/Primary**
Policy/Surety Number: **CLP11080** Coverage From **$0** To: **$750,000**
Effective Date From: **10/01/1988** To: **10/01/2000** Disposition: **Replaced**

Insurance Carrier GREAT WEST CASUALTY CO.
Attn: NANCY HAMAR
Address: 1100 WEST 29TH ST., P.O. BOX 277
SOUTH SIOUX CITY, NE 68776 US
Telephone: (402) 494 - 7324 Fax: (402) 494 - 7400

Form: **34** Type: **CARGO**
Policy/Surety Number: **385JB3105** Coverage From **$0** To: **$5,000** *
Effective Date From: **04/01/1990** To: **10/01/2000** Disposition: **Replaced**

Insurance Carrier ST. PAUL FIRE & MARINE INSURANCE CO.
Attn: CARRIE UNZE
Address: 385 WASHINGTON ST. MAILCODE 505Q
ST. PAUL, MN 55102 US
Telephone: (651) 310 - 7300 Fax: (651) 310 - 3684

# FMCSA Motor Carrier

USDOT Number: **73336**
Docket Number: **MC072958**
Legal Name: **DAY TRANSFER COMPANY**

DBA (Doing-Business-As) Name

FMCSA

**Insurance History:**

Form: **34** Type: **CARGO**
Policy/Surety Number: **MS 055-0225** Coverage From **$0** To: **$5,000** *
Effective Date From: **10/01/2003** To: **03/01/2004** Disposition: **Cancelled**

Insurance Carrier SECURITY INSURANCE CO. OF HARTFORD
Attn:
Address: 9 FARM SPRINGS DRIVE
FARMINGTON, CT 06032 US
Telephone: (860) 674 - 6600 Fax: (860) 674 - 6991

Form: **34** Type: **CARGO**
Policy/Surety Number: **MS0410570** Coverage From **$0** To: **$5,000** *
Effective Date From: **10/01/2000** To: **10/01/2003** Disposition: **Replaced**

Insurance Carrier SECURITY INSURANCE CO. OF HARTFORD
Attn:
Address: 9 FARM SPRINGS DRIVE
FARMINGTON, CT 06032 US
Telephone: (860) 674 - 6600 Fax: (860) 674 - 6991

* If a carrier is in compliance, the amount of coverage will always be shown as the required Federal minimum ($5,000 per vehicle, $10,000 per occurrence for cargo insurance and $10,000 for bond/trust fund). The carrier may actually have higher levels of coverage.

* If a carrier is in compliance, the amount of coverage will always be shown as the required Federal minimum ($5,000 per vehicle, $10,000 per occurrence for cargo insurance and $10,000 for bond/trust fund). The carrier may actually have higher levels of coverage.

**Authority History:**

| Sub No. | Authority Type | Original Action | | Disposition Action | |
|---|---|---|---|---|---|
| 3 | COMMON | GRANTED | 09/27/1988 | | |
| 3 | CONTRACT | GRANTED | 09/27/1988 | | |
| 2 | COMMON | GRANTED | 12/06/1984 | | |
| 1 | COMMON | GRANTED | 05/18/1981 | TRANSFERRED | 11/12/1984 |

# FMCSA Motor Carrier

USDOT Number: **73336**
Docket Number: **MC072958**
Legal Name: **DAY TRANSFER COMPANY**

DBA (Doing-Business-As) Name

**Authority History:**

| Sub No. | Authority Type | Original Action | Disposition Action | |
|---|---|---|---|---|
| 0 | COMMON | | | |
| | | GRANTED | TRANSFERRED | 05/18/1981 |

**Pending Application:**

| Authority Type | Filed | Status | Insurance | BOC-3 |
|---|---|---|---|---|

**Revocation History:**

| Authority Type | 1st Serve Date | 2nd Serve Date | Reason |
|---|---|---|---|

TO Joseph R. Palumbo, Jr., Esq.
194 Valley Road
Middletown, RI 02842

Daniel Crocker, Esq.
180 South Main Street
Providence, RI 029093

Thomas L. Grady, Esq.
Lenihan, Grady & Steele
6 Canal Street
P. O. Box 541
Westerly, RI 02891

James P. Marusak, Esq.
GIDLEY SARLI & MARUSAK
One Turks Head Place, Suite 900
Providence, RI 02903

George W. Wright, Esq.
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: September 19, 2005

B. Brown
_______________________