UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON YORK and MAUREEN YORK,<br><br>Plaintiffs,<br><br>v.<br><br>DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.,<br><br>Defendants,<br><br>v.<br><br>WILLIAMS MOVING COMPANY,<br><br>Third-Party Defendant. | C.A. No. 04-551S |

**<u>JOINT MOTION FOR SUMMARY JUDGMENT AND RULE 54(b) CERTIFICATION OF DEFENDANT DAY TRANSFER COMPANY AND THIRD-PARTY DEFENDANT WILLIAMS MOVING COMPANY</u>**

Defendant, Day Transfer Company and Third Party Defendant, Williams Moving Company, pursuant to Rule 56(b) F.R.C.P., hereby move for Summary Judgment as to all claims, cross-claims and third-party actions against them, there being no question of material fact and such Defendants being entitled to Summary Judgment as a matter of law. The Defendants also seek an express determination and entry of Judgment pursuant to Rule 54(b), there being no just reason for delay in disposing of all claims as to fewer than all parties.

In further support hereof, the Defendants submit the attached Memorandum, Affidavits, Exhibits and Statement of Undisputed Fact pursuant to local Rule 56(a).

**Request for Oral Argument:** The undersigned hereby requests oral argument on the Motion submitted .

Respectfully submitted,
Defendants, Day Transfer Company
and Williams Moving Company,
by their attorneys.

Attorneys for Third-Party Defendant
WILLIAMS MOVING COMPANY
and for
Defendant
DAY TRANSFER COMPANY

/s/ James P. Marusak
James P. Marusak, Esq. #2470
GIDLEY SARLI & MARUSAK
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644

George W. Wright, Esq.
GEORGE W. WRIGHT &
ASSOCIATES, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
pro hac vice
(201) 342-8884

**CERTIFICATION**

**The document has been filed electronically and it is available for viewing and downloading from the ECF system."**

I hereby certify that I caused a true and accurate copy of the within document to be served upon the following counsel of record on this ______ day of August, 2006:

Joseph R. Palumbo, Jr., Esq.
Attorney for Plaintiffs
294 Valley Road
Middletown, RI 02842

Michael Edwards, Esq./William R. Grimm, Esq.
HINCKLEY, ALLEN & SNYDER, LLP
Attorneys for Defendant
APOLLO VAN LINES, INC.
1500 Fleet Center
Providence, RI 02903

Robert K. Taylor, Esq.
Carolyn P. Medina, Esq.
PARTRIDGE, SNOW & HAHN LLP
Attorneys for Defendant
ANDREWS EXPRESS AND WAREHOUSE, INC.
180 South Main Street
Providence, RI 02903

/s/James P. Marusak

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and MAUREEN YORK,

Plaintiffs,

v.

DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.,

Defendants,

v.

WILLIAMS MOVING COMPANY,

Third-Party Defendant.

C.A. No. 04-551S

# MEMORANDUM OF LAW IN SUPPORT OF DAY TRANSFER'S AND WILLIAMS MOVING'S MOTION FOR SUMMARY JUDGMENT

James P. Marusak, Esq.
GIDLEY SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644

-and-

George W. Wright, Esq. (Pro Hac Vice)
Narinder S. Parmar, Esq.
GEORGE W. WRIGHT & ASSOCIATES, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
(201) 342-8884

Attorneys for Defendant DAY TRANSFER COMPANY and Third-Party Defendant WILLIAMS MOVING COMPANY

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | iv |
| PRELIMINARY STATEMENT | | 1 |
| LEGAL ARGUMENTS | | 2 |
| POINT I: | THE SUMMARY JUDGMENT STANDARD | 2 |
| POINT II: | DAY TRANSFER'S LIABILITY UNDER COUNT I ALLEGING A CARMACK CLAIM SHOULD BE LIMITED BY THE GBL'S RELEASED VALUATION TERMS | 3 |
| A. | The Carmack Amendment | 3 |
| B. | Carmack Authorizes Carrier Limitations of Liability | 4 |
| C. | The Code of Federal Regulations Applicable to Government Transportation Agreements Require DOD Personnel to Release Their Household Goods for Transportation at $1.25 Per Pound Absent a Higher Declaration | 5 |
| | (1) The Government Bill of Lading ("GBL") | 5 |
| | (2) The DOD Rate Solicitation D-8 | 6 |
| | (3) Code of Federal Regulations | 7 |
| D. | Long-Established Case Law Holds That Carrier Limitations of Liability Are Enforceable | 9 |
| | (1) Shipper-Issued Bills of Lading | 9 |
| | (2) Plaintiffs Are Bound by the GBL Issued by the DOD With Their Authority | 12 |

| | | Page |
|---|---|---|
| POINT III: | PLAINTIFFS' CLAIMS FOR SPECIAL OR CONSEQUENTIAL DAMAGES MUST BE DISMISSED........................................................ | 16 |
| A. | Plaintiffs' Recovery For All General and Consequential Damages is Limited to the GBL's Released Valuation......... | 16 |
| B. | Plaintiffs' Consequential Damages Are Not Recoverable Because They Were Not Reasonably Forseeable and DAY TRANSFER and WILLIAMS MOVING Were Not Given Pre-Shipment Notice of Special Circumstances........................................... | 18 |
| POINT IV: | COUNT II AGAINST DAY TRANSFER ALLEGING NEGLIGENCE SHOULD BE DISMISSED AS ALL STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY THE CARMACK AMENDMENT......... | 20 |
| A. | All State Law Claims Arising from an Alleged Breach of a Bill of Lading Are Completely Preempted by the Carmack Amendment........................ | 21 |
| B. | Plaintiffs' Tort Count Based on Alleged Negligent Claim-Handling or "Remediation" is Preempted by Carmack...................................................... | 25 |
| C. | Plaintiffs' Other Tort Claims Resulting From Mold Contamination Are Preempted............................ | 27 |
| D. | Plaintiffs' Only Viable Cause of Action is a Statutory Carmack Claim Against DAY TRANSFER for Breach of the GBL.......................................................... | 28 |
| POINT V: | PLAINTIFFS' COUNT III BROKER CLAIM AGAINST DAY TRANSFER SHOULD BE DISMISSED..................................................... | 29 |
| POINT VI: | PLAINTIFFS' COUNT IX BROKER CLAIM AGAINST WILLIAMS MOVING SHOULD BE DISMISSED AS WILLIAMS HAS NO LEGAL DUTY TO PLAINTIFFS AS DAY TRANSFER'S DISCLOSED HOUSEHOLD GOODS BOOKING AGENT............................................................. | 32 |

**Page**

POINT VII: EVEN IF DAY TRANSFER AND WILLIAMS MOVING WERE DEEMED TO BE BROKERS, THEY WOULD STILL HAVE NO LIABILITY TO PLAINTIFFS........................................ 35

POINT VIII: WILLIAMS MOVING HAS NO LEGAL DUTY TO OR PRIVITY WITH PLAINTIFFS AND, ALTERNATIVELY, ANY LIABILITY OF WILLIAMS MOVING IS LIMITED BY THE GBL........................................ 37

A. The DOD and Plaintiffs Have No Privity With WILLIAMS MOVING........................................ 37

B. As an Agent of DAY TRANSFER, WILLIAMS MOVING Is Entitled to Limit Any Liability Under the GBL........................................ 39

CONCLUSION........................................ 42

# TABLE OF AUTHORITIES

**CASES** **Page**


Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913) ........ 21-22

Alessandra v. Mullen Brothers, Inc., 1999 WL 959684 (Mass.Super. 1999) ........ 28

Am. Cyanamid Co. v. New Penn Motor Express, Inc., 979 F.2d 310 (3d Cir. 1992) ........ 9-10

Am. Home Assurance Co. v. CSX Lines, Inc., 2005 WL 735041 (S.D.N.Y. 2005) ........ 11-12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct., 2505, 91 L.E.d 202 (1986) ........ 2

Atchison, T. & S.F. Ry. v. Harold, 241 U.S. 371, 36 S.Ct. 665, 60 L.Ed. 1050 (1916) ........ 22-23

Baggett Transp. Co. v. United States, 23 Cl.Ct. 263 (Cl.Ct. 1991), aff'd. 969 F.2d 1028 (Fed. Cir. 1992) ........ 37-38

Burnell v. Butler Moving & Storage, 826 F.Supp. 65 (N.D.N.Y. 1993) ........ 13

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........ 2

Central Transport Intern., Inc. v. U.S., 63 Fed.Cl. 336 (Cl.Ct.2004) ........ 38

CGU Int'l. Ins., PLC v. Keystone Lines Corp., 2004 WL 1047982 (N.D.Cal. 2004) ........ 35-36

Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137 (1915) ........ 23, 25

Cleveland v. Beltman North American Van Lines Co., Inc., 30 F.3d 373 (2d Cir. 1994) ........ 23, 25-26

Page


Commercial Union Ins. Co. v. Forward Air, Inc., 50 F.Supp.2d 255 (S.D.N.Y. 1999)........ 40

Contempo Metal Furniture Co. of Cal. v. E. Texas Motor Freight Lines, Inc., 661 F.2d 761 (9th Cir. 1981)........ 18, 19

Custom Cartage, Inc. v. Motorola, Inc., 1999 WL 965686 (N.D.Ill. 1999)........ 31

Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014 (Fed.Cir. 1995)........ 38

Fox v. Kachina Moving & Storage, 1998 WL 760268 (N.D.Tex. 1998)........ 34

George Weintraub & Sons, Inc. v. E.T.A. Transp., Inc., 2003 WL 22023907 (S.D.N.Y. 2003)........ 30

Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916)........ 22

Glass v. Crimmins Transfer Co., 299 F.Supp.2d 878 (C.D.Ill. 2004)........ 28

Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 23 S.Ct. 754, 47 L.Ed. 1171 (1903)........ 20

Gordon v. United Van Lines, Inc., 130 F.3d 282 (7th Cir. 1997)........ 23, 25

Great Northern Ry. Co. v. O'Connor, 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703 (1914)........ 13

Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854)........ 19

Hart v. Pennsylvania R.R. Co., 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717 (1884)........ 9

Hector Martinez & Co. v. Southern Pac. Transp. Co., 606 F.2d 106 (5th Cir. 1979)........ 18

Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261 (8th Cir. 1984)........ 28

| | Page |
|---|---|
| Hoskins v. Bekins Van Lines, 343 F.3d 769 (5th Cir. 2003)………………… | 23 |
| Howe v. Allied Van Lines, Inc., 622 F.2d 1147 (3d Cir. 1980)…………… | 14-15, 16, 24 |
| Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir. 1987)…………… | 4, 24 |
| Hughes Aircraft v. North American Van Lines, Inc., 970 F.2d 609 (9th Cir. 1992)…………… | 10, 24 |
| Husman Construction Co. v. Purolator Courier Corp., 832 F.2d 459 (8th Cir. 1987)…………… | 28-29 |
| Kansas City Southern Ry. Co. v. Carl, 227 U.S. 639, 33 S.Ct. 391, 57 L.Ed. 683 (1913)…………… | 17 |
| Louisville & Nashville R. Co. v. Rice, 247 U.S. 201, 38 S.Ct. 429, 622 L.Ed. 1071 (1918)…………… | 22 |
| Main Road Bakery v. Consolidated Freightways, Inc., 799 F.Supp. 26 (D.N.J. 1992)…………… | 18 |
| Marohn v. Burham Van Services, Inc., 478 F.Supp. 49 (N.D.Ill. 1979)…………… | 14, 15, 16 |
| Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)…………… | 2 |
| Matter of Interstate Van Lines, Inc., GSBCA No. 16250-RATE, 2004 WL 1067986 (G.S.B.C.A. May 3, 2004)…………… | 38, 39 |
| Mech. Tech. Inc. v. Ryder Truck Lines, Inc., 776 F.2d 1085 (2d Cir. 1985)…………… | 10 |
| Missouri Pacific R.R. Co. v. Elmore & Stahl, 377 U.S. 134 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964)…………… | 4 |
| Moffitt v. Bekins Van Lines Co., 6 F.3d 305 (5th Cir. 1993)…………… | 23-24 |
| Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377 (5th Cir. 1998)…………… | 23 |

**Page**

Natl. Bus Traffic Assn. v. U.S., 143 F.Supp. 689 (D.N.J. 1956)............... 30

Neiman Marcus Group, Inc. v. Quast Transfer, Inc., 1999 WL 436589 (N.D.Ill. 1999)............................................................ 10

New York, N.H. & H.R. Co. v. Nothnagle, 346 U.S. 128 73 S. Ct. 986, 97 L.Ed. 1500 (1953)............................................... 22

Nichols v. Mayflower Transit, LLC, 368 F.Supp.2d 1104 (D.Nev. 2003)................................................................... 34

Norfolk Southern Ry. Co. v. James N. Kirby, Pty, Ltd., 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004).......................... 40

O'Donnell v. Earle W. Noyes & Sons, 98 F.Supp.2d 60 (D.Me. 2000)..................................................................... 34

Owens-Corning Fiberglass Corp. v. U.S. Air, 853 F.Supp. 656 (E.D.N.Y. 1994)............................................................. 29

Pastime Amusement Co. v. Southeastern Express Co., 181 S.C. 203, 186 S.E. 283 (1936)........................................................ 17

Penske Logistics, Inc. v. KLLM, Inc., 285 F.Supp. 2d 468 (D.N.J. 2003)..................................................................... 10

Phoenix Assurance Co. v. K-Mart Corp., 977 F.Supp. 319 (D.N.J. 1997).............................................................. 35

Power Standards Lab, Inc. v. Federal Express Corp., 127 Cal.App.4th 1039, 26 Cal.Rptr.3d 202 (2005)............................................ 26

Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126 (2d Cir. 2000)............... 30

Prince v. United Van Lines, Inc., 1997 WL 53121 (N.D.Tex. 1997).......... 34

Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991).......................... 2

Reider v. Thompson, 399 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698 (1950)......................................................................... 4

R.H. Fulton v. Chicago, Rock Island and Pacific R.R. Co., 481 F.2d 326 (8th Cir. 1973)................................................... 24

| | Page |
|---|---|
| Rini v. United Van Lines, Inc., 104 F.3d 502 (1st Cir. 1997)................ | 20, 23 |
| Rocky Ford Moving Vans, Inc. v. U.S., 501 F.2d 1369 (8th Cir. 1974)........................................................... | 14, 15, 16 |
| Serv. Storage, Inc., B-183,331 1975 WL 8369 (Comp. Gen. June 10, 1975)................................................................. | 39 |
| Servicemaster Company, L.P. v. FTR Transport, Inc., 868 F.Supp. 90 (E.D.Pa. 1994)..................................................... | 35 |
| Shao v. Link Cargo (Taiwan) Limited, 986 F.2d 700 (4th Cir. 1993)................................................................ | 24 |
| Siren, Inc. v. Estes Express Lines, 249 F.3d 1268 (11th Cir. 2001)............................................................... | 9, 10 |
| Smith v. United Parcel Service, 296 F.3d 1244 (11th Cir. 2002)............................................................... | 23 |
| Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936)........................................... | 16-17, 28 |
| Starmakers Pub. Corp. v. Acme Fast Freight, Inc., 615 F. Supp. 787 (S.D.N.Y. 1985)........................................................... | 18 |
| Strike v. Atlas Van Lines, Inc., 102 F.Supp.2d 599 (M.D.Penn 2000)............................................................. | 28 |
| Tayloe v. Kachina Moving & Storage, Inc., 16 F.Supp.2d 1123 (D. Ariz. 1998)............................................................... | 27-28 |
| Taylor v. Mayflower Transit, Inc., 161 F.Supp.2d 651 (W.D.N.C. 2000)............................................................ | 34 |
| Thrasher Trucking Co. v. Empire Tubulars, Inc., 983 F.2d 46 (5th Cir. 1993)..................................................... | 30-31 |
| Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983).................................. | 22 |
| Travelers Indem. Co. v. SAM HOUSTON, 26 F.3d 895 (9th Cir. 1994)............................................................ | 11, 35 |

**Page**

Trism Specialized Carriers, Inc., 96-1 CPD ¶202, 1996 WL 191150 (Comp.Gen. April 18, 1996) .......... 38

Underwriters at Lloyds of London v. North American Van Lines, 890 F.2d 1112 (10th Cir. 1989) .......... 24

United Traffic Consultants, Inc. v. Gordon Trucking, Inc., 2003 WL 21397697 (D.Or. 2003) .......... 31

United Van Lines, LLC v. Weisberg, Case No. 04-80160-CIV (S.D.Fla. 2004) .......... 26-27

Universal Storage Warehouses, 43 Comp.Gen. 290, B-150, 463, 1963 CPD P75, 1963 WL 2046 (Sept. 24, 1963) .......... 39

U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc., 296 F.Supp.2d 1322 (S.D.Ala. 2003) .......... 29

Valkenburg, K.-G. v. S.S. HENRY DENNY, 295 F.2d 330 (7th Cir. 1961) .......... 34

W.D. Lawson & Company v. Penn Central Company, 456 F.2d 419 (6th Cir. 1972) .......... 24

Wagman v. Federal Express, 844 F.Supp. 247 (D.Md. 1994) .......... 29

Werner v. Lawrence Transp. Sys., Inc., 52 F.Supp2d 567 (E.D.N.C. 1998) .......... 34

**STATUTES** **Page**

49 U.S.C. §14706........................................................... 3, 4, 5, 6

49 U.S.C. §13102........................................................... 30, 31

49 U.S.C. §13907........................................................... 33

**REGULATIONS**

41 C.F.R. § 102-118........................................................... 5, 7

41 C.F.R. § 102-118.20........................................................... 8

41 C.F.R. § 102-118.35........................................................... 8

41 C.F.R. § 102-118.135........................................................... 7

41 C.F.R. § 102-118.140........................................................... 7, 39

49 C.F.R. § 371.2(a)........................................................... 30, 31

49 C.F.R. § 375.201-203........................................................... 5

Defense Transportation Regulation Part IV, DOD 4500.9-R.................... 32-33

**COURT RULES**

Fed. R. Civ. P. 56........................................................... 1, 2

**MISCELLANEOUS**

U.S. Government Freight Transportation Handbook............................. 7, 39-40

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of defendant DAY TRANSFER COMPANY ("DAY TRANSFER") and third-party defendant WILLIAMS MOVING COMPANY ("WILLIAMS MOVING") in support of their motion for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment as follows:

(1) Limiting DAY TRANSFER's liability to the maximum sum of $15,000 under Count I of the Second Amended Complaint alleging a Carmack Amendment claim against DAY for breach of an interstate transportation contract;

(2) Dismissing Count II of the Second Amended Complaint alleging negligent claim-handling by DAY TRANSFER;

(3) Dismissing Count III of the Second Amended Complaint alleging a claim against DAY TRANSFER for negligent brokerage services;

(4) Dismissing Count IX of the Second Amended Complaint alleging a claim against WILLIAMS MOVING for negligent brokerage services or, alternatively, limiting any liability of WILLIAMS MOVING to the maximum amount of $15,000;

(5) Dismissing all other claims and cross-claims against WILLIAMS MOVING and DAY TRANSFER.

In the event the Court grants DAY TRANSFER and WILLIAMS MOVING summary judgment for the above relief, DAY TRANSFER will stipulate to the entry of a final Judgment against it in the amount of $15,000.

## LEGAL ARGUMENTS

## POINT I

## THE SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted when the materials of record "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

In determining whether there is a disputed issue of material fact, the inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct., 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "[I]ts opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case and which the party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991) [the non-movant may not "rest upon mere allegations, general denials, or ... vague statements…"]. Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the Court may grant summary judgment. Anderson, 477 U.S. at 249-50.

As established by DAY TRANSFER's and WILLIAMS MOVING's Statement of Undisputed Facts in support of the instant motion, the terms of the relevant Bill of Lading transportation agreement between the Government and DAY TRANSFER and the applicable federal law are clear and straightforward. The factual record and legal authorities warrant summary judgment in favor of DAY TRANSFER and WILLIAMS MOVING.

