UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and MAUREEN YORK,

Plaintiffs,

v.

DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.,

Defendants,

v.

WILLIAMS MOVING COMPANY,

Third-Party Defendant.

C.A. No. 04-551S

**SUPPORTING AFFIDAVIT OF RICK WILLIAMS**

STATE OF MISSOURI )
) ss:
COUNTY OF STODDARD )

RICK WILLIAMS, being duly sworn, deposes and says:

1. I am a principal and the President of WILLIAMS MOVING COMPANY ("WILLIAMS MOVING") and I make this Affidavit based on my personal knowledge.

2. WILLIAMS MOVING is an interstate motor carrier of household goods operating with the authority of the United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"), with its principal place of business in Dexter, Missouri.

3. On April 15, 1998, DAY TRANSFER and WILLIAMS MOVING COMPANY ("WILLIAMS MOVING") entered into a Billing Waiver Agreement. A copy of the Billing Waiver Agreement, dated April 15, 1998, is annexed hereto as Exhibit "G."

4. Pursuant to the Billing Waiver Agreement (Exhibit "G"), WILLIAMS MOVING agreed to act as a disclosed booking agent on behalf of DAY TRANSFER with respect to military service members' interstate household goods shipped by United States Department of Defense ("DOD").

5. Under the Billing Waiver Agreement (Exhibit "G"), DAY TRANSFER agrees to "waiver" to WILLIAMS MOVING, as disclosed booking agent, all DOD shipments originating at designated military installations, including the DOD's Joint Personal Property Shipping Office ("JPPSO") in San Antonio, Texas, and the interstate transportation of such shipments is performed under DAY TRANSFER's name and FMCSA operating authority.

6. As DAY TRANSFER's disclosed booking agent, WILLIAMS MOVING, agrees to handle all dispatching, tracing, billing and claims with respect to DOD shipments waivered by DAY TRANSFER to WILLIAMS MOVING.

7. As DAY TRANSFER's disclosed booking agent for DOD interstate shipments, WILLIAMS MOVING remits to DAY TRANSFER a five percent (5%) portion of the freight charges billed by WILLIAMS MOVING to the DOD.

8. At no time has DAY TRANSFER ever had a "broker" agreement of any kind with WILLIAMS MOVING, the DOD or any other Government agency.

9. With respect to all DOD shipments covered by the Billing Waiver Agreement (Exhibit "G"), including the YORKS' shipment, DAY TRANSFER acted solely as an interstate household goods motor carrier under its FMCSA operating authority and

WILLIAMS MOVING acted solely as DAY TRANSFER's "disclosed booking agent" as defined by Defense Transportation Regulation Part IV, DOD 4500.9-R, p. IV-xix.

10. Before the YORKS' shipment was transported from Texas to Rhode Island in June, 2004, WILLIAMS MOVING had acted as DAY TRANSFER's disclosed booking agent on approximately 50 DOD shipments, of which the JPPSO in San Antonio was the shipper-consignor on about ten (10) shipments.

11. Pursuant to Letters of Intent ("LOI") dated November, 25, 2003 and April 13, 2004 filed by WILLIAMS MOVING with the JPPSO office in San Antonio, Texas that were effective during April through June, 2004, WILLIAMS MOVING was authorized by the JPPSO to act as a disclosed booking agent on behalf of DAY TRANSFER with respect to the interstate transportation of military service members' household goods shipments. Copies of the LOIs, dated November 25, 2003 and April 13, 2004, are annexed hereto as Exhibit "I."

12. By an e-mail, dated April 9, 2004, transmitted from the JPPSO in San Antonio, Texas to WILLIAMS MOVING, as the disclosed booking agent for DAY TRANSFER, the JPPSO offered the YORKS' shipment to DAY TRANSFER for interstate transportation from Schertz, Texas to Newport, Rhode Island. A copy of the JPPSO's shipment offering e-mail, dated April 9, 2004, is annexed hereto as Exhibit "J."

