UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and MAUREEN YORK,

Plaintiffs,

v.

DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.,

Defendants,

v.

WILLIAMS MOVING COMPANY,

Third-Party Defendant.

C.A. No. 04-551S

**DAY TRANSFER'S AND WILLIAMS MOVING'S**
**STATEMENT OF UNDISPUTED FACTS**

Defendant DAY TRANSFER COMPANY ("DAY TRANSFER") and third-party defendant WILLIAMS MOVING COMPANY ("WILLIAMS MOVING") hereby submit their Statement of Undisputed Facts pursuant to Fed.R.Civ.P. 56 and L.R.Cv. 56.

## A. THE PARTIES

1. Plaintiffs, JASON YORK ("YORK") and MAUREEN YORK, are the owners of the interstate household goods shipment that is the subject of this action and the beneficiaries of the subject interstate transportation contract between the Government and DAY TRANSFER. Second Amended Complaint, ¶2.

2. YORK is an employee of the United States Department of Defense ("DOD") and a Major in the United States Marine Corps. Second Amended Complaint, ¶2.

3. DAY TRANSFER is an interstate household goods motor carrier operating with the authority of the United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA") under ICC No. 72958. Connie Nebel Affid. ¶2.

4. DAY TRANSFER is the responsible contracting motor carrier under the relevant Government Bill of Lading ("GBL") governing the subject shipment. Connie Nebel Affid. ¶¶5-13.

5. WILLIAMS MOVING acted at all relevant times as the disclosed booking agent of DAY TRANSFER in accepting the subject shipment from the DOD and engaging Lone Star Relocation Services ("Lone Star"), APOLLO VAN LINES, INC. ("APOLLO VAN LINES") and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC. ("ANDREWS EXPRESS") to provide packing, interstate transportation and storage-in-transit ("SIT") services for the shipment. Connie Nebel Affid. ¶¶4-7, 9, 10; Rick Williams Affid. ¶¶4-7, 9-12, 28.

6. APOLLO VAN LINES was at all relevant times a DOD-approved interstate moving company. Rick Williams Affid. ¶ 29.

7. ANDREWS EXPRESS & STORAGE WAREHOUSE, INC. was at all relevant times a DOD-approved warehouseman of household goods. Rick Williams Affid. ¶ 29.

**B. <u>PLAINTIFFS' PRE-MOVE ACTIVITIES</u>**

8. Since 1992, YORK has been a career officer with the United States Marine Corps. and was promoted to the rank of Major in March, 2003. Jason York Dep. Vol. I, p. 10/lines 1, 20-21 (Exhibit "A" hereto).

9. YORK expects to be eligible for promotion to the rank of Lieutenant Colonel sometime in 2007 or 2008. Jason York Dep. Vol. I, p. 140/lines 7-11; Vol. II, p. 14/line 24 to p. 15/line 8 (Exhibit "A" hereto).

10. During his career as a military officer, YORK had been transferred four (4) times using Government-hired moving companies prior to the subject move from Texas to Rhode Island in 2004. Jason York Dep. Vol. I, p. 21/line 8 – p. 22/line 8 (Exhibit "A" hereto).

11. On his pre-2004 moves, YORK received pre-move DOD counseling and he completed DD Form 1299 shipment applications. Jason York Dep. Vol, I, p. 138/lines 10-21 (Exhibit "A" hereto).

12. Prior to the subject move in 2004, the YORKS had filed loss and damage claims against other Government-hired motor carriers, including a $2,400.00 claim on their move to Texas in 2001. Jason York Dep. Vol. I, p. 151/line 3 to p. 153/line 6 (Exhibit "A" hereto).

13. In or about early 2004, YORK received transfer orders to relocate from Shertz, Texas to Newport, Rhode Island in connection with his attendance at the Naval War College. Jason York Dep., Vol. I, p. 15/lines 22-24 (Exhibit "A" hereto).

14. At that time, YORK elected to have his personal household goods and effects shipped from Texas to Rhode Island at Government expense and pursuant to transportation arrangements to be made by the DOD's San Antonio Transportation Management Office ("TMO") and Joint Personal Property Shipping Office ("JPPSO") with a Government-hired carrier. Jason York Dep., Vol. I, p. 15/line 25 to p. 16/line 25, p. 22/lines 9-18, p. 217/line 25 to p. 218/line 7 (Exhibit "A" hereto).

