UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON YORK and MAUREEN YORK, | ) |
| Plaintiff(s), | ) |
| VS. | ) C.A. NO. 551S |
| DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC., | ) |
| Defendant(s). | ) |
| VS. | ) |
| WILLIAMS MOVING COMPANY, | ) |
| Third-Party Defendant. | ) |

**************************************************

ORAL DEPOSITION OF
ROSALINDA KAGEBEIN
MAY 1, 2006

**************************************************

ORAL DEPOSITION of ROSALINDA KAGEBEIN, produced as a witness at the instance of the the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 1st day of May, 2006, from 10:02 a.m. to 2:08 p.m., before Dicie Lee Eytcheson, CSR in and for the State of Texas, reported by machine shorthand, at the Dispute Resolution Center of FORT SAM HOUSTON, San Antonio, Texas 78234, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

ORIGINAL



Electronically signed by Dicie Eytcheson (301-362-425-8759)
0d3d32b9-2de1-4c17-9434-2aef95668b0c

A P P E A R A N C E S

FOR THE PLAINTIFF(S): JASON YORK AND MAUREEN YORK

MR. JOSEPH R. PALUMBO, JR.
LAW OFFICES OF JOSEPH R. PALUMBO, JR.
294 Valley Road
Middletown, Rhode Island 02842

FOR THE DEFENDANT(S): DAY TRANSFER COMPANY AND WILLIAMS MOVING COMPANY

MR. GEORGE W. WRIGHT
GEORGE W. WRIGHT & ASSOCIATES, LLC
Continental Plaza
401 Hackensack Ave.
Hackensack, New Jersey 07601

FOR THE DEFENDANT(S): ANDREWS EXPRESS & WAREHOUSE, INC.

MS. CAROLYN P. MEDINA
PARTRIDGE SNOW & HAHN, LLP
180 South Main Street
Providence, Rhode Island 02903-7120

FOR THE UNITED STATES ARMY:

CAPTAIN BRIAN UNDERDAHL
OFFICE OF THE STAFF JUDGE ADVOCATE
Building 134
Fort Sam Houston, Texas 78234

* * * * * *



Electronically signed by Dicie Eytcheson (301-362-425-8759)
0d3d32b9-2de1-4c17-9434-2aef95668b0c

# I N D E X


| | PAGE |
|---|---|
| Appearances .................................. | 2 |
| Stipulations (Attached hereto) ................. | N/A |
| ROSALINDA KAGEBEIN | |
| Examination by Mr. Wright .................. | 4 |
| Examination by Ms. Medina .................. | 98 |
| Examination by Mr. Palumbo ................. | 107 |
| Examination by Ms. Wright .................. | 126 |
| Examination by Ms. Medina .................. | 130 |
| Examination by Mr. Palumbo ................. | 131 |
| Examination by Mr. Wright .................. | 133 |
| Changes and Signature ........................ | 135 |
| Reporter's Certificate ....................... | 137 |


# E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| KAG-1 | Briefing Sessions Notes | 37 |
| KAG-2 | Minimal Allowable Loss for Damage Payments | 43 |
| KAG-3 | Form DD1797 | 46 |
| KAG-4 | Form DD1299 | 46 |
| KAG-5 | VHS "It's Your Claim" | 46 |
| KAG-6 | Long Form DD1797 | 66 |
| KAG-7 | DOD 1299, Application for Shipment and Storage of Personal Property | 86 |
| KAG-8 | Documents provided by JPPSO | 128 |


-o-O-o-

A. Yes.

Q. Since February of 2004, have they -- have the entitlements shown in KAG-1 changed?

A. The general entitlements, no. But we've changed it to where we have a DVD now, and it's presented on a DVD or a VHS tape.

Q. Now, if you had a counseling session today, would you still use this exact same document, KAG-1?

A. The information. Not necessarily the actual notes, but the information is still, basically, the same.

Q. Okay. I had asked you earlier how long each session takes and I -- my recollection was that you said part of it takes 45 minutes to an hour or does the entire -- does the entire session usually take that long?

A. The presentation of the briefing is roughly 45 minutes to an hour depending on what briefing they're attending.

Q. And is that followed by the question-and-answer session?

A. Yes.

Q. And does that occur as a group?

A. Yes. Initially. And then they -- after the question session, then they see a counselor one on one.



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

individual session that you review the member's orders and help them fill out the paperwork?

A. The brief -- They sit in on the briefing. Once a briefing is over, they ask questions, in general, and then they sit with a counselor one on one.

