UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and
MAUREEN YORK

v. C.A. NO. 04-551 S

DAY TRANSFER COMPANY,
APOLLO VAN LINES, INC. and
ANDREWS EXPRESS &
STORAGE WAREHOUSE, INC.

v.

WILLIAMS MOVING COMPANY

**APOLLO VAN LINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Apollo Van Lines, Inc. ("Apollo") moves the Court for an order granting it a summary judgment on Count IV and Count V of plaintiffs' Second Amended Complaint and on Count I and Count II of the cross-claims of co-defendant Day Transfer Company ("Day") and third-party defendant Williams Moving Company ("Williams"). In support of this motion, Apollo relies upon the accompanying memorandum of law, the declaration of Michael Johnson, statement of undisputed material facts and the accompanying appendix of exhibits. Apollo respectfully requests that the Court grant its motion for summary judgment.

Apollo Van Lines, Inc.

By its Counsel

/s/ William R. Grimm
William R. Grimm (#1938)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
wgrimm@haslaw.com
medwards@haslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2006, a copy of the foregoing Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ William R. Grimm
William R. Grimm (#1938)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
wgrimm@haslaw.com
medwards@haslaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and
MAUREEN YORK

v. C.A. NO. 04-551 S

DAY TRANSFER COMPANY,
APOLLO VAN LINES, INC. and
ANDREWS EXPRESS &
STORAGE WAREHOUSE, INC.

v.

WILLIAMS MOVING COMPANY

**MEMORANDUM OF LAW IN SUPPORT OF**
**APOLLO VAN LINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I. STATEMENT OF THE CASE

This is an action by a military service member and his wife, Major Jason and Maureen York, for recovery of damages resulting from mold and other damage to their household goods. Major York shipped his household goods, at government expense, under the Personal Property Program administered by the Surface Deployment and Distribution Command (SDDC), (formerly the Military Traffic Management Command (MTMC)). In the Personal Property Program, rates are solicited from qualified carriers for the transportation of household goods of military personnel, and their dependents and shipments are tendered to carriers by a military personal property shipping office (PPSO) by issuance of a Government Bill of Lading (GBL), which is the contract of carriage between the government and the carrier. The terms and conditions for the transportation of the service member's household goods are set forth in rate solicitations issued by SDDC (previously MTMC), the terms of which are incorporated in the GBL by reference.

The Joint Personal Property Shipping Office (JPPSO), San Antonio, Texas tendered the Yorks' shipment to defendant Day Transfer Company (Day) for transportation from Schertz, Texas to Rhode Island, by GBL No. ZY-711231, which incorporated the terms of Domestic Rate Solicitation D-8. Day had previously contracted with third-party defendant Williams Moving Company (Williams) to dispatch all military shipments tendered to it under the Military Personal Property Program. Williams had previously entered into an agreement with Apollo for the hauling of military shipments. Pursuant to this hauling agreement, Williams tendered the York shipment to Apollo, a motor carrier, for transportation from Texas to Rhode Island. Williams had designated defendant Andrews Express & Storage Warehouse, Inc. (Andrews) as Day's destination agent. Apollo transported the Yorks' household goods to Rhode Island. On June 16, 2004, Apollo, at the direction of the Transportation Officer at the Newport Naval Station in Rhode Island, turned the shipment over to Andrews for storage-in-transit (SIT) in Andrews' warehouse.

At the time of transfer of custody of plaintiffs' household goods from Apollo to Andrews, an Exception Sheet was signed by representatives of both Apollo and Andrews, which shows that the household goods were free from any mold, mildew or water damage. Plaintiffs' household goods remained in Andrews' warehouse from June 16 until August 16, 2004, when they were delivered to plaintiffs' residence by Andrews. The mold, mildew and water damage claimed by plaintiffs was first discovered when Andrews delivered the Yorks' shipment to their new residence.

Plaintiffs filed this action to recover compensation for damage to their household goods against Day, Apollo and Andrews; Day filed a third-party complaint against Williams; and Day and Williams filed cross-claims against Apollo. All claims against Apollo are subject to this motion for summary judgment.