## POINT II

## DAY TRANSFER'S LIABILITY UNDER COUNT I ALLEGING A CARMACK CLAIM SHOULD BE LIMITED BY THE GBL'S RELEASED VALUATION TERMS

Count I of the Second Amended Complaint alleges DAY TRANSFER's liability under the Carmack Amendment for damage to plaintiffs' shipment.

### A. The Carmack Amendment.

The Carmack Amendment is incorporated by reference in the applicable GBL and the DOD's Domestic Personal Property Rate Solicitation D-8. Carmack governs carrier liability arising from loss and damage to goods transported under interstate bills of lading. Carmack is now set forth in the ICC Termination Act of 1995 ("ICCTA") at 49 U.S.C. §14706(a)(1) and recites, in relevant part:

> A carrier providing transportation or service subject to jurisdiction … shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction … are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property….

The federal statutory scheme embodied in the Carmack Amendment represents a deliberate balancing of shipper and carrier interests by Congress. Under Carmack, shippers are relieved of the burden of meeting traditional tort requirements; for instance, proving which of several carriers caused the loss and whether the carrier's conduct actually or proximately caused the loss. Carmack replaces tort principles with a type of strict carrier liability to which the carrier may assert only limited defenses. Missouri Pacific R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); Reider v. Thompson, 339 U.S. 113, 119, 70 S. Ct. 499, 94 L.Ed. 698 (1950) [Carmack Amendment relieves shipper of the burden of searching for the particular carrier at fault].

While carriers lost some of their common law defenses with the enactment of Carmack, in 1906, they gained the certainty that the rules governing proof of loss or damage and carrier liability would be uniformly applied throughout the nation regardless of what route a shipment might take. Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir. 1987). Carmack limits carrier liability to the shipper's "actual loss" for all damages resulting from loss, damage or delay of property in interstate transit and no more.

**B. Carmack Authorizes Carrier Limitations of Liability.**

Title 49 U.S.C. § 14706 (c)(1)(A) authorizes an interstate motor carrier to:

> … establish rates for the transportation of property...under which the liability of the carrier for such property is limited to a value established by written...declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation (emphasis added).

In particular, interstate household goods carriers may limit their liability for property loss or damage pursuant to 49 U.S.C. §14706(f) which provides:

> Limiting Liability of Household Goods Carriers to Declared Value. - A carrier or group of carriers subject to jurisdiction under subchapter I or III of chapter 135 may petition the [Surface Transportation] Board to modify, eliminate or establish rates for the transportation of household goods under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper or by a written agreement. (emphasis added).[1]

The Government shipment at issue in this case is governed by federal regulations and decisional law uniquely applicable to interstate transportation of military household goods. Under the DOD's system for procurement of motor carrier interstate transportation services for its service members, there is no negotiation directly between the service member and the carrier. Instead, all contract terms are established by the Government and the motor carrier accepts the Government's shipment offering strictly subject to its terms and conditions set forth in the GBL, Rate Solicitation and regulations.

## C. The Code of Federal Regulations Applicable to Government Transportation Agreements Require DOD Personnel to Release Their Household Goods for Transportation at $1.25 Per Pound Absent a Higher Declaration.

### (1) The Government Bill of Lading ("GBL").

The relevant GBL (Box 16) recites, in pertinent part, as follows: "... This bill of lading is governed by the regulations relating thereto as published in Title 41, Part 102-118 of the Code of Federal Regulations...". The YORKS' GBL (Box 27) further

[1] Pursuant to this enabling statute, the United States Department of Transportation ("DOT") has issued released rate orders and promulgated regulations (49 C.F.R. §§ 375.201-203) that permit household goods carriers to limit liability.

states that it was "*Issued at lowest valuation cited in appropriate tender or tariff unless otherwise stated hereon." The applicable Government tariff or special rate authority governing plaintiffs' 2004 shipment is the DOD's RS D-8.

**(2) <u>The DOD Rate Solicitation D-8</u>.**

The DOD's RS D-8 was in effect during April and May, 2004 when JPPSO offered the shipment to DAY TRANSFER and issued the GBL after DAY's acceptance of the shipment. RS D-8 recites in Item 306, in relevant part:

> <u>LIMITATION OF CARRIER LIABILITY</u>
>
> a. Rates and charges in this rate solicitation apply to a released value of $1.25 times the net weight of the shipment (in pounds) unless otherwise stated on BL ...
>
> b. The carrier accepts property for shipment on the BL under the following terms and conditions:
>
> (1) Carrier's legal liability for loss of damage to goods shall be the same as set forth in the Interstate Commerce Act (Title 49 U.S.C. 14706) (in conformity with the rules of the Surface Transportation Board) ....
>
> * * *

RS D-8 further recites in Item 308 as follows:

> <u>DECLARATION OF VALUE – LIABILITY LIMITATION</u>
>
> a. The terms "released value," "declared value," and "value declared by the shipper" as used in this rate solicitation, shall have the same meaning.
>
> b. <u>The carrier's **maximum liability** shall be $1.25 times the net weight (in pounds) of the shipment</u> for any lost or damaged article unless the shipment is released at either a lump sum value declared by the shipper or an amount greater than $1.25 times the net weight (in pounds) of the shipment, whichever is greater.

> c. The BL is released at the lowest value herein, unless otherwise stated. The BL shall be annotated with appropriate statement citing the increased valuation.
>
> d. If the shipper fails to make the entry required above, the shipment shall be deemed released at $1.25 times the net weight (in pounds) of the shipment.
>
> e. The released value and the carrier's maximum liability (whether or not loss or damage occurred from carrier negligence), as determined under this item, **shall apply to any claim resulting from the performance or failure to perform by the carrier of any services,** including accessorial services which the carrier contracted is to perform. (emphasis added).

Essentially, the GBL incorporates the DOD's RS D-8 in the same way that an interstate carrier's standard form Bill of Lading incorporates the terms and conditions of the carrier's published tariff.

**(3) Code of Federal Regulations.**

Title 41 C.F.R. § 102.118 (Public Contracts and Property Management, Federal Property Management Regulation System, Transportation, Transportation Payment and Audit, Ordering and Paying for Transportation and Transportation Services), referenced in the GBL (Box 16), states, in pertinent part:

> Subpart B - - § 102.118.135.
>
> The mandatory terms and conditions governing the use of bills of lading are contained in this part and the "U.S. Government Freight Transportation Handbook."
>
> * * *
>
> § 102.118.140(b).
>
> The shipment must be made at the restricted or limited valuation specified in the tariff or classification or limited contract, arrangement or exemption at or under which the

> lowest rate is available, unless indicated on the GBL or bill of lading….(emphasis added).

* * *

The above regulations are applicable to all Government agencies which are required to incorporate them into their internal regulations. See, 41 C.F.R. §§ 102-118.20 and 118.35.

49 C.F.R. § 102-118.35, Subpart A, defines "Released Value" as follows:

> Released value is stated in dollars and is considered the assigned value of the cargo for reimbursement purposes, not necessarily the actual value of the cargo. Released value may be more or less than the actual value of the cargo. The released value is the maximum amount that could be recovered by the agency in the event of loss or damage for the shipments of freight and household goods. In return, when negotiating for rates and the released value is proposed to be less than the actual value of the cargo, the TSP should offer a rate lower than other rates for shipping cargo at full value. The statement of released value may be shown on any applicable tariff, tender, contract, transportation document or other documents covering the shipment (emphasis added).

In view of the plain language of the DOD's RS D-8, Item 308 and Section 102-118.35 quoted above, the YORKS may not recover more than the shipment's released value. DAY TRANSFERS' "maximum liability" under Item 308(b) may not exceed the released value amount "in the event of loss or damage" with respect to "any claim resulting from the performance or failure to perform by the carrier of any services…" (Item 308(e)). RS D-8 Item 308(e) further states that the released value limitation of liability applies "whether or not loss or damage occurred from carrier negligence." It follows that any attempt by plaintiffs to evade the Government-mandated

$1.25 per pound limitation by pleading negligence and other tort theories of recovery must fail.

**D. Long-Established Case Law Holds That Carrier Limitations of Liability Are Enforceable.**

Well over a century ago, the United States Supreme Court explained the commercial justification for enforcing carriers' contractual limitations of liability in Hart v. Pennsylvania R.R. Co., 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717 (1884):

> ...There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier... 112 U.S. at 340.

Where, as here, the terms of the relevant contract of carriage are established, not by the carrier, but by the Government acting as the authorized shipping agent of its own employees, the justification for enforcing such terms is all the more compelling.

**(1) Shipper-Issued Bills of Lading.**

The Courts have held that where a sophisticated shipper, like the U.S. Government or a commercial entity, drafts its own bill of lading or other transportation contract, it is presumed that the shipper does so with full knowledge of the consequences and must be held to its own terms. Siren, Inc. v. Estes Express Lines, 249 F.3d 1268, 1270 (11th Cir. 2001) ["This Court does not deem it proper or necessary to protect shippers from themselves"]; Am. Cyanamid Co. v. New Penn Motor Express, Inc., 979 F.2d 310, 314 (3rd Cir. 1992) ["[t]he released value was specified on [the shipper's] own

form of bill of lading"]; Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 612 (9th Cir. 1992) [shipper "drafted the contract and directly negotiated its terms"]; Mech. Tech. Inc. v. Ryder Truck Lines, Inc., 776 F.2d 1085, 1086 (2d Cir. 1985) [the shipper "completed a bill of lading on one of [its] own forms"]; Penske Logistics, Inc. v. KLLM, Inc. 285 F.Supp. 2d 468, 475 (D.N.J. 2003) ["...shippers, drafted the Bill of Lading and chose the release rate amount..."]; Neiman Marcus Group, Inc. v. Quast Transfer, Inc., 1999 WL 436589, *2 (N.D. Ill. 1999) [the bill of lading was a "pre-printed Nieman Marcus form"].