13. As set forth in the JPPSO's shipment offering e-mail (Exhibit "J"), the shipment was assigned Government Bill of Lading ("GBL") No. ZY-711231 and scheduled to be picked up for transportation from Texas to Rhode Island on June 4, 2004.

14. The JPPSO's shipment offering e-mail (Exhibit "J") further recites under "Remarks" that JASON YORK was "... group counselled per DD 1797."

15. Upon receipt of the JPPSO's shipment offering e-mail (Exhibit "J"), WILLIAMS MOVING immediately accepted the offering on behalf of DAY TRANSFER.

16. Subsequently, the JPPSO office in San Antonio issued Government Bill of Lading ("GBL") No. ZY-711231, dated May 18, 2004, to WILLIAMS MOVING covering the YORKS' shipment. A copy of GBL No. ZY-711231, dated May 18, 2004, is annexed hereto as Exhibit "K."

17. The GBL (Exhibit "K") recites in Box No. 16, in part, "... This bill of lading is governed by the regulations relating thereto as published in Title 41, Part 102-118 of the Code of Federal Regulations...."

18. The GBL (Exhibit "K") recites in Box No. 17 (Full Name of Shipper) that the shipper-consignor is "JPPSO-San Antonio."

19. The GBL (Exhibit "K") recites in Box No. 27 (Description of Shipment*) that the GBL was "*Issued at lowest valuation cited in appropriate tender or tariff unless otherwise stated hereon."

20. The GBL (Exhibit "K") recites in Box No. 28 (Weight) that the net weight of the shipment was 11,850 lbs. which is rounded up to 12,000 lbs.

21. The GBL (Exhibit "K") further recites in Box No. 31 (Tariff or Special Rate Authorities) that the applicable tariff or special rate authority governing the shipment is "RS D-8."

22. The GBL (Exhibit "K") recites in Box No. 33a (Name of Transportation Company) that the responsible carrier is DAY TRANSFER.

23. The GBL (Exhibit "K") further recites in Box No. 35d that the shipment was to be provided "Storage and Transit" ("SIT") services at destination in Rhode Island.

24. The notation "RS D-8" in GBL Box No. 31 (Tariff or Special Rate Authorities) refers to the DOD's Domestic Personal Property Rate Solicitation D-8 which was in effect during April and May, 2004 when JPPSO offered the shipment to DAY TRANSFER and issued the GBL. Copies of the relevant portions (Page Nos. 3-3 through 3-6) of the DOD Domestic Personal Property Rate Solicitation D-8 are annexed hereto as Exhibit "M."

25. The DOD's Domestic Personal Property Rate Solicitation D-8 (Exhibit "M") recites in Item 306, in relevant part, as follows:

> <u>LIMITATION OF CARRIER LIABILITY</u>
>
> a. Rates and charges in this rate solicitation apply to a released value of $1.25 times the net weight of the shipment (in pounds) unless otherwise stated on BL …
>
> b. The carrier accepts property for shipment on the BL under the following terms and conditions:
>
> (1) Carrier's legal liability for loss of damage to goods shall be the same as set forth in the Interstate Commerce Act (Title 49 U.S.C. 14706) (in conformity with the rules of the Surface Transportation Board) …
>
> * * *

26. The DOD's Domestic Personal Property Rate Solicitation D-8 (Exhibit "M ") further recites in Item 308 as follows:

> <u>DECLARATION OF VALUE – LIABILITY LIMITATION</u>
>
> a. The terms "released value," "declared value," and "value declared by the shipper" as used in this rate solicitation, shall have the same meaning.
>
> b. <u>The carrier's maximum liability shall be $1.25 times the net weight (in pounds) of the shipment</u> for any lost or damaged article unless the shipment is released at either a lump sum value declared by the shipper or an amount greater than $1.25 times the net weight (in pounds) of the shipment, whichever is greater.