15. On February 24, 2004, YORK attended group and one-on-one counseling sessions conducted by a representative of the U.S. Army Transportation Division, of the TMO, Ms. Rosalinda Kagebein, at Fort Sam Houston in San Antonio, Texas. Jason York Dep., Vol. I, p.16/line 16 to p. 20/line 20; p.145/line 20 to p. 147/line 12 (Exhibit "A" hereto); Rosalinda Kagebein Dep., p. 40/ lines 12-25, p.66/line 7 to p. 67/line 7, p. 68/line 24 to p. 69/line 1 (Exhibit "B" hereto).

16. At the counseling session, YORK was advised during the oral presentation and in a 15-minute DOD instructional video, entitled "It's Your Claim," of his Government move-related entitlements and his options to (a) select a valuation for the shipment at either the minimum valuation of $1.25 per pound or (b) declare a higher valuation at his own expense. Jason York Dep., Vol I., p. 17/lines 1-4, p. 147/lines 15-18; Vol. II, p. 19/lines 5-14 (Exhibit "A" hereto); Rosalinda Kagebein Dep., p. 54/line 18 to p. 56/line 6, pp. 65-66, pp.78-80. (Exhibit "B" hereto).

17. During the counseling session, YORK was advised of his entitlement to a $40,000.00 maximum payment from the Government in the event of loss or damage to the shipment. Rosalinda Kagebein Dep., p. 63/lines 14-25. (Exhibit "B" hereto).

18. During the counseling session, Ms. Kagebein completed and signed a Personal Property Counseling Checklist (DD Form 1797) (Exhibit "C" hereto) which was also countersigned by YORK. Plaintiffs' Responses to Request for Admissions, dated January 30, 2006, ¶6 (Exhibit "D" hereto); Rosalinda Kagebein Dep., p.45/lines 4-10, p.67/line 23 to p. 68/line 25 (Exhibit "B" hereto).

19. The DD Form 1797 (Exhibit "C" hereto) contains a section entitled "Part VII – Liability, Claims Protection" under which the following items were checked by Ms. Kagebein indicating they were discussed with York:

1. Carrier, storage firm and Government liability for loss or damage.

* * *

6. Valuation of items of extraordinary value – substantial value.

Rosalinda Kagebein Dep., p.68/lines 5-23 (Exhibit "B" hereto).

20. YORK recalls seeing the DOD claim video at the counseling session (¶ 16 above) and admits that he may have been advised by the TMO of the carrier's minimum $1.25 per lb. minimum standard released valuation limitation of liability, but YORK allegedly does not recall being advised of the GBL's $1.25 per lb. released valuation terms. Jason York Dep., Vol. I, p. 224/line 13 to p. 225/line 2 (Exhibit "A" hereto).

21. YORK does recall being advised by the TMO of his option to obtain full replacement coverage for his shipment. Jason York Dep., Vol. I, p. 225/line 13 to p. 226/line 2 (Exhibit "A" hereto).

22. YORK also recalls being advised by a DOD representative prior to the move that he would be entitled to a maximum Government entitlement payment of $40,000.00 in the event of loss or damage to the shipment. Jason York Dep., Vol. I, p. 160/line 17 to p. 161/line 21 (Exhibit "A" hereto).

23. YORK did not have any discussion with the TMO or any other DOD division during the pre-move counseling session about any health-related issues involving the YORKS. Jason York Dep., Vol. I, p. 173/lines 1-6 (Exhibit "A" hereto).

24. Besides the need to deliver the shipment in Newport by mid-August, 2004, YORK did not convey any other information concerning shipment's time-sensitivity to the TMO before the shipment. Jason York Dep., Vol. I, p. 175/lines 5-20 (Exhibit "A" hereto).

25. YORK did not have any discussion with the TMO prior to the shipment concerning his housing allowance in Newport. Jason York Dep., Vol. I, p. 176/lines 6-17 (Exhibit "A" hereto).