When they sit with the counselor one on one is when we will look at the orders. They have to fill out the orders. Then we match -- review the orders to verify what they're authorized. Then we complete -- look over the paperwork to make sure that all of the information is provided to be able to send the paperwork to the shipping office for booking.

Q. Is the 1299 typed by your office or is it typed by JPPSO?

A. It's handwritten by the member, and then the information off of that handwritten copy is put into the computer for booking.

Q. Okay. When you were conducting the briefing sessions during 2004, can you tell me what materials you would bring with you to each session; and by that, I mean either graphic material or handwritten material or typed material? I'm trying to get an idea of the -- the package of items or materials that you and other counselors would -- would have available to start each session and to conduct each session.



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

through this. You can go ahead, if you want.

THE WITNESS: That's a 1299, and that's a 1797.

Q. (BY MR. WRIGHT) Okay. Ms. Kagebein, which of the two documents, 1299 or 1797, would be filled out by the member first?

A. On the 1797 all the member fills out is name, social and rank. And the briefing gives them the information that they're -- that's identified on this, and then they sign it and date it.

And then this one, they fill out the whole form. We just complete it by providing them with the installation's phone numbers, confirming that he provided us the information that we need for the shipment. And then once we review it and make sure all of the information is on there we make a copy of it and give it to him. The original would go to JPPSO and then the -- we would keep a -- a copy on at file.

MR. WRIGHT: I'm going to ask the Reporter to mark as KAG-3, the two-page DD, form, 1797.

(Deposition Exhibit No. KAG-3 marked for identification.)

And then we'll mark as KAG-4 the one-page double-sided blank Form DD1299.

(Deposition Exhibit No. KAG-4



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

KAG-3?
A. Uh-huh. On the top of the -- that one.
Q. So the --
A. The first page.
Q. -- you're referring to the text that -- that appears under Privacy Act Statement?
A. Yes, sir.
Q. And to the best of your recollection that Privacy Act Statement was on the back of the long form used in 2004?
A. That's correct.
Q. Okay. And to the best of your recollection nothing else was on the back of the long form except the Privacy Act Statement?
A. Yes.
Q. Okay.
A. That's all.
Q. You mentioned a video that you used. And -- And is it correct that you still use the video in your briefing sessions?
A. Yes, it is.
Q. Is the video that you used in 2004 still the same one that you use today?
A. Yes, sir.
Q. Do you recall how long before 2004 you had been


Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

using this video?

A. I don't recall the exact date. It's when we went to group briefings.

Q. When -- When did that occur?

A. I don't know for sure the --

Q. I understand you may not recall the exact date, but can you recall the year or approximately how many years prior to '04?

A. We have been doing group briefings for a long time, but I don't know for sure what year it started.

Q. Would it be safe to say they began several years before 2004?

A. Yes.

Q. And is -- the video that you use today has been used continuously since the group briefing sessions began?

A. Yes.

Q. Okay. And has that video been shown by you at all of the sessions that you have conducted during those years?

A. For the CONUS briefing, yes.

Q. And that includes 2004?

A. Yes sir.

Q. Does the video have a title to it?

A. "It's Your Claim."



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

Q. And how long does that video last?
A. About 15 minutes.
Q. Does it appear from this video that it was produced by the Department of Defense or the Department of the Army?
A. Yes.
Q. Captain Underdahl has provided us with a duplicate copy of -- of the video you've identified. Have -- Have you reviewed the copy that Captain Underdahl gave us?
A. I have seen it, but I don't know for sure what you mean if I've reviewed it.
Q. That's what I meant.
A. Yeah. I have seen it.
Q. Okay. What I was really asking was, whether you have seen the -- the specific copy that Captain Underdahl gave us?
A. Uh-huh.
Q. All right.
A. Yes.
Q. Okay. And is the -- And we have marked that as KAG-5. Is the duplicate marked KAG-5 identical to the video that you have used for -- for several years --
A. Yes.
Q. -- in all of your sessions?



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

important points? I mean, I don't think that there's a foundation for this witness to testify and draw the line in terms of what's important and what's not important that occurs at these briefings.

Q. (BY MR. WRIGHT) Well, are -- are there certain points, Ms. Kagebein, with respect to entitlements that you consider important in the sense that you're -- you're certain to -- to convey this information to each member at each session?

MR. PALUMBO: Objection. Form.

A. I give them their weight allowance. I go ahead and review the orders, make sure everything is on there that I need, and just review the form to make sure that all of the information that I need is provided.