## II. QUESTIONS PRESENTED

The questions presented to the Court are:

1. Whether Apollo is entitled to summary judgment on plaintiffs' claim for damage to their shipment and on the cross-claims of Day and Williams for contribution and indemnification because none of the claimed damage occurred while plaintiffs' household goods were in the possession of Apollo.

2. Whether Apollo is entitled to summary judgment on plaintiffs' claim for damages under the Carmack Amendment, 49 U.S.C. §14706(a)(1), because the Carmack Amendment does not provide plaintiffs with a cause of action against a connecting carrier such as Apollo.

3. Whether Apollo is entitled to summary judgment on plaintiffs' claim that Apollo is liable for the full value of plaintiffs' household goods based on Major York's alleged understanding of a statement of Apollo's driver of the meaning of the "per GBL" annotation on the Day commercial bill of lading form because plaintiffs' only right to increase the carrier's liability for loss or damage from the limited $1.25 per pound liability was by annotating the GBL prior to the pickup of the shipment, which right was not exercised, and because the carrier, Day, did not consent to an increase in valuation, which consent is required.

## III. ARGUMENT

### A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, there is no genuine issue as to any material fact and defendant Apollo "is entitled to summary judgment, as a matter of law." See Celotrex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Henley Drilling Co. v. McGee, 36 F.3d 143, 144 (1st Cir. 1994). As the Supreme Court stated in Celotrex:

> Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

> party is entitled to a judgment as a matter of law. In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial…." (477 U.S. at 322-323, 106 S. Ct. at 2552).

For the reasons set forth below and in the accompanying statement of undisputed material facts, the Court should grant Apollo's motion for summary judgment.

## B. APOLLO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM IN COUNT IV AND ON THE CROSS-CLAIMS OF DAY AND WILLIAMS BECAUSE THE DAMAGE DID NOT OCCUR WHILE THE YORKS' SHIPMENT WAS IN APOLLO'S POSSESSION.

It is undisputed that the mold, mildew and water damage which forms the basis of the complaint and the cross-complaints against Apollo did not occur while the shipment was in Apollo's possession. This is established by the Exception Sheet, executed jointly by H. Zambrano, an employee of Andrews, and by Tracy Keller, Apollo's driver, which shows that plaintiffs' household goods were free from mold, mildew and water damage at the time custody of the household goods was transferred from Apollo to Andrews (Apollo Fact No. 13).[1] Andrews' General Manager, William O'Laughlin, testified at his deposition that this Exception Sheet is accurate, complete and genuine and that no mold, mildew or water damage is shown on the Exception Sheet. (Apollo Fact No. 15). On examination by Apollo's counsel, Mr. O'Laughlin testified:

> "Q. And tell me again, what is the purpose of the Exception Sheet?
> A. It's to note anything that is different. When a driver picks up a shipment at one location from other state, he writes down the condition that he finds on the furniture, and sometimes he might miss things or sometimes he might do something, damage in between, and we go and look at the piece, and we write down what we see. It might not be the same on his inventory.

[1]The reference "Apollo Fact No." is to a paragraph in Apollo's Statement of Undisputed Material Facts.

Q. Is it also to make sure that Andrews is not liable for any pre-existing conditions of the goods before they arrive?
A. Right, Yes.
Q. Now, take a look at Exhibit 1, and let me know if you agree that there's no mold damage to the goods shown on that Exception Sheet.

(Witness perusing Exhibit 1.)

A. No, I don't see any.
Q. And, again, look at Defendant's Exhibit 1, tell me if you agree that there's no mildew damage on the Exception Sheet?
A. No, it doesn't show any.
Q. And, finally, in Defendant's Exhibit 1, there's no water damage to the goods shown on the Exception Sheet; is that correct?

(Witness perusing Exhibit 1.)

A. No.
Q. You agree with my statement that –
A. Yes.
Q. -- there's no water damage to the goods shown on the Exception Sheet?