In Am. Cyanamid, supra, the Third Circuit held:

> Cyanamid does not claim to be an unsophisticated shipper at the mercy of an experienced carrier. The released value was specified on Cyanamid's own form of bill of lading and, in these circumstances, it seems fair to hold it to the terms it established. ... we consider it somewhat bizarre for a shipper, obviously in a better position to know the value of the goods shipped than the carrier, to contend that the released value it designated was unreasonable. 979 F.2d at 314.

More recently, the Eleventh Circuit considered the limitation terms of a shipper-drafted bill of lading. In Siren, supra, the shipper issued its own bill of lading incorporating industry-specific terminology that included a limitation of liability. The Court of Appeals held:

> [W]hen a shipper drafts a bill of lading, incorporating language which is universally understood throughout the motor carrier industry to limit the liability of the carrier, said shipper will be bound by the terms of the contract, irrespective of whether the shipper had actual knowledge of the limiting aspect of those terms.
> 249 F.3d. at 1274.

As in the above-cited cases, the applicable carrier limitation of liability terms are not found in DAY TRANSFER's Bill of Lading or Tariff, but in the shipper-Government's own GBL, Rate Solicitation D-8 and published regulations. If it were the plaintiff, the DOD certainly could not argue that it did not have an opportunity to select a higher valuation on this shipment or that its $1.25 per lb. released valuation is unreasonable. The DOD itself interviewed YORK several months before the shipment to obtain his property valuation instructions, issued its own shipment offering to DAY TRANSFER and then issued its own GBL, incorporating its own Rate Solicitation, published Government regulations and shipping manuals.

Ms. Kagebein testified that YORK was advised months before the move of the Government's $1.25 per pound released valuation limitation of liability and his option to select a higher valuation at his own expense. Ms. Kagebein further testified, and YORK admits, that he declined the option of selecting a higher valuation on the DD Form 1299. YORK claims he does not recall being advised of the $1.25 per pound limitation, but he does recall making a decision to waive higher valuation on the shipment because he already had a $75,000.00 renter's policy covering the shipment.

The courts are particularly inclined to enforce released valuation terms where the shipper makes the deliberate choice of waiving increased carrier liability on the bill of lading in favor of obtaining its own separate insurance on the goods. Travelers Indem. Co. v. SAM HOUSTON, 26 F.3d 895, 900 (9th Cir. 1994)["a shipper who chooses to insure its cargo through an independent insurance company has made a conscious decision not to opt out of COGSA's liability limitation"]; American Home Assurance Co. v. CSX Lines, Inc., 2005 WL 735041,*4 (S.D.N.Y.2005) ["A...factor supporting

inclusion of the terms of the bill of lading [containing a $1,000 limitation of liability provision]...is Pfizer's decision to insure independently its cargo shipments with AHA"]. Regardless of what information was actually exchanged between Ms. Kagebein and YORK months before the move, or what plaintiff recalls about that counseling session, plaintiffs' are legally bound by the GBL contract that the JPPSO made with DAY TRANSFER at plaintiffs' request.

**(2) Plaintiffs Are Bound by the GBL Issued By the DOD With Their Authority.**

It is entirely irrelevant to DAY TRANSFER's liability whether or not the DOD sufficiently advised YORK of his shipment valuation options, or accurately recorded his valuation request on the GBL. The dispositive fact is that the DOD, by its JPPSO Deputy Chief Barbara Kistler, acknowledges that, as the contracting shipper, it released the shipment to DAY TRANSFER at the maximum valuation of $1.25 per pound pursuant to its own GBL.

The JPPSO relied on the typed DD Form 1299, prepared and transmitted on or about February 27, 2004 by TMO representative Rosalinda Kagebein to the JPPSO, which contains no indication in Box 13 (Remarks) that YORK requested additional valuation on the shipment. On April 9, 2004 the JPPSO then issued its e-mail shipment offering to DAY TRANSFER reciting that the shipment's "Insurance" was "BASIC." WILLIAMS MOVING accepted that e-mail offer as booking agent on behalf of DAY TRANSFER after which the JPPSO issued the relevant GBL.

The GBL (Box 17) plainly identifies the "Shipper" as "JPPSO-San Antonio." The DOD's Rate Solicitation D-8 is incorporated into the GBL (Box 31) by reference and explicitly states in Item 306(a) that the carrier's liability is limited to $1.25

times the net weight of the shipment "...unless otherwise stated on BL" (emphasis added). As if any more clarity were needed, RS D-8, Item 308(d), further states, "If the shipper [JPPSO] fails to make the [increased valuation] entry required above, the shipment shall be deemed released at $1.25 [per pound of shipment weight]." The JPPSO made no notation in GBL Box 25 or 27 reflecting any request for additional valuation on the YORKS' goods. That is, the JPPSO failed to declare any increased valuation on its own GBL. Consequently, DAY TRANSFER's maximum liability to plaintiffs is limited to $15,000 with respect to plaintiffs' 12,000 lb. shipment.

DAY TRANSFER's liability cannot be enhanced by any misunderstanding or miscommunication between the DOD and plaintiffs. In Great Northern Ry. Co. v. O'Connor, 232 U.S. 508, 514-15, 34 S.Ct. 380, 58 L.Ed. 703 (1914) the United States Supreme Court held, under analogous facts, that the carrier was entitled to the benefit of the Bill of Lading limitation of liability where the shipper's freight forwarder agreed to the limitation, regardless of whether the shipper actually authorized the freight forwarder to limit the carrier's liability. The High Court commented, "If there was any undervaluation...or violations of her instructions...the plaintiff has her remedy against that company [freight forwarder]"]; See also, Burnell v. Butler Moving & Storage, 826 F.Supp. 65, 68-69 (N.D.N.Y. 1993) [carrier had right to assume that household goods shipper's forwarding agent had authority to agree to carrier's bill of lading limitation terms].

It is undisputed that plaintiffs expressly authorized the DOD to hire a motor carrier to transport their goods. In doing so, plaintiffs conferred on the Government actual and apparent authority to make a binding contract of carriage with

DAY TRANSFER, one containing the Government's standard minimum $1.25 per lb. released valuation terms.

In virtually identical situations, other courts addressing carrier limitations of liability involving military household goods shipments have held that the DOD's contracts with carriers are binding on its employees. In Howe v. Allied Van Lines Inc., 622 F.2d 1147 (3d Cir. 1980), the Government negotiated contracts with a household goods carrier to transport the belongings of military personnel. The Third Circuit held that the plaintiffs were bound by the carrier's liability limitation terms negotiated by their employer. Similarly, the Eighth Circuit held in Rocky Ford Moving Vans, Inc. v. U.S., 501 F.2d 1369 (8th Cir. 1974) that the carrier's liability for damage to an Air Force officer's personal property was limited to the agreed $.60 per lb. released value. See also, Marohn v. Burham Van Services, Inc., 478 F.Supp. 49 (N.D.Ill. 1979) [serviceman held bound by $15,000 lump sum liability limit in bill of lading issued by Government as his shipping agent to carrier].

Howe involved 12 cases consolidated for appeal on the issue of whether the appellant military personnel were entitled to the full value of their goods destroyed in transit, or 60 cents per pound as recited in the Government Bills of Lading. The Court of Appeals described the DOD's transportation program as follows:

> All the shipments were arranged by the Department of Defense (DOD), and the carrier received the goods on a government bill of lading issued pursuant to Military Rate Tender No. 1-H, ICC No. 35 (MRT 1-H)...By the terms of MRT 1-H, and the government and carrier bills of lading issued under its authority, the liability of the common carrier for loss or damage is limited to an amount equal to 60 cents per pound per article. 622 F. 2d at 1149.

As all the consolidated cases involved common facts, the Howe Court discussed the claims of one of the plaintiffs:

> Donald Howe, a Lieutenant Commander in the United States Navy, made arrangements for the shipment of his household goods through a representative of MTMC [Military Traffic Management Command]. Under these types of arrangements, the government offers shipment at its expense. Howe, as a member of the armed services, is entitled to this transportation benefit by virtue of federal legislation. He applied for the benefit on DOD Form 1299, and signed an acknowledgement on DOD Form 1797 that he had been briefed concerning the carrier and its liability. Howe was informed that the carrier's liability would be limited to 60 cents per pound per article, and that the goods would be released by the government on a government bill of lading at that valuation. He was also advised that under a federal statute, he could claim from the United States an amount up to $15,000 for any uninsured loss, and that, if he desired, he could also purchase additional insurance.... Id. at 1149-50.

Under facts highly apposite to those in the instant case, the Third Circuit held in Howe that the defendant carrier's liability to the military personnel was limited to $.60 per pound per article as stipulated in the Government Bills of Lading.

In Rocky Ford, supra, the Eighth Circuit similarly held that the Government's Rate Tender deemed all shipments moving under GBLs to be released at a value of 60 cents per pound per article, unless otherwise specified. Thus, the fact that neither the GBL nor the carrier's own bill of lading contained a higher valuation limited the plaintiff's recovery to $.60 per pound per article. 501 F.2d at 1373, n.7.

In Marohn, supra, the plaintiff serviceman challenged the released valuation stated in the GBL. The Court held that, based on the Government's status as the plaintiff's authorized shipping agent that drafted the GBL terms and conditions

limiting the carrier's liability, the plaintiffs were bound by those terms and conditions. 478 F. Supp at 52.

Like the plaintiffs in Howe, Rocky Ford and Marohn, the YORKS are bound by the $.1.25 per pound limitation of liability established by the Government in its GBL and RS D-8 tariff.

## POINT III

## PLAINTIFFS' CLAIMS FOR SPECIAL OR CONSEQUENTIAL DAMAGES MUST BE DISMISSED

### A. Plaintiffs' Recovery For All General and Consequential Damages is Limited to the GBL's Released Valuation.

The GBL's $1.25 per pound released valuation limitation of liability applies to all damages alleged by plaintiffs in this action, whether general or consequential in nature.