> c. The BL is released at the lowest value herein, unless otherwise stated. The BL shall be annotated with appropriate statement citing the increased valuation.
>
> d. If the shipper fails to make the entry required above, the shipment shall be deemed released at $1.25 times the net eight (in pounds) of the shipment.
>
> e. The released value and the carrier's maximum liability (whether or not loss or damage occurred from carrier negligence), as determined under this item, shall apply to any claim resulting from the performance or failure to perform by the carrier of any services, including accessorial services which the carrier contracted is to perform. (emphasis added).

27. Based on the statement of the net weight of the shipment as 12,000 lbs. in the GBL's Box No. 26, the maximum liability of DAY TRANSFER as the responsible contracting GBL motor carrier is $15,000.00 with respect to all claims resulting from loss, damage or delay of the subject shipment or any failure to perform contracted for services.

28. In accordance with its Billing Waiver Agreement with DAY TRANSFER (Exhibit "G"), WILLIAMS MOVING (a) instructed Lone Star Relocation Services, Inc. to pack the YORKS' goods at their home in Schertz, Texas for transportation to Newport, Rhode Island, (b) instructed APOLLO VAN LINES, INC. to pick-up the shipment in Schertz, Texas and transport it to Newport, Rhode Island and (c) instructed ANDREWS EXPRESS & STORAGE WAREHOUSE, INC. to provide storage-in-transit (SIT) services for the shipment at its Newport warehouse pending final delivery to the YORKS.

29. Lone Star, APOLLO VAN LINES and ANDREWS EXPRESS were all DOD-approved moving and storage companies during June through August, 2004 when the YORKS' shipment was transported and placed in SIT.

30. With respect to the interstate hauling of the shipment by APOLLO VAN LINES, WILLIAMS MOVING issued a DAY TRANSFER Uniform Household Goods Bill of

Lading and Freight Bill No. 5134 and provided it to APOLLO VAN LINES to issue a copy to the YORKS at the time of the pick-up of their shipment so that they could identify and contact DAY TRANSFER as the responsible motor carrier if necessary. A copy of DAY TRANSFER Bill of Lading No. 5134 is annexed hereto as Exhibit "N."

31. The DAY TRANSFER Bill of Lading (Exhibit "N") did not supplement or amend the controlling GBL contract (Exhibit "K") and the DAY TRANSFER Bill of Lading was intended to be provided to the YORKS for informational purposes only.

32. From the time when WILLIAMS MOVING accepted the shipment offering e-mail from the JPPSO on behalf of DAY TRANSFER on April 9, 2004 until the delivery of the shipment to the YORKS in mid-August, 2004, WILLIAMS MOVING had no other contact or communication with the Government or the YORKS with respect to the shipment.

33. Furthermore, WILLIAMS MOVING had no contract or agreement of its own, including any contract of carriage or broker agreement, with any Government agency or the YORKS with respect to the subject shipment.

34. On or about August 16, 2004, the shipment was delivered by ANDREWS MOVING to the YORKS and the YORKS reportedly discovered water and mold damage to their goods.

35. In accordance with the Billing Waiver Agreement (Exhibit "G"), WILLIAMS MOVING assumed all responsibility for handing the YORKS' claims, including hiring an independent cleaning service, ServiceMaster Allied Cleaning and Restoration Services ("ServiceMaster") to remove mold from the YORKS' goods and rental home and processing

payments for the YORKS' lodging expenses while they were awaiting the results of the mold remediation.

36. WILLIAMS MOVING's involvement in processing the YORKS' claims was solely in its capacity as DAY TRANSFER's booking agent under the Billing Waiver Agreement (Exhibit " G ") and in furtherance of DAY TRANSFER's contracting motor carrier obligations to the JPPSO and the YORKS under the GBL (Exhibit "K").

37. During September, 2004, WILLIAMS MOVING and DAY TRANSFER made payments totaling $10,696.24 to the YORKS and ServiceMaster Allied with respect to the YORKS' claims and ServiceMaster's cleaning services.

[signature]

RICK WILLIAMS

Sworn to before me this
17th day of August, 2006

[signature]

Notary Public

DEBRA G. ROBINSON
Notary Public - Notary Seal
State of Missouri - County of Stoddard
My Commission Expires Jun. 15, 2010
Commission #06487253