26. At the counseling session, YORK also filled out an "Application for Shipment And/Or Storage of Personal Property" (DD Form 1299) by hand and submitted the handwritten Form 1299 to Ms. Kagebein which she then typed (Exhibit "E" hereto) on her computer. Jason York Dep., Vol. I, p. 17/line 23 to p. 18/line 12 (Exhibit "A" hereto); Rosalinda Kagebein Dep., p.42/lines 13-17, p.88/lines 2-18 (Exhibit "B" hereto).

27. Besides the information in the DD Form 1299 (Exhibit "E" hereto), YORK cannot recall providing any other information to the TMO prior to the shipment that he requested to be conveyed by the TMO to the moving company transporting the shipment. Jason York Dep., Vol. I, p. 177/line 2 to p. 178/line 15 (Exhibit "A" hereto).

28. The typed DD Form 1299 (Exhibit "E" hereto) was then transmitted by Ms. Kagebein's office to the JPPSO in San Antonio for use in preparing a Government Bill of Lading ("GBL") for the shipment. Rosalinda Kagebein Dep. p.66/lines 21-22 (Exhibit "B" hereto); Barbara Kistler Dep., p. 43/line 18 to p. 44/line 24 (Exhibit "F" hereto).

29. Any request by YORK during the counseling session with Ms. Kagebein for additional valuation on his shipment beyond the minimum $1.25 per pound valuation would have been recorded by inserting the notation "Replacement Insurance" in Box 13 ("Remarks") on

the DD Form 1299 (Exhibit "E" hereto). Rosalinda Kagebein Dep., p. 59/lines 18-25, p. 61/lines 3-20, p. 92/lines 17-20, p. 93/lines 14-25 to p. 94/line 8, p.106/lines 5-25 (Exhibit "B" hereto).

30. No request for additional valuation beyond the $1.25 per pound limitation was made by YORK or typed by Ms. Kagebein in Box 13 ("Remarks") of the DD Form 1299 (Exhibit "E" hereto). Rosalinda Kagebein Dep., p. 93/line 21 to p. 94/line 25 (Exhibit "B" hereto).

31. YORK did not request any increased valuation on the shipment from the Government because, prior to the February 24, 2004 TMO counseling session, or at least prior to the move, the YORKS had obtained from USAA a renters insurance policy providing insurance on their household goods in the amount of $75,000.00 that they believed would be in effect during the move. Jason York Dep., Vol. I, p. 185/line 9 to p. 187/line 24, p. 226/line 8 to p. 227/line 17; Vol. II, p. 23/lines 8-15 (Exhibit "B" hereto).

**C. THE AGENCY RELATIONSHIP BETWEEN DAY TRANSFER AND WILLIAMS MOVING**

32. On April 15, 1998, DAY TRANSFER and WILLIAMS MOVING entered into a Billing Waiver Agreement (Exhibit "G " hereto). Connie Nebel Affid. ¶3; Rick Williams Affid. ¶3.

33. Pursuant to the Billing Waiver Agreement (Exhibit "G" hereto) WILLIAMS MOVING agreed to act as a disclosed booking agent on behalf of DAY TRANSFER with respect to military service members' interstate household goods shipped by the DOD. Connie Nebel Affid. ¶4; Rick Williams Affid. ¶4.

34. Under the Billing Waiver Agreement (Exhibit "G" hereto) DAY TRANSFER agreed to "waiver" to WILLIAMS MOVING, as disclosed booking agent, all DOD

shipments originating at designated military installations, including the JPPSO in San Antonio, Texas, and the interstate transportation of such shipments is performed under DAY TRANSFER's name and FMCSA operating authority. Connie Nebel Affid. ¶5; Rick Williams Affid. ¶5.

35. As DAY TRANSFER's disclosed booking agent, WILLIAMS MOVING, agreed to handle all dispatching, tracing, billing and claims with respect to DOD shipments waivered by DAY TRANSFER to WILLIAMS MOVING. Connie Nebel Affid. ¶6; Rick Williams Affid. ¶6.

36. As DAY TRANSFER's disclosed booking agent for DOD interstate household goods shipments, WILLIAMS MOVING remits to DAY TRANSFER a five percent (5%) portion of the freight charges billed by WILLIAMS MOVING to the DOD. Connie Nebel Affid. ¶7; Rick Williams Affid. ¶7.