Q. (BY MR. WRIGHT) Okay. Do you provide each member with any information regarding what the government will pay for on each move?

A. The briefing gives them the general information, and the video gave them the general information. When I review the application, in the remarks block is where he should have told me whether he wanted basic coverage or replacement insurance. If it's on that remarks block, I'll ask him for sure -- if it's in there, I'll ask they for sure if that's what they want. If it's not -- If there's nothing reflected, then

A. Once we're -- we're -- When we are reviewing it and completing it, yes.

Q. All right. How is it that the service member knows to provide insurance information in the remarks block on the 1299?

MR. PALUMBO: Objection.

A. If you look on those briefing notes, it will have Block 13 for the 1299, and in there, it will request for them to either annotate basic coverage or replacement insurance.

Q. (BY MR. WRIGHT) You're referring to KAG-1?

A. Yes.

Q. So am -- am I correct that it's during the verbal presentation that you or the other counselor tells the member to use the remarks block of 1299 to indicate any additional insurance or valuation that they want; is -- is that a --

A. That's correct.

Q. -- correct statement?

A. Yes.

Q. Okay. Does any part of your presentation or your -- your briefing apprise a service member of how the move will be paid either by the member or by the government?

A. No.

A. When we sit with the counselor one on -- with the customer one on one, we -- we let them know that -- well the paperwork is going to JPPSO to be able to get the shipment booked. Because we have to -- we provide them with JPPSO's phone number on the paperwork so that they can confirm the dates.

Q. Do your sessions include any information being given to the service member about how and when they will find out about who their mover is going to be?

A. I normally advise my customers to check with the shipping office no later than a week prior to the moving date to confirm the dates and get the company's name and number.

Q. With regard to the -- the specific dollar amounts or dollar values of the entitlements that you discuss with a service member, I believe you mentioned earlier that there is a $40,000 entitlement. And forgive me if you've already explained this, but I want to make sure that we have it down. What does that $40,000 represent?

A. The maximum government coverage in case of loss or damage.

Q. To -- Loss or damage to the shipment of the property?

A. To the shipment of property, right.



Electronically signed by Dicie Eytcheson (301-362-425-8759)
0d3d32b9-2de1-4c17-9434-2aef95668b0c

Q. Okay. Does any of your information tell the customer how much they're entitled to obtain from the mover as opposed to from the government?

A. No. Can I add one thing?

Q. Certainly.

A. The video on the It's Your Claim --

Q. Yes?

A. -- does have information in reference to the coverage. And it does say $1.25 times the weight of the shipment or something -- information like that.

Q. All right.

A. And that they have to submit their claim within the seven -- 70 days from the date of receipt.

Q. Is there any reference to the $1.25 in your counsel briefing notes?

A. No. That's why we present the video. That's the first thing we present to them before they go over the briefing notes.

Q. Okay. So is the video the very first thing that is shown to the member at the start of each session?

A. Yes.

Q. So it -- it -- it goes as follows: The video, then the oral presentation --

A. Yes.



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

Q. -- from the briefing notes?
A. Yes.
Q. Then the one-on-one session?
A. Right.
(Deposition Exhibit No. KAG-6 marked for identification.)
Q. (BY MR. WRIGHT) Ms. Kagebein, we've marked as No. -6, what appears to be a long Form DD1797 identified at -- at the upper left-hand corner with the name Jason D. York. Do you recognize this document?
A. Yes.
Q. And how do you recognize it?
A. Because it's got my writing and my signature on it.
Q. Does your office have the original of this document?
A. I don't recall.
Q. Do you know whether the originals of these documents are maintained by either JPPSO or the Transportation Division?
A. The original is usually sent to the shipping office to JPPSO.
Q. There seems to be a date in the lower right-hand corner. Can you tell me what that is?
A. The year 2004, the month of February, the date



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

of the 24th.
Q. All right. And does that indicate that this document was filled out on February 24th, '04?
A. Yes.
Q. Would that also mean that there was a briefing that occurred on that date?
A. Yes.
Q. Did Major York attend that briefing?
A. I would expect. Every once in a blue moon, I get a customer that doesn't sign it and date it at the time that they attend the briefing and I have to get them to sign it when they bring the paperwork back. So I don't know for sure if that's the date that he attended the briefing.
Q. Do you remember him at all?
A. No.
Q. Did -- Is the handwriting at the top, to the best of your knowledge, Major York's --
A. Yes.
Q. -- where it's shown his name, Social Security number and grade?
A. That's his writing, yes.
Q. And is it your signature that appears in the lower left-hand corner?
A. Yes.


Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0

Q. That's your handwriting?
A. Uh-huh.
Q. Do you know who dated the document?
A. He did.
Q. What other handwritten information on this document is yours, if any?
A. The check marks and the notes that are on the form are mine.
Q. Well, let's take one -- one part at a time. Part One is household goods, and it looks like there's a weight allowance of 17,000 pounds.
A. Uh-huh.
Q. Is that your notation?
A. Yes.
Q. Okay. Are all of the numbers yours in that section?
A. Yes.
Q. And what does the check mark signify?
A. That we reviewed that information with him in the briefing.
Q. Does the check mark mean that you reviewed all of Items 1 through 21?
A. Yes.
Q. Does this document indicate that the individual session was between you and Major York?


Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

A. The one-on-one was between me and him, yes.
Q. All right.
MR. PALUMBO: Could you read that question and answer back, please?
(Requested portion read back.)
MR. PALUMBO: Well, I am sorry for my delayed objection to that question. There's no foundation at this point, that I have heard, of -- of a one-on-one session with Major York.
Q. (BY MR. WRIGHT) Is the 1797 form generally completed and signed during the one-on-one session between the service member and the counselor?
A. Normally, yes. But every now and then a member has not made their final decisions on how they want to submit the paperwork. They sometimes take it home to discuss the situations with their families, and then they bring the paperwork back, and then I finalize it and give them their copies. But I don't recall.
Q. If -- If the service member brought the paperwork back after the one-on-one session, would that be shown anywhere on this document?
A. If I receive it, I try to put the receive date up on the top of the 1299 not on the counseling check list.
Q. Okay.



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

do it yourself means?

A. A do-it-yourself move is where the government will pay a member to move property by using their own mode or method, whether it be a rental truck, rental trailer, privately-owned vehicle. They do all of the work. They -- They have to get the vehicle weighed empty and loaded to verify how much weight they move, and then they send the documentation to destination finance to be able to ged paid for it. The government pays up to 95 percent of what it would have cost them to move it on a do-it-yourself move.

Q. Now, we reviewed the tape marked as KAG-5, during your -- your lunch break. Were you using any other videos for your counsel sessions in 2004 besides KAG-5?

A. No.

Q. There's mention during the video of the carrier's limitation being $1.25 per pound for the weight of the shipment; is that correct?

A. Yes.

Q. I had asked you earlier whether there was any discussion or mention of $1.25 per pound carrier limitation during your session, and I -- I think your testimony was, no, it's in the video. But in reviewing your -- your briefing notes marked KAG-1, I did notice



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

on Page 7 that, at the bottom of the page, where there's a discussion of Part Seven, liability, meaning Part Seven of the 1797 form, it does say, the carrier's liability is $1.25 times the weight of the shipment. Does that indicate to you whether or not the $1.25 is part of your standard discussion with members during a briefing session?

A. I have not used the notes to give the briefings --

Q. Uh-huh.

A. -- since October of last year --

Q. Okay.

A. -- because of the new changes that they have done. So that did -- I did forget that it was on there. But the information that is on those notes is what we presented at the time that we were using them.

Q. Okay. So your testimony earlier that the $1.25 is not mentioned in the briefing, that -- that -- that was true of October of 2005 and later, correct?

A. Right.

Q. But prior to --

A. I didn't recall it. To tell you the truth, I did not recall it because I haven't been using the notes anymore.

Q. Prior to October of 2005, and -- and including

2004, when you used these notes marked Exhibit -1, did you generally and -- and typically make explicit mention of the $1.25 --

A. Yes.

Q. -- when you were talking about Part Seven, liability, of the 1797?

A. Yes.

Q. I want to go through this quickly. Ms. Kagebein, referring to the 1797, Part One is household goods, do any of those 21 items pertain to valuation of a shipment or member entitlement with respect to loss and damage liability?

A. No.

Q. Do those issues only appear under Part Seven, liability claims protection?

A. Yes.

Q. Okay. Let's -- Let's look at Item No. 1 in Part Seven. The first box is carrier storage firm, I believe, and government liability for loss or delay.

MR. SCIANO: Loss or damage, isn't it?

THE WITNESS: Yes. Loss or damage.