A. Nothing that is wrote down, no.
Q. And Defendant's Exhibit 1 that you have in front of you, is that a true, accurate, complete and genuine copy of the Exception Sheet?
A. It appears to be. (O'Laughlin Deposition, pp. 5-7). (Apollo Fact No. 15)."

Rick Williams, the president of Williams, confirmed this fact at his deposition where he testified:

"Q. Did you have any reason to believe that any water damage - -
A. No.
Q. - - was sustained during that - - during the hauling part of this shipment?
A. No reason.
Q. By Apollo.
A. No. No reason." (Williams Deposition, p. 97). (Apollo Fact No. 15)."

Further, the record establishes that Andrews' warehouse in which the Yorks' shipment was stored had a leaky roof from June 16 to August 16 (Apollo Fact No. 16) and that the roof was not

repaired until after the shipment was delivered to the Yorks' residence by Andrews (Apollo Fact No. 16). The record also establishes that the mold, mildew and water damage was not discovered until the shipment was delivered to the Yorks at their new residence. (Apollo Fact No. 17).

Apollo is not required to indemnify Williams under the terms of the hauling agreement because the damage did not occur while the Yorks' shipment was in the possession of Apollo. The hauling agreement identifies Williams as the "Booking Carrier" and Apollo Van Lines as the "Hauling Carrier." The agreement specifically provides in subparagraph 2 to paragraph F, Claims Liability:

> "2. On all DOD, Commercial, and GSA shipments the Booking Carrier [Williams] will retain 100% of any valuation charges plus 4% of the linehaul and 3% of the packing revenue. The Booking Carrier will charge the Hauling Carrier [Apollo] at .60/lb./article <u>for any damage claims deemed to be the hauling carrier's responsibility</u>." (Emphasis supplied). (Apollo Fact No. 12).

Under this contractual provision, Williams is entitled to reimbursement from Apollo only if the damage is proven to be its responsibility, namely, that it occurred while the goods were in Apollo's custody. It is not disputed that the claimed damage occurred after Apollo turned the shipment over to Andrews.

There is no legal theory that imposes liability on a carrier for damage that occurs after the shipment has left the carrier's possession. The rule on contribution and indemnification is the same. <u>See</u> <u>PNH Corporation</u> v. <u>Hullquist Corp.</u>, 843 F.2d 586, 592 (1st Cir. 1983) (holding that for a carrier to be liable to another carrier for indemnification the loss or damage must have occurred while the carrier against whom the claim was asserted had custody of the shipment); <u>Tokio Marine & Fire</u> Ins. v. <u>J.J. Phoenix Corp</u>., 156 F. Supp 889 (N.D. Ill. 2001) (denying indemnification and contribution where the loss did not occur during the defendant carrier's possession).

Therefore, Apollo is entitled to summary judgment on plaintiffs' claim asserted in Count IV of its complaint and on the cross-claims of Day and Williams for contribution and indemnification.

C. APOLLO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CARMACK AMENDMENT CLAIM BECAUSE A CONNECTING CARRIER CANNOT BE SUED UNDER 49 U.S.C. §14706(a)(1).

The Carmack Amendment provides, in pertinent part:

> "14706. Liability of carriers under receipts and bills of lading
>
> (a) General liability –
>
> (1) Motor carriers and freight forwarders. – A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under the subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading…."

The Court in Beautifax Inc. v. Puerto Rico Marine Management, 611 F. Supp. 537 (D.Md. 1985) squarely held that a shipper had no right to sue a connecting carrier for loss or damage to his or her shipment. The Court stated:

> "In the case at bar defendant Commerce of Minnesota, a freight forwarder, issued a bill of lading to plaintiff and, therefore, is an initial carrier and a proper defendant in the instant action. Defendant Phillips Brothers was the delivery carrier under the through bill of lading issued by Commerce of Minnesota and is also a proper defendant against this action. Defendant B&O, however, was an intermediate connecting carrier and thus is not amenable to suit under the Carmack Amendment." (611 F. Supp. 537, 543). (Emphasis Supplied)

In transporting the Yorks' shipment, Apollo was an intermediate connecting carrier. Apollo was not the initial GBL- carrier (Day), was not the delivering carrier (Day or Andrews), and was not even a party to the GBL. Accordingly, Apollo is entitled to summary judgment on plaintiffs' Carmack Amendment claim for damages (Count IV).