The United States Supreme Court held in Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S. Ct. 73, 81 L. Ed. 20 (1936) that the carrier's liability for the shipper's consequential economic losses resulting from the failure to deliver a movie film was limited to the $50.00 per shipment released valuation stipulated in the Bill of Lading. The case arose in a South Carolina state court. The plaintiff-shipper sought recovery of actual and punitive damages for interruption of its movie theater business caused by the carrier's delay in delivering a movie film. The film was shipped under the carrier's filed tariff that limited its liability to $50.00 unless the shipper declared a greater value, which was not done. At trial, the shipper argued that the limitation was only applicable to the actual value of the lost film and that its consequential economic losses were not subject to the limitation. The trial court,

adopting the shipper's view, allowed the jury to return a verdict of $1,500.00 for the shipper. The verdict was affirmed by the Supreme Court of South Carolina. Pastime Amusement Co. v. Southeastern Express Co., 181 S.C. 203, 186 S.E. 283 (1936).

The United States Supreme Court granted certiorari and reversed in a *per curiam* opinion. The High Court held that the carrier's $50 limitation of liability applied to all damages "resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination...The underlying principle is that the carrier is entitled to base rates upon value and that its compensation should bear a reasonable relation to the risk and responsibility assumed." 299 U.S. at 29. The essence of the Supreme Court's decision in Pastime Amusement is that a contractual limitation of carrier liability applies to all alleged damages, however consequential, indirect or remote, arising out of the shipment.

In Kansas City Southern Ry. Co. v. Carl, 227 U.S. 639, 33 S.Ct. 391, 57 L.Ed. 683 (1913), the United States Supreme Court earlier held that the released valuation terms in a contract of carriage are binding even if the shipper can establish that his actual damages are significantly higher:

> ... To permit such a declared valuation to be overthrown by evidence [outside] the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations... 227 U.S. at 652.

Plaintiffs cannot circumvent the GBL's $1.25 per pound limitation of liability by simply alleging extravagant consequential claims for career damage, loss of housing allowance and emotional distress. Even assuming plaintiffs could establish DAY TRANSFER's or WILLIAMS MOVING's liability for such claims, their recoverable

damages would still be limited to the GBL's $15,000 maximum released valuation amount.

**B. Plaintiffs' Consequential Damages Are Not Recoverable Because They Were Not Reasonably Foreseeable and DAY TRANSFER and WILLIAMS MOVING Were Not Given Pre-Shipment Notice of Special Circumstances.**

Special or consequential damages are recoverable only if the shipper gives the carrier advance notice of the special circumstances from which such damages may flow. The shipper must show, not only that the damages were foreseeable, but also that the carrier had actual notice of the special circumstances at the time the contract of carriage was made. This rule is well-established throughout the United States. Contempo Metal Furniture Co. of Cal. v. E. Texas Motor Freight Lines, Inc., 661 F.2d 761, 765 (9th Cir. 1981); Hector Martinez & Co. v. Southern Pac. Transp. Co., 606 F.2d 106, 109 (5th Cir. 1979); Main Road Bakery v. Consolidated Freightways, Inc., 799 F.Supp. 26, 28-29 (D.N.J. 1992); Starmakers Pub. Corp. v. Acme Fast Freight, Inc., 615 F.Supp. 787, 791 (S.D.N.Y. 1985).

Plaintiffs failed to give notice to DAY TRANSFER, through the TMO or JPPSO, of any special circumstances that would give rise to their consequential or special damages demanded in this action. Plaintiffs admit that they did not advise the DOD before the shipment was booked with DAY TRANSFER about any family health-related problems or any other special information besides the basic data recorded by YORK on the DD Form 1299 when he met with Ms. Kagebein. Absent pre-shipment notice of special circumstances, neither DAY TRANSFER nor WILLIAMS MOVING could possibly have anticipated the tenuous chain of events leading to plaintiffs' alleged career

setback, loss of housing allowance, mold reaction or a back sprain that allegedly happened long after the delivery of the shipment in Newport.

The law of special damages is derived from the seminal case of Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854) in which a carrier negligently delayed the shipment of a crankshaft causing a mill to close. The mill operators sued the carrier for their lost profits, but the court disallowed the plaintiff's consequential claim because the carrier was not informed at the time the contract was made that the plaintiffs would have to shut down their mill if delivery was delayed. Hadley has been followed by generations of American courts.

In Contempo Metal, supra, the Ninth Circuit Court of Appeals discussed the Hadley pre-shipment notice rule:

> ...The purpose of this rule is to enable the carrier to protect itself from special damages by negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss. 661 F.2d at 765.

The Ninth Circuit reasoned that the defendant carrier was entitled to preshipment notice of the plaintiff's potential for special damages:

> Because the carrier is taking a risk that events appreciably beyond its control may prevent it from performing the contract, the carrier is entitled to notice of any unforeseeable consequences of nonperformance so that the carrier can protect itself [citation omitted]. Notice after the contract is made does not afford opportunity for this self-protection (emphasis added). Id.

DAY TRANSFER and WILLIAMS MOVING respectfully submit that, as a matter of law, they have no liability to plaintiffs for any special or consequential damages resulting from the handling of the shipment. Neither defendant received any notice from the DOD or the YORKS that plaintiffs would incur special or consequential

damages and neither defendant agreed to bear the risk of such damages. Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 544-45, 23 S.Ct. 754, 47 L.Ed. 1171 (1903).

The undisputed facts establish that neither the DOD nor the YORKS had any pre-shipment communication or agreement whatever with DAY TRANSFER or WILLIAMS MOVING about plaintiffs' now-claimed consequential losses. Nevertheless, plaintiffs seek to foist liability onto DAY TRANSFER and WILLIAMS MOVING for alleged consequential damages that were never contemplated before the shipment, let alone reflected in any agreement. In any event, plaintiffs' alleged damages, whether styled as general or consequential, are limited to the maximum sum of $15,000 based on the $1.25 per pound released valuation terms of the GBL and RS D-8.

## POINT IV

## COUNT II AGAINST DAY TRANSFER ALLEGING NEGLIGENCE SHOULD BE DISMISSED AS ALL STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY THE CARMACK AMENDMENT

Count II of Plaintiffs' Second Amended Complaint alleges, in pertinent part:

> 19. Separate and distinct from its contract with the Yorks to safely and securely transport their goods...Day Transfer undertook the responsibility to remediate the damage caused to the interior and to the dwelling at 505 Wolcott Avenue to make it habitable, and, to remediate the damage to...York's goods...which were salvageable....
>
> 20. Day Transfer negligently undertook its remediation responsibility and as a result the Yorks were damaged....

The Carmack Amendment completely preempts all state and common law causes of action, including negligence, against interstate carriers arising from loss or damage to goods. Rini v. United Van Lines, Inc. 104 F.3d 502, 504 (1[st]Cir. 1997).

Accordingly, plaintiffs' negligence claim against DAY TRANSFER is preempted by Carmack and should be dismissed, despite the misleading characterization of this claim as "separate and distinct" from the transportation contract. As discussed below, plaintiffs' "separate" claim for negligent remediation is, in fact, nothing more than a claim for negligent claim-handling which has been repeatedly held preempted by Carmack as discussed below.

**A. All State Law Claims Arising from an Alleged Breach of a Bill of Lading Are Completely Preempted by the Carmack Amendment.**

Congress enacted the Carmack Amendment in 1906 in response to the chaotic disparity that arose from applying diverse state laws to the interstate transportation of property. The Carmack Amendment set the parameters of carrier liability for loss and damage to goods transported under interstate bills of lading and establishes a national standard of carrier liability.

Within a few years after Carmack's passage, the United States Supreme Court discussed its dual goals of national uniformity and state law preemption. In Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), the Supreme Court defined the scope of Carmack's preemption in sweeping terms:

> Almost every detail of the subject [interstate carrier liability] is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulations with reference to it ... 226 U.S. at 505-506.

Adams Express held that claims arising from the loss or damage to property transported in interstate commerce are governed by Carmack and all state law claims are preempted by it. The Supreme Court declared that the primary objective of the

statute is the establishment of a uniform national policy governing liability of interstate carriers. Id. at 505. The Court explicitly rejected any argument that state law claims can survive Carmack preemption and declared that carrier liability cannot in any way be "increased or diminished by local regulation or local views of public policy." Id. at 506-507.

Three years later, the Supreme Court reaffirmed its ruling in Adams Express in Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). Blish Milling held that Carmack is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation..." 241 U.S. at 196 (emphasis added).

Each succeeding Supreme Court decision construing Carmack's scope followed the markers set down in Adams Express and Blish Milling. See, e.g. Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) [quoting Louisville & Nashville R. Co. v. Rice, 247 U.S. 201, 203, 38 S.Ct. 429, 622 L.Ed. 1071 (1918)] ["As to interstate shipments, ... the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation."]; New York, N.H. & H.R. Co. v. Nothnagle, 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) ["With the ...Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing carriers' liability for property loss."]; Atchison, T. & S.F. Ry. v. Harold, 241 U.S. 371, 378, 36 S.Ct. 665, 60 L.Ed. 1050 (1916) ["... it is not disputable that what is known as the Carmack Amendment ... was an assertion of the power of Congress over the subject of interstate shipments, the

duty to issue bills of lading, and the responsibilities thereunder, which, in the nature of things, excluded state action."]; Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 604, 35 S.Ct. 715, 59 L.Ed. 1137 (1915) [preemption not only applies to state law claims which directly conflict with Carmack, but also encompasses state causes of action purporting to supplement Carmack remedy].