37. With respect to all DOD shipments covered by the Billing Waiver Agreement (Exhibit "G" hereto), including the YORKS' shipment, DAY TRANSFER acted solely as an interstate household goods motor carrier under its FMCSA operating authority and WILLIAMS MOVING acted solely as DAY TRANSFER's disclosed "booking agent" as defined by Defense Transportation Regulation Part IV, DOD 4500.9-R, p. IV-xix (Exhibit "H" hereto). Connie Nebel Affid. ¶9; Rick Williams Affid. ¶9.

38. Before the YORKS' shipment was transported from Texas to Rhode Island in June, 2004, WILLIAMS MOVING had acted as DAY TRANSFER's booking agent on approximately 50 DOD shipments, of which the JPPSO in San Antonio was the shipper-consignor on about ten (10) shipments. Connie Nebel Affid. ¶10; Rick Williams Affid. ¶10.

39. At no time has DAY TRANSFER ever had a broker agreement of any kind with WILLIAMS MOVING, the DOD or any other Government agency. Connie Nebel Affid. ¶8; Rick Williams Affid. ¶8.

40. The YORKS have no knowledge of any broker contract either between DAY TRANSFER and the Government or between WILLIAMS MOVING and the Government. Jason York Dep., Vol. I, p. 199/line 18 to p. 200/line 10, p. 202/lines 1-4, p. 204/lines 2-12 (Exhibit "A" hereto).

41. Pursuant to Letters of Intent ("LOIs") dated November 25, 2003 and April 13, 2004 (Exhibit "I" hereto) that were filed by WILLIAMS MOVING with the JPPSO office in San Antonio, Texas and effective during April through June, 2004, WILLIAMS MOVING was authorized by the JPPSO to act as a disclosed booking agent on behalf of DAY TRANSFER with respect to the interstate transportation of military service members' household goods shipments. Rick Williams Affid. ¶11.

42. By an e-mail, dated April 9, 2004 (Exhibit "J" hereto) transmitted from the JPPSO in San Antonio, Texas to WILLIAMS MOVING, as the booking agent for DAY TRANSFER, the JPPSO offered the YORKS' shipment to DAY TRANSFER for interstate transportation from Schertz, Texas to Newport, Rhode Island. Rick Williams Affid. ¶12.

43. As stated in the JPPSO's shipment offering e-mail (Exhibit "J" hereto) the shipment was assigned GBL No. ZY-711231 and scheduled to be picked up for transportation from Texas to Rhode Island on June 4, 2004. Rick Williams Affid. ¶13.

44. The JPPSO's April 9, 2004 shipment offering e-mail (Exhibit "J" hereto) further recites under "Remarks" that JASON YORK was "... group counselled per DD 1797". Rick Williams Affid. ¶14.

45. Upon receipt of the JPPSO's shipment offering e-mail (Exhibit "J" hereto) WILLIAMS MOVING immediately accepted the offering by reply e-mail on behalf of DAY TRANSFER. Rick Williams Affid. ¶15; Barbara Kistler Dep., p. 42/line 20 to p. 43/line 11 (Exhibit "F" hereto).

**D. <u>THE GOVERNMENT BILL OF LADING</u>**

46. Ms. Barbara Kistler has been employed with the JPPSO's San Antonio office since 1973, is currently the Deputy Chief, Personal Property Division and in 2004 was Supervisor of Movement Control. Barbara Kistler Dep., p. 8/lines 18-23, p. 11/lines 15-20 (Exhibit "F" hereto).

47. The JPPSO's function is to arrange and schedule outbound shipments for service members and contract with moving companies for transportation services. Barbara Kistler Dep., p. 14/lines 9-24 (Exhibit "F" hereto).

48. The JPPSO's San Antonio office follows the Government manual, "DOD 4500.9-R Transportation Regulations" (Exhibit "H" hereto) in performing its duties. Barbara Kistler Dep., p. 18/lines 18-23, p. 20/lines 1-22, p. 65/lines 16-19 (Exhibit "F" hereto).

49. It is commonly known to the JPPSO that its contracting carriers use agents and contractors to perform transportation and storage services. Barbara Kistler Dep., p. 30/lines 7-17 (Exhibit "F" hereto).