Q. (BY MR. WRIGHT) Loss or damage. I'm sorry.

A. Uh-huh.

Q. Loss or damage. What do you advise a member with respect to that No. 1?



Electronically signed by Dicie Eytcheson (301-362-425-8759)
0d3d32b9-2de1-4c17-9434-2aef95668b0c

for sure where.
Q. Could the typewritten version of this document, marked KAG-7, have been prepared without a handwritten copy --
A. No.
Q. -- received from the service member?
A. No.
Q. Okay. Is this the type of document that you provide to JPPSO?
A. Yes.
Q. Is the typing on this form done by your office or by JPPSO?
A. By my office.
Q. Do you personally prepare these typewritten forms?
A. Yes.
Q. Is this typed on a computer or a typewriter?
A. Computer.
Q. Does the Transportation Division maintain both the handwritten and the typewritten version of this 1299?
A. Normally yes.
Q. Are they kept in the same file or different files, if you know?
A. What do you mean same file? Together?



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

handwritten copy with his signature and this information so that JPPSO can book the shipment.

MR. WRIGHT: Would you read back the last question and answer?

(Requested portion read back.)

Q. (BY MR. WRIGHT) Now I understand. Okay. How long after the session do you generally prepare the final typewritten 1299?

A. It depends on how many I have on my desk.

Q. Okay. Would it ever take longer than a week or more than --

A. Not usually not in the February time frame.

Q. In February, about how long is the turn around?

A. It's -- It would usually be like three -- maximum three to four days, roughly. That's only a guess.

Q. Okay. If the service member requests any additional insurance or valuation, is that noted in Box 13?

A. Yes.

Q. If there was additional insurance or valuation information requested on the handwritten version of this document submitted by the member, would you have typed that in this document?

A. If it's basic coverage, it would not be



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c

reflected on the typed copy. If it's replacement insurance, then I would have to program it into the computer on the -- when I'm putting the information in the system, because there's a -- an area that requires us to reflect whether it's basic -- the basic automatically shoots out when I'm typing it.

If I see replacement in the remarks block, then I have to go back to that spot and change "Basic" to read "Replace." And then I would have to reflect the amount of coverage that he would be entitled to based on the weight of the shipment, and it would give me information on how much the replacement insurance would cost him.

Q. Is there any place on Exhibit -7 where it shows whether or not this was a basic covered shipment?

A. No. It doesn't -- If it's not requested to change, then it -- it doesn't reflect anything. If it is requested to purchase replacement insurance, then it would say "Replacement insurance" right after the phone numbers for the inbound installation.

Q. Does the fact that -- that Box 13 shows no additional valuation for insurance mean that this was a basic covered shipment?

MR. WRIGHT: Objection.

A. Yes.

MR. WRIGHT: What's the objection?

MR. PALUMBO: No foundation. We don't have the -- the handwritten application, which is the best evidence of -- of that fact.

Q. (BY MR. WRIGHT) Would the request for additional insurance or valuation be shown anywhere else on this document besides Box No. 13?

A. No.

Q. Ms. Kagebein, can you recall any instance, during the years that you have done group counseling, where a member has requested additional valuation on his handwritten 1299 but you have not recorded it or captured it on the typewritten 1299?

MR. PALUMBO: Objection.

MR. WRIGHT: Now what?

MR. PALUMBO: That --

MR. WRIGHT: What's the objection?

MR. PALUMBO: That calls for speculation. How would the witness know that unless it happened to come up? Because unless a -- or it happened -- or there was a claim made? How would the witness know that sitting here today?

MR. WRIGHT: She would know if -- if she were ever confronted with a handwritten 1299 with valuation information requested and a typewritten 1299



Electronically signed by Dicie Eytcheson (301-362-425-8759)
0d3d32b9-2de1-4c17-9434-2aef95668b0c

they decide to take the higher valuation they normally discuss it with us when we're reviewing the paperwork.

Q. Okay. So if they said that they wanted to -- I just want to understand.

If they -- If they say that they want to take replacement coverage, they're going to write that in Box 13 and that means that they have bought from the carrier --

A. That's correct.

Q. -- either Option One or Option Two?

A. No. The replacement value would be where they want to purchase the full replacement insurance.

Q. Okay. And they have bought that from the carrier?

A. Right.

Q. And is there a charge for the higher valuation depreciation coverage?

A. Yes.

Q. And if they wanted that, where would it be noted?

A. It would still be annotated in Block 13 and then that's when -- When we see them one-on-one, we screen that and if -- we would notice that and question them on it to make sure that they're well aware of what they're purchasing.



Electronically signed by Dicie Eytcheson (301-362-425-8759) 0d3d32b9-2de1-4c17-9434-2aef95668b0c