D. APOLLO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR INDUCEMENT BY MISREPRESENTATION.

Plaintiffs allege that their claim should not be subject to the GBL $1.25 limitation because of the "per GBL" annotation on Day's commercial bill of lading form and the statement made with respect to it by Apollo's driver. (Apollo Fact No. 14).

Plaintiffs' contention is clearly without merit. First, there was no misrepresentation. Second, the Military's rules[2] governing this procurement permitted conversion of liability from $1.25 per pound to full value only when the service member requests increased liability coverage in his Application for Shipment, DD Form 1299, and by annotation of the GBL (Sol. Item 306 a)[3] (Apollo Fact Nos. 4 and 5). Major York's DD Form 1299 shows that Major York did not purchase full value coverage (Apollo Fact No. 8), and GBL ZY-711231 does not contain any such annotation (Apollo Fact No. 9). Third, such annotation must be on the GBL at the time the shipment was tendered to the carrier, which was not the case here (Sol. Item 416c[4]) (Apollo Fact

[2] The rules governing the Yorks' shipment are contained in Solicitation D-8 which is incorporated by reference in Block 31 of the GBL by the annotation "RSD-8" [Rate Solicitation – Domestic]. This limitation of liability is binding upon plaintiffs. See United States Automobile Association v. Paul Arpin Van Lines, Inc., 652 F.2d 198 (1st Cir. 1981); and Howe v. Allied Van Lines, Inc. 622 F.2d 1147, 1149 (3d Cir. 1980) (holding that the limitation of carrier liability for loss or damage for which the government contracted is binding on a service member whose household goods are shipped at government expense).

[3] Item 306 a provides:

> "a. Rates and charges in this rate solicitation apply to a released value of $1.25 times the net weight of the shipment (in pounds) unless otherwise stated on BL [bill of lading]. No additional payment shall be authorized for valuation, other than that shown in Item 415 or Item 416, when additional coverage is requested.

[4] Item 416c provides:

> c. Full replacement protection must be ordered at time of offering shipment to the carrier and so noted on original BL. Corrected BLs to add full replacement protection are not authorized, unless mutually agreed upon by both the PPSO and the carrier, and the carrier has not packed or picked up the shipment.

No. 7). Fourth, the carrier must agree to accept the increase in valuation (Sol. Item 416c), (Apollo Fact No. 7), and the carrier, Day, did not agree to any increased valuation.

The phrase "per GBL" written by Major York on the Day bill of lading form correctly states that shipment is to move under the terms of the GBL and this is not a misrepresentation. Major York's testimony at his deposition shows that there was no misrepresentation by Apollo's driver (Apollo Fact No. 14). The response of Apollo's driver to Major York's inquiry that the "per GBL" annotation covers everything in the inventory does not support plaintiffs' contention that Apollo's driver told Major York that by writing "per GBL" on the Day commercial bill of lading form carrier liability would be converted from the customary $1.25 per pound liability to full value.

Apollo Van Lines is entitled to summary judgment on Count V.[5]

## IV. CONCLUSION

Apollo Van Lines, Inc. respectfully requests the Court to grant it summary judgment on each of the claims set forth above asserted by plaintiffs Jason and Maureen York and by cross-claimants Day Transfer Company and Williams Moving Company.

Apollo Van Lines, Inc.
By its Counsel

/s/William R. Grimm
William R. Grimm (#1938)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
wgrimm@haslaw.com
medwards@haslaw.com

[5] If the Court finds that the Carmack Amendment applies, the Court should also find that the Yorks' misrepresentation claim against Apollo is preempted. See Andrews Express and Storage Warehouse, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2006, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ William R. Grimm
William R. Grimm (#1938)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
wgrimm@haslaw.com
medwards@haslaw.com