The United States Circuit Courts of Appeal have almost uniformly held that Carmack completely preempts state law claims. Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003); Smith v. United Parcel Service, 296 F.3d 1244, 1246-49 (11th Cir. 2002) [Carmack preempted shippers' claims for damages due to the carrier's alleged failure to provide service]; Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 383 (5th Cir. 1998) [Carmack preempted plaintiff's claims for compensatory, emotional and punitive damages based on the carrier's alleged "egregious conduct in the course of discharging its duties under the shipping contract"]; Rini v. United Van Lines, Inc., 104 F.3d 502, 506 (1st Cir. 1997) ["Preempted state law claims ... include all liability stemming from loss or damage of goods, liability stemming from the claims process and liability related to the payment of claims"]; Gordon v. United Van Lines, Inc., 130 F.3d 282, 289-90 (7th Cir. 1997) [Carmack preempted state law claims against the carrier for alleged fraudulent procurement of the transportation agreement and bad faith claim handling]; Cleveland v. Beltman North American Van Lines Co., Inc., 30 F.3d 373, 379 (2nd Cir. 1994) [Carmack preempted federal common law claim for punitive damages based on alleged bad faith claims handling]; Moffitt v. Bekins Van Lines Co., 6 F.3d 305, 306-07 (5th Cir. 1993) [Carmack Amendment preempted claims of misrepresentations, fraud, gross negligence, intentional infliction of emotional distress

and violation of Texas Deceptive Trade Practices Act]; Shao v. Link Cargo (Taiwan) Limited, 986 F.2d 700, 706-707 (4th Cir. 1993) ["[I]f the Interstate Commerce Commission had jurisdiction over the shipment in this case, Shao's common law claims are preempted by the Carmack Amendment"]; Hughes Aircraft v. North American Van Lines, 970 F.2d 609, 613 (9th Cir. 1992) ["Hughes [the shipper] wisely concede[d] that federal law preempts any state common law action against ... a common carrier."]; Underwriters at Lloyds of London v. North American Van Lines, 890 F.2d 1112, 1120 (10th Cir. 1989) ["[T]he Carmack Amendment preempts state common law remedies against a carrier for negligent damage to goods shipped under a proper bill of lading."]; Hughes v. United Van Lines Inc., 829 F.2d 1407, 1415 (7th Cir. 1987) ["[We] hold that the remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act ..."]; Howe v. Allied Van Lines, Inc., 622 F.2d 1147, 1157 (3rd Cir. 1980) [Carmack Amendment supersedes state law on carrier rates and liability]; R.H. Fulton v. Chicago, Rock Island and Pacific R.R. Co., 481 F.2d 326, 332 (8th Cir. 1973) [Carmack preempts state law claim for negligence]; W.D. Lawson & Company v. Penn Central Company, 456 F.2d 419, 421 (6th Cir. 1972) ["As to the ... issue ... [of] whether or not the Carmack Amendment preempted common law suits ... we hold that it did"].

Against this body of Carmack jurisprudence, plaintiffs assert various state law tort and other ex-contractual claims in their Second Amended Complaint against DAY TRANSFER. As a matter of law, though, Counts II and III against DAY TRANSFER fail to allege claims that are cognizable under Carmack and summary judgment dismissing these claims as preempted by should be granted.

**B. Plaintiffs' Tort Count Based on Alleged Negligent Claim-Handling or "Remediation" is Preempted.**

Under the Waiver Agreement between DAY TRANSFER and WILLIAMS MOVING, WILLIAMS MOVING assumed DAY's responsibility for resolving plaintiffs' claims. WILLIAMS MOVING hired ServiceMaster to a remediate the alleged mold damage to plaintiffs' goods and rented house. Plaintiffs allege in Count II of the Second Amended Complaint that DAY TRANSFER was negligent in its remediation efforts.

Any legal duty of DAY TRANSFER to remediate mold contamination in plaintiffs' goods and residence is merely an integral part of its claim-handling obligation under the GBL. The Courts have held that Carmack and its accompanying federal regulations cover, not just the actual transportation of goods, but also the post-shipment claims process. Thus, state law claims for negligent, fraudulent or bad faith claim-handling have long been held preempted by Carmack. Charleston & Western Carolina Ry. Co., supra, [state statute imposing a $50 penalty for failure to pay claims to a shipper within 40 days held preempted]; Rini, supra. at 506 [Carmack preempted shipper's state law claims against carrier for negligence, misrepresentation and violation of Massachusetts Consumer Protection Act "stemming from the claims process, and liability related to the payment of claims"]; Gordon, supra at 289-90 ["the assertion of fraud in the claims handling process is preempted" because "the claims process is directly related to the loss or damage to the goods that were shipped. Indeed, people would not be involved in the process unless either loss or damage had occurred" (emphasis added)]; Cleveland, supra at 369 [Carmack preempted federal common law claim against carrier for punitive

damages and bad faith claim-handling arising out of alleged "foot-dragging and "stonewalling" of shippers' claim for damaged property].

In Power Standards Lab, Inc. v. Federal Express Corp., 127 Cal.App.4th 1039, 26 Cal.Rptr.3d 202 (2005), the California Court of Appeal rejected the exact argument raised by plaintiffs herein that the claim-handling, or "remediation," process is "separate and distinct" from the transportation of the goods. There, a jury found that Federal Express breached its transportation contract with the plaintiff and breached "the duty of good faith and fair dealing...by unreasonably denying the claim." Id. at 1042. On appeal, Federal Express argued that the plaintiff's state law claims were preempted by the Airline Deregulation Act of 1978 (ADA).

The appellate court relied heavily on Carmack case law and held that the bad faith claim-handling count was indeed preempted by the ADA. The Court reasoned:

> However much PSL insists that it is not seeking to recover because of what happened to its equipment...the contract of carriage cannot be ignored. Without the contract, there would be no declared value coverage, no transportation of PSL's property, no damage, no claim and no delay in paying the claim. It does no violence to the English language to conclude that their contract is at the heart of the parties' dispute. Although PSL tries to reframe the issue as far away as possible from the actual movement of the goods, the fact remains that it all goes back to the contract (emphasis added). Id. at 1049.

In United Van Lines, LLC v. Weisberg, Case No. 04-80160-CIV (S.D.Fla. 2004), the carrier's adjuster took the shippers' transit-damaged property during transportation to repair it. The adjuster, however, somehow lost or destroyed the goods. The shippers argued that the carrier's "undertaking of repairs is a separate contractual undertaking" (p.2) from the interstate transportation. The Court rejected that argument

and held, "What is essentially at issue is the Weisbergs' dissatisfaction with the condition that their goods were delivered in. United's failed attempt at repair and/or replacement, although temporally removed by a period of five months clearly relates to... the agreed transportation" (pp. 4-5). A copy of the Weisberg Order, June 2, 2004, is annexed hereto as Exhibit "A".

DAY TRANSFER's mold-remediation of plaintiffs' goods and residence stemmed directly and entirely from its interstate transportation agreement with the Government. Thus, plaintiffs' negligent remediation claim against DAY is preempted by the Carmack Amendment.

**C. Plaintiffs' Other Tort Claims Based On Mold Contamination Are Preempted.**

Tayloe v. Kachina Moving & Storage, Inc., 16 F.Supp.2d 1123 (D.Ariz. 1998) involved mold contamination of an interstate household goods shipment. Following delivery, one of the plaintiffs allegedly suffered a severe allergic reaction from mold in the shipped goods and from its consequential dispersal in their home. The Court ruled that plaintiffs' recovery was limited to the $100,000 released valuation limitation and their state law tort claims against the carrier were preempted by Carmack. The District Court held:

> [B]ecause Plaintiffs' claims arise out of the interstate transportation of their household goods...and because Kachina [the carrier's disclosed household goods agent] did not undertake any additional duties with respect to the transportation and storage of Plaintiff's goods, the court finds that Plaintiffs' state law claims are preempted against both Defendants under the Carmack Amendment. Id. at 1128.

Tayloe was followed by the Massachusetts Superior Court in Alessandra v. Mullen Brothers, Inc., 1999 WL 959684 (Mass.Super. 1999). The plaintiffs alleged that their goods were sprayed with pesticides while in temporary storage and asserted state law claims against the carrier for property damage and personal injury. The Court held that, although the plaintiffs' alleged bodily injuries were separate from their property damage, the former claims arose out of the interstate transportation of the goods and, therefore, were preempted.

See also, Strike v. Atlas Van Lines, Inc., 102 F.Supp.2d 599 (M.D.Penn 2000)[state law claims arising from negligent spillage of gasoline on plaintiffs' goods causing personal injury to plaintiffs held preempted]; Glass v. Crimmins Transfer Co., 299 F.Supp.2d 878 (C.D.Ill. 2004) [state law claims for breach of contract and fraudulent concealment of water damage and mold contamination held preempted as such claims arose from damage to the transported property].

Based on the above authorities, Count II alleging DAY TRANSFER's negligent mold remediation should be dismissed.

**D. Plaintiffs' Only Viable Cause of Action is a Statutory Carmack Claim Against DAY TRANSFER for Breach of the GBL.**

Actions against an interstate carrier for loss or damage to goods in transit, whether designated in tort or contract, must proceed in contract. Under federal law, there can be no recovery in excess of the amount stipulated in the contract of carriage. Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261, 1264 (8th Cir. 1984) [citing Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 30 (1936)]; see also Husman Construction Co. v. Purolator Courier Corp., 832 F.2d 459, 461 (8th Cir. 1987);

[carrier may limit liability for actual damages resulting from negligence]. Under the preemption doctrine, all state law claims against a carrier are "effectively mutated" into a Carmack breach of contract action. U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc., 296 F. Supp.2d 1322, 1337 (S.D.Ala. 2003).

In Owens-Corning Fiberglass Corp. v. U.S. Air, 853 F.Supp. 656, 666 (E.D.N.Y. 1994), the District Court held that "where ... it is clear that plaintiffs seek damages for breach of the carriage contract ... they may not avoid that contract's liability limits by framing their complaint in terms of bailment and tort. They must proceed, if at all, on a breach of contract theory ..." In Wagman v. Federal Express, 844 F.Supp. 247, 251 (D.Md. 1994), aff'd 47 F.3d 1166 (1995) the District Court similarly held that the "law makes the contractual limit of liability applicable regardless of the form in which the action is stated."

Therefore, any claim by plaintiffs against DAY TRANSFER for more than the amount stipulated in the GBL must be denied.