50. As the JPPSO's Deputy Chief, Personal Property Division, and a 33-year employee of its San Antonio office, Ms. Kistler has no knowledge of any "broker" agreements between the JPPSO and any property, freight or transportation broker. Barbara Kistler Dep., p. 61/lines 2-8 (Exhibit "F" hereto).

51. The JPPSO office in San Antonio issued a Government "Privately Owned Personal Property Bill of Lading" ("GBL") No. ZY-711231, dated May 18, 2004 (Exhibit "K" hereto) to WILLIAMS MOVING covering the YORKS' shipment. Rick Williams Affid. ¶16; Barbara Kistler Dep. p.50/line 23 to p. 51/line 3; p. 55/lines 10-18 (Exhibit "F" hereto).

52. A copy of the GBL (Exhibit "K" hereto) was provided to YORK by the TMO prior to the shipment. Jason York Dep., Vol. I, p. 40/lines 1-21, p. 44/lines 1-20, p. 149/lines 8-15; p. 150/lines 14-25; Vol., II pp.4-5 (Exhibit "A" hereto).

53. The GBL (Exhibit "K" hereto) recites in Box No. 16, in part, "... This bill of lading is governed by the regulations relating thereto as published in Title 41, Part 102-118 of the Code of Federal Regulations..." Rick Williams Affid. ¶17.

54. Title 41 C.F.R. § 102-118.140(f) provides that the mandatory terms and conditions governing all Government shipments pursuant to GBLs shall include the "U.S. Government Freight Transportation Handbook" (Exhibit "L" hereto).

55. The U.S. Government Freight Transportation Handbook, dated July 25, 2000, (Exhibit "L" hereto, p.59 ) recites that the following terms and condition are deemed to be incorporated by reference on the reverse side of each Privately Owned Personal Property GBL:

> **TERMS AND CONDITIONS.** It is mutually agreed and understood between the United States and carriers, including forwarders, who are parties to this bill of lading that:
>
> * * *
>
> All parties to this bill of lading (carriers, agents, freight forwarders, and others), recognizing that this shipment is made under the auspices of the United States Government, agree to forgo any liens that may arise from any cause whatsoever and not to detain or impound this shipment for any reason.

56. The GBL (Exhibit "K" hereto) recites in Box No. 17 (Full Name of Shipper) that the shipper-consignor is "JPPSO-San Antonio" because the JPPSO is the DOD's

shipping office that arranged for the shipment. Rick Williams Affid. ¶18; Barbara Kistler Dep., p. 47/line 13 to p. 48/line 1 (Exhibit "F" hereto).

57. The GBL (Exhibit "K" hereto) recites in Box No. 27 (Description of Shipment*) that the GBL was "*Issued at lowest valuation cited in appropriate tender or tariff unless otherwise stated hereon". Rick Williams Affid. ¶19.

58. The GBL (Exhibit "K" hereto) recites in Box No. 28 (Weight) that the net weight of the shipment was 11,850 lbs. which is rounded up to 12,000 lbs. Rick Williams Affid. ¶20.

59. The GBL (Exhibit "K" hereto) further recites in Box No. 31 (Tariff or Special Rate Authorities) that the applicable tariff or special rate authority governing the shipment is "RS D-8". Rick Williams Affid. ¶21.

60. The GBL (Exhibit "K" hereto) recites in Box No. 33a (Name of Transportation Company) that the responsible carrier is DAY TRANSFER COMPANY. Rick Williams Affid. ¶22.

61. The GBL (Exhibit "K" hereto) further recites in Box No. 35d that the shipment was to be provided "Storage and Transit" ("SIT") services at destination in Rhode Island. Rick Williams Affid. ¶23.

62. The notation "RS D-8" in the GBL's Box No. 31 (Tariff or Special Rate Authorities) (Exhibit "K" hereto) refers to the DOD's "Domestic Personal Property Rate Solicitation D-8" (Exhibit "M" hereto) which was in effect during April and May, 2004 when JPPSO offered the shipment to DAY TRANSFER and issued the GBL. Rick Williams Affid. ¶24.