## POINT V

## PLAINTIFFS' COUNT III BROKER CLAIM AGAINST DAY TRANSFER SHOULD BE DISMISSED

Federal law recognizes the mutually exclusive roles and legal status of motor carriers and brokers under the ICCTA. In Count III of the Second Amended Complaint, however, plaintiffs allege liability on the part of DAY TRANSFER, the GBL carrier, as a freight "broker." The statutory definitions of "motor carriers" and "brokers" compels the conclusion that DAY TRANSFER acted solely as a motor carrier, not a broker, with respect to plaintiffs' shipment.

Title 49 U.S.C. §13102(12) defines a "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. §13102(12).

49 C.F.R. §371.2(a) provides:

> Motor carriers or persons who are employees or bona fide agents of carriers, are not brokers... when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have legally bound themselves to transport (emphasis added).

Thus, the mere fact that a carrier, like DAY TRANSFER, that contracts to transport a shipment in interstate commerce and then sub-contracts the shipment to another carrier does not convert the former into a broker. The original contracting carrier still remains legally liable as such for the transportation.

Title 49 U.S.C. §13102(2) defines a "broker" as:

> [a] person other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agents, sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise, as selling, providing or arranging for, transportation by motor carrier for compensation (emphasis added).

A broker does not hold itself out as a carrier to the shipper. A broker does not accept legal responsibility to the shipper for the actual performance of the transportation. Instead, a broker merely agrees to procure transportation service from a carrier for the shipper, a role akin to a travel agent. Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126, 129 (2d Cir. 2000); Natl. Bus Traffic Assn. v. U.S., 143 F.Supp. 689, 694 (D.N.J. 1956), affd. 352 U.S. 1020 (1957); George Weintraub & Sons, Inc. v. E.T.A. Transp., Inc., 2003 WL 22023907, *4 (S.D.N.Y. 2003).

The distinction between a carrier and broker has been recognized in several recent decisions. Thrasher Trucking Co. v. Empire Tubulars, Inc., 983 F.2d 46,

48 (5th Cir. 1993); United Traffic Consultants, Inc. v. Gordon Trucking, Inc., 2003 WL 21397697 (D.Or. 2003); Custom Cartage, Inc. v. Motorola, Inc., 1999 WL 965686 (N.D.Ill. 1999).

In Custom Cartage, the District Court held, based on 49 C.F.R §371.2(a):

> Custom would be precluded from being a broker if it had been authorized to transport the goods and accepted and legally bound itself to so transport them (emphasis added). Id. at *8.

The Court further recognized that a motor carrier may, as part of its "transportation" service within the meaning of 49 U.S.C. §13102(19)(B), "arrange for" the actual hauling of the goods by others and still remain a "motor carrier" and not a "broker." Id.

To paraphrase Custom Cartage, DAY TRANSFER was "authorized to transport the plaintiffs' goods and accepted and legally bound itself to so transport them" as evidenced by the GBL issued by the DOD. The GBL (Box 33a) identifies DAY TRANSFER as the responsible carrier. Pursuant to the GBL, the DOD hired DAY to transport plaintiffs' goods as an interstate motor carrier and DAY was legally bound to do so. Thus, DAY was not a broker with respect to plaintiffs' shipment.

DOD representative Barbara Kistler and DAY TRANSFER representative Connie Nebel attest that DAY TRANSFER was the motor carrier responsible for the shipment's transportation from Texas to Rhode Island pursuant to the GBL. Ms. Kistler further testified that she has no knowledge of any broker agreements between the JPPSO and any other party. Thus, plaintiffs' claim that DAY TRANSFER's relationship with WILLIAMS MOVING involves "broker" services simply misconceives DAY TRANSFER's status as the GBL motor carrier and the applicable federal law.

Count III of the Second Amended Complaint against DAY TRANSFER alleging broker liability should be dismissed.

## POINT VI

## PLAINTIFFS' COUNT IX BROKER CLAIM AGAINST WILLIAMS MOVING SHOULD BE DISMISSED AS WILLIAMS HAS NO LEGAL DUTY TO PLAINTIFFS AS DAY TRANSFER'S DISCLOSED HOUSEHOLD GOODS BOOKING AGENT

DAY TRANSFER and WILLIAMS MOVING operated under a long-term Billing Waiver Agreement with respect to the shipment. Under that Agreement, WILLIAMS MOVING agreed to act as a disclosed booking agent on behalf of DAY TRANSFER with respect to military employees' household goods shipped interstate by the DOD.

With respect to all DOD shipments covered by the Billing Waiver Agreement, including the YORKS', DAY TRANSFER acted solely as an interstate household goods motor carrier under its FMCSA operating authority and WILLIAMS MOVING acted solely as DAY TRANSFER's disclosed "Carrier Agent" and "Booking Agent." These terms are defined by Defense Transportation Regulation Part IV, DOD 4500.9-R, as follows:

> Agent, Carrier. A business firm, corporation or individual acting for or on behalf of carrier. A bona fide agent of a personal property carrier, as distinguished from a broker, is a person who, or a business enterprise which, represents and performs its duties under the direction of the carrier pursuant to a pre-existing agreement with the carrier, providing for a continuing relationship between them.

> a. Booking Agent. An agent designated on the Letter of Intent (LOI) by a carrier as the single point of contact to act in its behalf. (emphasis added) (p.IV-xix).

Pursuant to Letters of Intent, dated November 25, 2003 and April 13, 2004, filed by WILLIAMS MOVING with the JPPSO office in San Antonio and effective during April through June, 2004, WILLIAMS MOVING was authorized by the JPPSO to act as a disclosed booking agent for DAY TRANSFER with respect to the interstate transportation of military household goods shipments. By an e-mail, dated April 9, 2004, transmitted by the JPPSO in San Antonio to WILLIAMS MOVING, as the booking agent for DAY TRANSFER, the JPPSO offered the YORKS' shipment to DAY for interstate transportation.

In light of the DOD's own published regulations, contract documents and business experience, the JPPSO obviously knew that it was offering the shipment to WILLIAMS MOVING in its capacity as a disclosed "Carrier Agent" ("as distinguished from a broker") for DAY TRANSFER, that WILLIAMS accepted the offer solely as DAY's booking agent and that DAY was the responsible GBL motor carrier.

As the disclosed household goods booking agent of DAY TRANSFER, WILLIAMS MOVING has no independent legal duty or liability to plaintiffs. 49 U.S.C. §13907(a) provides:

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

It is well-settled that where the agency relationship between a carrier and its agent is disclosed to the shipper, the agent has no direct or independent liability to the

consignor. Valkenburg, K.-G. v. S.S. HENRY DENNY, 295 F.2d 330, 333 (7th Cir. 1961).

The federal courts construing Section 13907(a) have similarly held that disclosed household goods agents like WILLIAMS MOVING have no independent liability to shippers. Nichols v. Mayflower Transit, LLC., 368 F.Supp.2d 1104, 1109 (D.Nev. 2003); Taylor v. Mayflower Transit, Inc., 161 F.Supp.2d 651, 658 (W.D.N.C. 2000); O'Donnell v. Earle W. Noyes & Sons, 98 F.Supp.2d 60, 63 (D.Me. 2000); Werner v. Lawrence Transp. Sys., Inc., 52 F.Supp2d 567, 568-69 (E.D.N.C. 1998) ["Not only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract."]; Fox v. Kachina Moving & Storage, 1998 WL 760268 at *1 (N.D.Tex. 1998); Prince v. United Van Lines, Inc., 1997 WL 53121 (N.D.Tex. 1997).

Plaintiffs have failed to produce a shred of evidence suggesting that there was any broker agreement or relationship between the DOD and WILLIAMS MOVING. On the contrary, WILLIAMS MOVING's status as a disclosed household goods booking agent of DAY TRANSFER with respect to the shipment at issue was fully known to the JPPSO and acknowledged by the DOD's definition of a "Booking Agent" in its own regulations. Those regulations expressly distinguish between a "Booking Agent" and a broker. It follows that Count IX of the Second Amended Complaint against WILLIAMS MOVING should be dismissed with prejudice.

**POINT VII**

**EVEN IF DAY TRANSFER AND WILLIAMS MOVING WERE DEEMED TO BE BROKERS, THEY WOULD STILL HAVE NO LIABILITY TO PLAINTIFFS.**

Plaintiffs' contention that DAY TRANSFER and WILLIAMS MOVING were brokers is puzzling. Although the Carmack Amendment makes carriers virtually strictly liable for damage to the goods, the case law recognizes that brokers are not generally liable to shippers for any breach or negligence of the actual carriers. See, e.g., Phoenix Assurance Co. v. K-Mart Corp., 977 F.Supp. 319, 325 (D.N.J. 1997); Travelers Ind. Co. v. Alliance Shippers, Inc., 654 F.Supp. 840, 842 (N.D.Cal. 1986); Servicemaster Company, L.P. v. FTR Transport, Inc., 868 F.Supp. 90, 94-95 (E.D.Pa. 1994) [broker not liable to shipper for carrier's alleged overcharges].

The fact that plaintiffs' goods were allegedly damaged in transit would not impose broker liability on DAY TRANSFER or WILLIAMS MOVING per se, even if they were brokers. Indeed, the only viable cause of an action against a broker is one for negligent entrustment. In CGU Int'l. Ins., PLC v. Keystone Lines Corp., 2004 WL 1047982 (N.D.Cal. 2004), the District Court held that the "sole issue in this case is whether Keystone [the broker] was negligent in the selection of Europa as a carrier". Id. at *2. The Court rejected the plaintiff's claim that the broker was negligent:

> Before selecting Europa,...[Keystone] indeed determined that Europa had valid state and federal carriers' licenses... [Keystone] ascertained that Europa possessed both cargo and liability insurance. A carrier's status regarding licensing and insurance reflects on its safety history and driving record. Any blemishes regarding Europa's accident history would have appeared on its insurance and licensing information. Therefore,...[Keystone] having verified that Europa was duly licensed and possessed adequate insurance foreclosed any possible need to

> separately inquire about Europa's drivers and accident history. Furthermore...[Keystone] visited the Europa facility...explaining that such visits to carrier's headquarters were extremely rare.... Id. at *3.