63. The DOD's Domestic Personal Property Rate Solicitation D-8 (Exhibit "M" hereto) recites in Item 306, in relevant part, as follows:

> LIMITATION OF CARRIER LIABILITY
>
> a. Rates and charges in this rate solicitation apply to a released value of $1.25 times the net weight of the shipment (in pounds) unless otherwise stated on BL ...
>
> b. The carrier accepts property for shipment on the BL under the following terms and conditions:
>
> (1) Carrier's legal liability for loss of damage to goods shall be the same as set forth in the Interstate Commerce Act (Title 49 U.S.C. 14706) (in conformity with the rules of the Surface Transportation Board) ... (emphasis added).
>
> * * *

Rick Williams Affid. ¶25.

64. The DOD's Domestic Personal Property Rate Solicitation D-8 (Exhibit "M" hereto) further recites in Item 308 as follows:

> DECLARATION OF VALUE – LIABILITY LIMITATION
>
> a. The terms "released value," "declared value," and "value declared by the shipper" as used in this rate solicitation, shall have the same meaning.
>
> b. The carrier's maximum liability shall be $1.25 times the net weight (in pounds) of the shipment for any lost or damaged article unless the shipment is released at either a lump sum value declared by the shipper or an amount greater than $1.25 times the net weight (in pounds) of the shipment, whichever is greater.
>
> c. The BL is released at the lowest value herein, unless otherwise stated. The BL shall be annotated with appropriate statement citing the increased valuation.
>
> d. If the shipper fails to make the entry required above, the shipment shall be deemed released at $1.25 times the net weight (in pounds) of the shipment.

> e. The released value and the carrier's maximum liability (whether or not loss or damage occurred from carrier negligence), as determined under this item, shall apply to any claim resulting from the performance or failure to perform by the carrier of any services, including accessorial services which the carrier contracted is to perform (emphasis added).

Rick Williams Affid. ¶26.

65. The GBL (Exhibit "K" hereto) and the DOD Rate Solicitation (Exhibit "M" hereto) are the only documents that the JPPSO considers to be the binding contract with the motor carrier governing the interstate transportation of service members' household goods shipments. Barbara Kistler Dep., p .48/lines 2-19; p. 86/lines 1-17 (Exhibit "F" hereto).

66. Based on (a) the lack of any request for additional or replacement insurance in Box No. 13 (Remarks) on the typed DD Form 1299, dated February 27, 2004 (Exhibit "E" hereto) transmitted by the TMO to the JPPSO; (b) the notation "BASIC" after the term "Insurance" on the JPPSO's April 9, 2004 e-mail shipment offering to DAY TRANSFER (Exhibit "J" hereto); (c) the absence of a notation "Member Requests Full Valuation Shipment" in Box No. 25 or 27 of the GBL (Exhibit "K" hereto) and (d) the terms of Items 306 and 308 of DOD Rate Solicitation D-8 (Exhibit "M" hereto), the YORK shipment was released by the JPPSO to DAY TRANSFER at the minimum standard valuation of $1.25 times the shipment weight. Barbara Kistler Dep., p. 44/line 15 to p. 56/line 20 (Exhibit "F" hereto).

67. Based on the statement of the net weight of the shipment as 12,000 lbs. in the GBL's Box No. 26 (Exhibit "K" hereto) and the terms of DOD rate solicitation D-8, Items 306 and 308 (Exhibit "M" hereto), the maximum liability of DAY TRANSFER as the responsible contracting GBL motor carrier is $15,000.00 with respect to all claims resulting from

loss, damage or delay of the subject shipment or any failure of DAY TRANSFER to perform contracted for services. Rick Williams Affid. ¶27.

**E. <u>THE SHIPMENT</u>**

68. In accordance with its Billing Waiver Agreement (Exhibit "G" hereto) with DAY TRANSFER, WILLIAMS MOVING instructed (a) Lone Star Relocation Services, Inc. to pack the YORKS' goods at their home in Schertz, Texas in preparation for interstate transportation to Newport, Rhode Island, (b) APOLLO VAN LINES, INC. to pick-up the shipment in Schertz, Texas and transport it interstate to Newport, Rhode Island and (c) ANDREWS EXPRESS & STORAGE WAREHOUSE, INC. to provide storage-in-transit (SIT) services for the shipment at its Newport warehouse pending final delivery to the YORKS. Rick Williams Affid. ¶28.

69. APOLLO VAN LINES and ANDREWS EXPRESS were DOD-approved moving and storage companies during June through August, 2004 when the YORKS' shipment was transported and placed in SIT. Rick Williams Affid. ¶29.