To prevail on their broker claims, plaintiffs must establish that DAY TRANSFER or WILLIAMS MOVING was in fact and broker and knew or should have know that APOLLO or ANDREWS were unqualified to provide transportation and storage services. Of course, no such evidence exists.

First, APOLLO and ANDREWS were DOD-approved motor carriers and warehousemen. Therefore, neither the DOD nor its employees can argue that APOLLO or ANDREWS were unqualified and, indeed, should be estopped from doing so. Second, APOLLO and ANDREWS had proper insurances and FMCSA licenses. As the Court in CGU Intl. Ins. recognized, once a broker confirms that a carrier has sufficient insurance and licensing, it has no duty to make further inquiries about the carriers it selects. Third, contrary to plaintiffs' contention, neither DAY TRANSFER nor WILLIAMS MOVING had any duty to travel from their offices in Missouri to conduct a physical inspection of ANDREWS' warehouse in Newport before the shipment to verify that the roof did not leak. WILLIAMS MOVING had booked some 50 DOD shipments, some 10 of them for DAY TRANSFER, throughout the country before the subject move. Under plaintiffs' theory, however, DAY and WILLIAMS should have inspected the trucks and facilities of each and every downstream carrier, warehouseman and other service provider they used before each of those moves.

Plaintiffs cannot establish any legal duty incumbent on DAY TRANSFER or WILLIAMS MOVING to inspect all vehicles and warehouses absent any evidence of an industry standard requiring such inspections. With respect to the subject shipment,

there is no evidence that (1) any other shipment had been previously damaged by a leaky roof at ANDREW's warehouse or (2) that DAY TRANSFER and WILLIAMS MOVING were or should have been aware of any such conditions. Finally, there is no evidence that an on-site inspection would have revealed the existence of a leak.

Plaintiffs cannot establish broker liability against DAY TRANSFER or WILLIAMS MOVING and these claims should be dismissed.

## POINT VIII

## WILLIAMS MOVING HAS NO LEGAL DUTY TO OR PRIVITY WITH PLAINTIFFS AND, ALTERNATIVELY, ANY LIABILITY OF WILLIAMS IS LIMITED BY THE GBL

Count IX of the Second Amended should be dismissed on the separate and independent ground that plaintiffs have no contractual privity with WILLIAMS MOVING. Alternatively, even if WILLIAMS MOVING may have liability to plaintiffs, which is denied, any such liability is governed and limited by the GBL.

### A. The DOD and Plaintiffs Have No Privity With WILLIAMS MOVING.

Plaintiffs cannot show any contractual relationship between themselves and WILLIAMS MOVING. This is because the JPPSO, acting as plaintiffs' shipping agent, contracted with DAY TRANSFER (not WILLIAMS) which is designated as the responsible carrier on the face of the GBL issued by the JPPSO.

The contractual relationship between a carrier and the Government is governed by the tender and Government Bill of Lading. Baggett Transp. Co. v. United States, 23 Cl.Ct. 263, 265 (1991), aff'd, 969 F.2d 1028 (Fed.Cir.1992). The tender is the

carrier's offer to provide transportation at a set rate and the Government Bill of Lading is the Government's acceptance of the carrier's offer. 23 Ct. Cl. at 265.

In Central Transport Intern., Inc. v. U.S., 63 Fed.Cl. 336 (Cl.Ct. 2004), the Court of Claims held:

> [A] government bill of lading (GBL) [is[ a document used by the government when acquiring freight transportation services from common carriers. Each GBL [is a] contract between the parties, establishing their respective rights with regard to the transportation services procured and provided. Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1016 (Fed.Cir. 1995). Thus, a GBL establishes contractual privity between the Government and the designated carrier. Interstate Van Lines, Inc., GSBCA No. 16250, 2004 WL 1067986 (May 3, 2004) ["A GBL is a contract between the Government and a carrier."].

In Central Transport, the Court held that a downstream motor carrier that transported Government goods as a subcontractor of the GBL carrier under commercial standard bills of lading (SBLs) had no privity with the Government and, thus, had no standing to assert a claim against the Government for unpaid transportation charges. The Court reasoned that plaintiff sub-carrier's SBLs issued to the GBL carrier did not establish privity with the Government because the Government was not a party to them. Id. at 338-39.

In Trism Specialized Carriers, Inc., 96-1 CPD ¶ 202, 1996 WL 191150 (Comp. Gen. April 18, 1996), the DOD issued a GBL to Roadair Feeder Services which, in turn, subcontracted with Trism Specialized Carriers to transport the goods. Roadair failed to pay Trism and Trism then sought payment from the DOD. The GAO's Comptroller General ruled that Trism could not recover from the Government because, among other reasons, it was not a party to the Government Bill of Lading. See also,

Matter of Interstate Van Lines, Inc., GSBCA No. 16250-RATE, 2004 WL 1067986 (G.S.B.C.A. May 3, 2004) [carrier that provided services for parties to a GBL, but was not itself a GBL party, lacked privity with the Government]; Serv. Storage, Inc., B-183,331, 1975 WL 8369 (Comp. Gen. June 10, 1975) [warehouseman could not recover against Government for the costs incurred in storing Government goods that were transported by a carrier pursuant to a GBL where warehousemen were not a party to the GBL]; Universal Storage Warehouses, 43 Comp.Gen. 290, B-150,463, 1963 CPD P 75, 1963 WL 2046 (Sept. 24, 1963) [warehouseman not in privity with Government could not recover storage costs from Government where it was only subcontractor of the GBL carrier].

The above authorities establish that a carrier's agent, like WILLIAMS MOVING, has no contractual privity with the Government under a GBL. If so, then it follows that the Government and its employees have no privity with WILLIAMS with respect to plaintiffs' property damage claims at issue herein.

**B. As An Agent of DAY TRANSFER, WILLIAMS MOVING Is Entitled to Limit Any Liability Under the GBL.**

If the Court finds that WILLIAMS MOVING has any contractual relationship with or liability to the DOD or plaintiffs under the GBL, then WILLIAMS is entitled to the benefit of the GBL's $1.25 per lb. released valuation limitation of liability as DAY TRANSFER's booking agent.

Pursuant to Title 41 C.F.R. Section 102-118.40(f), the GBL under which plaintiffs' shipment moved is deemed to incorporate the "U.S. Government Freight Transportation Handbook." The Handbook (p.59) recites that the "parties" to the GBL

include "carrier, agents…and others." Therefore, to the extent that WILLIAMS MOVING, acting as DAY TRANSFER's disclosed booking agent, may be deemed to be a "party" to the GBL, then WILLIAMS MOVING is also entitled to the benefit of the GBL's $15,000.00 released valuation limitation of liability. Norfolk Southern Ry. Co. v. James N. Kirby, Pty. Ltd., 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) [ocean carrier's railroad agent held entitled to benefit of ocean carrier's liability limitation under bill of lading "Himalaya" clause].

Even if WILLIAMS MOVING were considered to be a broker acting on behalf of the DOD, instead of DAY TRANSFER's disclosed booking agent, WILLIAMS would still be entitled to the benefit of the GBL's released valuation terms. In Commercial Union Ins. Co. v. Forward Air, Inc., 50 F.Supp.2d 255 (S.D.N.Y. 1999), the District Court held that the shipper's freight broker was entitled to limit its liability for the loss of cargo from the broker's custody under the terms of the air waybill issued by the broker for the shipment of the goods. The Court reasoned that the shipper could not avoid the waybill's limitation of liability after it failed to declare a higher value on the shipment and paid a reduced freight rate based on the lower limitation. Id. at 261.

In this case, it was the DOD (not WILLIAMS MOVING) that issued the GBL with a $1.25 per lb. limitation and plaintiffs' goods were not damaged in WILLIAMS' custody. Thus, the rationale for applying the GBL's limitation to WILLIAMS is even stronger than in Forward Air.

In sum, either WILLIAMS MOVING has no liability to plaintiffs based on the lack of privity between them, or any liability of WILLIAMS as a "Carrier Agent" under the GBL is the same as that of its principal, DAY TRANSFER. In either event,

there are no facts supporting any finding of unlimited liability on the part of WILLIAMS to plaintiffs. Plaintiffs should not be permitted to deftly evade the limitation of liability set forth in the GBL, issued by the Government with their approval, by simply suing the agents of the GBL carrier.

Count IX of the Second Amended Complaint against WILLIAMS MOVING should be dismissed with prejudice. Alternatively, any liability of WILLIAMS MOVING should be limited to the GBL's released valuation amount.

## CONCLUSION

It is respectfully submitted that the Court should grant summary judgment (1) limiting DAY TRANSFERS maximum liability to plaintiffs to the sum of $15,000.00 pursuant to the GBL, and (2) dismissing all other claims and cross-claims against DAY TRANSFER and WILLIAMS MOVING with prejudice.

Dated: August 25, 2006

/s/ Jamers P. Marusak
James P. Marusak, Esq. #2470
GIDLEY SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644

-and-

George W. Wright, Esq. (Pro Hac Vice)
Narinder S. Parmar, Esq.
GEORGE W. WRIGHT & ASSOCIATES, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
(201) 342-8884

Attorney for Defendant DAY TRANSFER COMPANY and Third-Party Defendant WILLIAMS MOVING COMPANY

**CERTIFICATION**

**The document has been filed electronically and it is available for viewing and downloading from the ECF system."**

I hereby certify that I caused a true and accurate copy of the within document to be served upon the following counsel of record on this ______ day of August, 2006:

Joseph R. Palumbo, Jr., Esq.
Attorney for Plaintiffs
294 Valley Road
Middletown, RI 02842

Michael Edwards, Esq./William R. Grimm, Esq.
HINCKLEY, ALLEN & SNYDER, LLP
Attorneys for Defendant
APOLLO VAN LINES, INC.
1500 Fleet Center
Providence, RI 02903

Robert K. Taylor, Esq.
Carolyn P. Medina, Esq.
PARTRIDGE, SNOW & HAHN LLP
Attorneys for Defendant
ANDREWS EXPRESS AND WAREHOUSE, INC.
180 South Main Street
Providence, RI 02903

/s/James P. Marusak