70. With respect to the interstate hauling of the shipment by APOLLO VAN LINES, WILLIAMS MOVING issued a DAY TRANSFER Uniform Household Goods Bill of Lading and Freight Bill No. 5134, dated June 4, 2004 (Exhibit "N" hereto), and provided it to APOLLO VAN LINES to furnish a copy to the YORKS at the time of the pick-up of their shipment so that they could identify and contact DAY TRANSFER as the responsible motor carrier if necessary. Rick Williams Affid. ¶30. Jason York Dep., Vol. I p.45/line 24 to p.46/line 11 (Exhibit "A" hereto).

71. The DAY TRANSFER Bill of Lading (Exhibit "N" hereto) did not supplement or amend the controlling GBL contract (Exhibit "K" hereto) and the DAY

TRANSFER Bill of Lading (Exhibit "M" hereto) was intended to be provided to the YORKS for informational purposes only. Rick Williams Affid. ¶31; Barbara Kistler Dep., p. 86/lines 1-17 (Exhibit "F" hereto).

72. From the time when WILLIAMS MOVING accepted the April 19, 2004 shipment offering e-mail (Exhibit "J" hereto) from the JPPSO on behalf of DAY TRANSFER on April 9, 2004 until the delivery of the shipment to the YORKS in mid-August, 2004, WILLIAMS MOVING had no other contact or communication with the Government or the YORKS with respect to the shipment. Rick Williams Affid. ¶32; Jason York Dep., Vol. I, p. 170/line 25 to p. 171/lines 1-2 (Exhibit "A" hereto).

73. WILLIAMS MOVING had no transportation contract or agreement of its own, including any contract of carriage or broker agreement, with the Government or the YORKS with respect to the subject shipment. Rick Williams Affid. ¶33.

74. When the shipment was delivered by ANDREWS MOVING to the YORKS on or about August 16, 2004, the YORKS reportedly discovered water and mold damage to their goods. Rick Williams Affid. ¶34.

75. In accordance with the Billing Waiver Agreement (Exhibit "G" hereto), WILLIAMS MOVING assumed all responsibility for handling the YORKS' claims, including hiring an independent cleaning service, ServiceMaster Allied Cleaning and Restoration Services ("ServiceMaster") to remove mold from the YORKS' goods and rental home and processing payments for the YORKS' lodging expenses during the mold remediation. Rick Williams Affid. ¶35.

76. WILLIAMS MOVING's involvement in processing the YORKS' claims was solely in its capacity as DAY TRANSFER's booking agent under the Billing Waiver

Agreement (Exhibit "G" hereto) and in furtherance of DAY TRANSFER's contracting motor carrier obligations to the JPPSO and the YORKS under the GBL (Exhibit "K" hereto). Rick Williams Affid. ¶36.

77. During September, 2004, WILLIAMS MOVING and DAY TRANSFER made payments totaling $10,696.24 to the YORKS and ServiceMaster with respect to the YORKS' claims and ServiceMaster's cleaning services. Rick Williams Affid. ¶37.

78. The YORKS also received entitlement payments from the DOD totaling $52,665.07 for their property damage and inconvenience claims. Jason York Dep., Vol. I, p. 127/lines 6-13; Vol. II p. 32/lines 4-7 (Exhibit "A" hereto).

## F. THE YORKS' CLAIMS

### Count I

79. Count I of the Second Amended Complaint alleges, a claim against DAY TRANSFER pursuant to the Carmack Amendment, 49 U.S.C. §14706, for loss and damage to plaintiff's household goods and severe financial losses and other damages. Second Amended Complaint ¶¶15-17.

### Count II

80. Count II of the Second Amended Complaint alleges that apart from the contract of carriage, DAY TRANSFER had a "separate and distinct" duty to remediate damage to plaintiffs' household goods and rental home. Second Amended Complaint ¶19.

81. Count II of the Second Amended Complaint further alleges that DAY TRANSFER negligently performed its alleged remediation obligation, causing plaintiffs to incur (a) loss of their household goods, (b) lodging and meal expenses, (c) loss of a housing allowance,

(d) physical and emotional pain and suffering and (e) damage to JASON YORK's career. Second Amended Complaint ¶20.

82. The YORKS allege that they experienced stress as a result of the damage to the shipment, but have not sought medical attention for their alleged stress. Jason York Dep., Vol. I, p. 132/line 12 to p. 133/line 6 (Exhibit "A" hereto).

83. YORK further alleges as a claim in this action he sustained a back injury while lifting items without assistance at the Newport Mini Storage facility long after the shipment was delivered by ANDREWS on August 16, 2004. Jason York Dep. Vol. I, p. 133/line 7 to p. 134 (Exhibit "A" hereto).

84. On or about August 22, 2004, YORK decided to drop out of his courses at the Naval War College, but resumed studies on or about August 15, 2005 and graduated on November 16, 2005. Jason York Dep., Vol. I, p. 193/line 11 to p. 194/line 15 (Exhibit "A" hereto).

85. On or about September 2, 2004, YORK filed a "Marine Corps Request MAST Application" requesting permission to complain directly to the Secretary of the Navy about the problems resulting from the alleged damage to the shipment. Jason York Dep., Vol. I, p. 111/lines 4-17 (Exhibit "A" hereto).

86. YORK later withdrew his "MAST" application and believes filing the application may have harmed his chances for a promotion. Jason York Dep., Vol. I, p. 116/lines 11-16, p. 130/lines 14-18, p. 143/lines 3-11 (Exhibit "F" hereto).

87. YORK admits he cannot establish with certainty that he will not be promoted to Lieutenant Colonel in 2007-2008 as a result of the handling of his shipment, but contends that his chances for promotion have been reduced by the delay in completing his

studies at the Naval War College. Jason York Dep., Vol. I, p. 130/lines 14-18; Vol. II, p. 29/lines 19-25 (Exhibit "A" hereto).

**Count III**

88. Count III of the Second Amended Complaint alleges that DAY TRANSFER acted as a "broker" by contracting with WILLIAMS MOVING to hire third parties to provide transportation and storage services to plaintiffs. Second Amended Complaint ¶¶22-23.

89. Count III of the Second Amended Complaint further alleges that DAY TRANSFER was negligent in performing its "broker" services by failing to ensure suitable storage, causing plaintiffs severe financial losses and loss of their household goods. Second Amended Complaint ¶¶ 24-25.

**Count IX**

90. Count IX of the Second Amended Complaint alleges a claim against WILLIAMS MOVING for negligence as a "broker" alleging that WILLIAMS MOVING acted as a broker with respect to the transportation of the goods and the remediation of the goods and plaintiffs' rental residence. Second Amended Complaint ¶¶57.

91. Count IX of the Second Amended Complaint further alleges that WILLIAMS MOVING's negligent performance of brokerage services caused plaintiffs to incur (a) loss of their household goods, (b) lodging and meal expenses, (c) loss of housing allowance, (d) physical and emotional pain and suffering and damage to JASON YORK's career. Second Amended Complaint ¶¶58-59.

Dated: August 25, 2006

/s/James P. Marusak

James P. Marusak, Esq. #2470
GIDLEY SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644

-and-

George W. Wright, Esq. (Pro Hac Vice)
GEORGE W. WRIGHT & ASSOCIATES, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
(201) 342-8884

Attorneys for Defendant DAY TRANSFER
COMPANY and Third-Party Defendant
WILLIAMS MOVING COMPANY

## CERTIFICATION

**The document has been filed electronically and it is available for viewing and downloading from the ECF system."**

I hereby certify that I caused a true and accurate copy of the within document to be served upon the following counsel of record on this 25th day of August, 2006:

Joseph R. Palumbo, Jr., Esq.
Attorney for Plaintiffs
294 Valley Road
Middletown, RI 02842

Michael Edwards, Esq./William R. Grimm, Esq.
HINCKLEY, ALLEN & SNYDER, LLP
Attorneys for Defendant
APOLLO VAN LINES, INC.
1500 Fleet Center
Providence, RI 02903

Robert K. Taylor, Esq.
Carolyn P. Medina, Esq.
PARTRIDGE, SNOW & HAHN LLP
Attorneys for Defendant
ANDREWS EXPRESS AND WAREHOUSE, INC.
180 South Main Street
Providence, RI 02903

/s/James P. Marusak