# EXHIBIT 7

# APOLLO HAULING AGREEMENT

A

This agreement made by and between APOLLO VAN LINES, INC., APOLLO EXPRESS VAN CO., INC., APOLLO INTERSTATE, INC., AND APOLLO FORWARDERS, INC. (TO BE REFERRED TO AS APOLLO VAN LINES, INC. AND AFFILIATES) corporations duly established under the laws of the state of California and having principal offices at 509 First Street, Rodeo, CA. 94572 and ~~Williams Moving Co.~~ ______ and Affiliates, a ~~MISSOURI~~ corporation with principal offices at ~~P.O. Box 69 Dexter MO 63841~~ ______ for the purpose of establishing a mutual distribution of revenue on shipment interchanges, without interchange or lease of equipment, and to establish certain rules of conduct in connection with this cooperative practice.

**WITNESSETH**

WHEREAS, the parties hereto are Common Carriers by motor vehicle engaged in transporting household goods in interstate and foreign commerce pursuant to certification of public convenience and necessity issued by the Interstate Commerce Commission; and

WHEREAS, the parties hereto shall from time to time interchange shipments at origin or elsewhere at points which the carrier receiving the shipment is authorized to originate shipment, subject to the terms and conditions hereinafter provided.

NOW THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties hereto agree as follows:

A. **DEFINITIONS:**

1. Affiliates: Carriers and/or Forwarders that have a common financial bond.
2. Booking Carrier: The Carrier booking the shipment.
3. Hauling Carrier: The carrier physically transporting the shipment, who shall pay for all licenses, permit fees, fuel taxes, mileage taxes, and other charges incurred in connection with such service. Where both parties perform a portion of the physical transportation, the first shall be called the "Initial Hauling Carrier" and the second shall be the "Second Hauling Carrier".
4. Booking Division: The portion of the line-haul transportation revenues payable hereunder to the Booking Carrier.
5. Hauling Division: The portion of the line-haul transportation revenues remaining after deducting the Booking Division.

B. **COMPENSATION:**
Line-haul transportation and accessorial revenues on shipments interchanged hereunder shall be divided per attached compensation schedule.

C. **INTERMEDIATE INTERCHANGE:**
On shipments interchanged at an intermediate point other than the origin, the hauling Division shall be divided between the Initial Hauling Carrier and the Second Hauling Carrier on a rate pro-rated basis as follows:

1. When it is necessary to pro-rate the line-haul or transportation revenue, the second hauling Carrier will receive his normal percentage of the applicable tariff rate from the point of interchange to destination, less pickup charges. The initial

Hauling carrier will receive the balance of the line-haul, plus pickup charges.

2. __OVERFLOW:__ Carrier hauling overflow portion of shipment will receive his normal percentage of the applicable tariff rate for the actual weight hauled, less pick-up charges (i.e. Overflow will be treated as a separate shipment the minimum weight of 500 lbs. will apply and rated as such). The amount paid to the carrier hauling the overflow will be deducted from the total hauling revenue of the shipment, and carrier hauling the main portion will be paid the balance of the hauling revenue.

**D. GENERAL RULES OF CONDUCT:**

1. A bill of lading shall be issued by origin or Booking Carrier on all traffic handled hereunder showing the Carriers participating in the handling of the shipments and the point at which the shipment is interchanged.
2. __Offer, Acceptance, and Tariff Concurrence:__ The offer and acceptance of shipments will be transacted between the operation departments of carriers only, and it shall be the duty of the accepting Carrier to determine that it has filed the proper tariff concurrence to continue the movement.
3. __Settlement of Transportation Charges:__ The hauling carrier shall cause all documents necessary for rendering billing to be forwarded to the office of the booking carrier. Booking carrier will render all necessary bill to proper authorities. Booking carrier will make settlement with and payment in full to hauling carrier on account of transportation services performed by hauling carrier pursuant to this agreement. Payment will be made within __30__ days from receipt of hauling carrier's invoice and proper delivery documents.

4. __NO SIGNED 1840....NO PAY__ If you are the residence delivery carrier, then __YOU ARE RESPONSIBLE FOR GETTING THE DD-1840 SIGNED AND TO APOLLO__. Payment will not be sent unless a DD-1840 has been received.

**E. REASONABLE DISPATCH:**

1. By its acceptance of shipments, the hauling carrier agrees to handle all said shipments with reasonable dispatch and otherwise comply with all regulations to which any of the parties hereto may be subject, and complete all arrangements and commitments of booking carrier as assumed by the hauling carrier pursuant to this hauling agreement.

2. In the event of a delay or any occurrence where notification may be required, booking carrier shall notify shipper or its agent or representative; provided, however, hauling carrier shall notify booking carrier/forwarder as soon as it becomes known that such notification will be necessary, or in any event, in sufficient time for booking carrier to perform its obligation hereunder.

3. When it is necessary to place booking carriers shipment in Storage in Transit at destination, the hauling carrier will place such shipment in the destination warehouse specified by the booking carrier at time of dispatch to the hauling carrier. If an alternate destination warehouse is needed, then the hauling carrier must contact the booking carriers dispatch department and be granted permission prior to shipment being unloaded off of truck.

4. If the hauling carrier does not follow the procedures as outlined in the above paragraph and elects to place shipment in a warehouse of his choice, then he will also become responsible for any claim chargebacks the booking carrier cannot collect from said warehouse. The booking carrier must first attempt collection from the destination SIT agent. In the event the Storage in Transit agent does not meet his responsibilities the booking carrier will have the recourse of going back to the hauling carrier.

5. When hauling a C.O.D. shipment, the hauling carrier is responsible for collection of all C.O.D. monies <u>at the time of delivery</u> to residence. All monies are to be forwarded to the <u>Booking Carrier/Forwarder</u> along with the proper delivery paperwork. This paperwork should be received by the Booking Carrier/Forwarder within <u>7</u> days of the delivery date.

## F. <u>CLAIMS LIABILITY:</u>

1. Insurance Protection for Commercial Shipments: The Booking Carrier will cover the shipment for transit protection, retain or receive the transit protection revenue, and settle claims. The Hauling Carrier will provide the Booking Carrier with proper documentation with which to carry a claim to a conclusion. Each carrier will be liable for its damage in accordance with legal liability of the freight bill.

2. On all DOD, Commercial, and GSA shipments the Booking Carrier will retain 100% of any valuation charges plus 4% of the linehaul and 3% of the packing revenue. The Booking Carrier will charge the Hauling Carrier at .60/lb/article for any damage claims deemed to be the Hauling Carrier's responsibility.

3. Claims for Missing Iitems or Claims Caused as a Result of Gross Negligence: will be charged back 100% to the responsible party based on repair costs or the market value of each item subject to a maximum liability of $1.25 times the net weight of the shipment. In other words, if an item with a depreciated value of $500 is lost, the responsible party will be charged back the full $500 without regard to the weight of that individual item.

4. Non-Temp Inspection Fee: It is agreed that the Non-Temp Inspection fee of $2.25/cwt (tariff item 154) will be retained by the Booking Carrier. The Hauling Carrier will be charged back $.60 per pound per article for documented exterior damage noted to containers while in Hauling Carrier's possession.

5. Missing or Incorrect DD1840: If any agent or hauler fails to supply a properly completed DD1840 upon delivery to residence and fails to return it to the carrier so that the carrier may send it to the origin transportation office within 30 days, that agent or hauler will be charged back 100% of any claim amount that is not allocable to other parties at fault. REMEMBER, if a DD1840 is not sent by the Booking Carrier to the origin transportation office within 30 days of delivery, the claim is not subject to a 70 day filing time limit. Therefore, a late DD1840 will be treated the same as having received no DD1840.

6. Improper Destination Agent: If the hauler takes the shipment to a destination other than the one noted on the carrier bill of lading without prior approval from Apollo's dispatch, the hauler will be responsible for any uncollectible destination claim chargeback that may result after the 90 day chargeback date.

7. On Government and Non-Government Shipments, if the Carrier who is settling the claim requests the cooperation of the Interlining Carrier and does not receive a reply within a reasonable amount of time, not to exceed 20 days from the date of correspondence to the Interline Carrier requesting cooperation on the claim settlement, then the Interline Carrier will have to stand by the decision of the Carrier settling the claim.

8. Timely Notification of Missing Items: It is agreed that the Booking Carrier, who is settling the claim, will give the Hauling Carrier notification of any missing items noted on the DD1840/R within 15 days of receipt of the DD1840/R. In return, the Hauling Carrier will give the Booking Carrier a response to tracer action within 10 days of receipt of the DD1840/R.

9. Forced Claim Settlement: It is agreed and understood that often times the Government on their shipments, as well as COD and National Account shippers, disagree with the rules and regulations concerning claim settlements and will not accept the Carrier's legal liability or agree to it; and when claims settlements are forced upon the Booking Carrier based on other delivery exceptions, both companies will be willing to assume the prorata share of the legal liability forced upon the Carrier settling the claim. It is agreed that the claim could go to Court and the court's decision could be over and above the legal liability or recommended claim settlement. This, too, is to prorated between carriers. This forced claim settlement amount must be substantiated by a claim form, itemized letter, or copy of the set-off action from the customer, court, government, or any other party who is ruling on this forced settlement. It is agreed that where the Booking Carrier books the shipment only and does not service it in any way, such as packing or pickup, that no forced claim settlement prorate will be shared by him. It is agreed that the forced claim settlement will be prorated between the Interline Carriers who actually have physically handled the shipment.

10. Unearned Transportation When Weight is Deducted on Items Lost or Destroyed in Transit: It is agreed that the carrier responsible for the loss or destroyed article will also be liable 100% for any unearned freight charge that the government may assess against the Booking Carrier.

11. Concealed Damage on Government Non-Temp Storage Shipments: It is agreed by both carriers that concealed-type damage on Non-Temp shipments will be divided evenly by all parties handling the shipment, namely the Booking Carrier or agent, Hauling Carrier, and the destination agent if the shipment goes to SIT.

## G. GENERAL LIABILITY:

Except as provided in the preceding paragraph, hauling carrier hereby agrees to indemnify and hold harmless booking carrier for any liability of expense on account of any property damage or injury to anyone, arising out of the transportation, handling, and servicing of any shipments accepted by hauling carrier pursuant to this agreement.

Hauling carrier further agrees to cause to be issued automobile and public liability policy in minimum limits of $100,000/$300,000 property damage and $300,000 bodily injury coverage.

**H. COMPLIANCE:**

Hauling carrier will comply with all federal, state, and municipal laws and ordinances and all rules, regulations and requirements of the Interstate Commerce Commission, Department of Transportation and of any other public authority respecting its performance under this agreement, and particularly in respect to the driving of the motor vehicle and the provision and the use of the safety equipment thereof. Hauling carrier especially warrants that all motor vehicle equipment is in compliance with and meets the minimum safety requirements of the said agencies. The cost of equipping and maintaining said vehicles to comply therewith shall be at the sole expense of hauling carrier.

**I. WORKMAN'S COMPENSATION:**

It is expressly agreed and understood by the parties hereto that all personnel, including, but not limited to, drivers of motor vehicles, helpers, packers, unpackers, loaders, unloaders, engaged in the transportation of shipments are the employees of the hauling carrier, and hauling carrier will be responsible for all obligations under any applicable Workmen's Compensation Act.

Hauling carrier agrees to provide adequate insurance to protect it from any claims on account of personal injury or death to any of its employees.

If for any reason booking carrier shall become liable or obligated to pay the wages of hauling carrier's employees or to pay Federal Income Tax withholding, Social Security Tax, or Unemployment Compensation Tax of similar character by reason of hauling carrier's employment of employees, or to make Workmen's Compensation of employer's liability or other similar payments arising out of injury to or death of any hauling carrier's employees, hauling carrier hereby agrees to indemnify and hold harmless the booking carrier for the amount thereof, including all expenses and reasonable attorney's fees incident thereto.

**J. TERM:**

This agreement shall remain in effect from the period commencing on the date it is signed and from year to year thereafter unless terminated by either party and as herein provided.

**K. PRECEDENCE:**

This agreement shall supersede, replace and take precedence over any prior agreements of a similar character between the parties hereto, and may not be altered, modified, amended or changed in any respect except in writing and agreed to by all parties hereto.

**L. CANCELLATION:**

This agreement may be cancelled by either party by giving written notice to the other at least thirty (30) days prior to the effective date of the cancellation. In the event of cancellation, hauling carrier agrees to complete the delivery of any shipments in its possession or already accepted at the time of notice of cancellation.

**M.** The parties hereto assert that operations under this agreement will not adversely affect the quality of the human environment.

I HAVE RECEIVED, REVIEWED AND FULLY UNDERSTAND THIS AGRE
TO THIS AGREEMENT MUST BE ADDRESSED WITH AN AMENDEMENT TH
AGREED TO.

APOLLO VAN LINES, INC.
AND AFFILIATES

SCAC: APOV ICC#: MC-197962

BY: Richard W. Williams

TITLE: VICE-PRESIDENT

DATE: Dec 21, 1995

Williams Moving

SCAC: WIIM

BY: Rick W.

TITLE: V.P. -O

DATE: 1-16-9

I HAVE RECEIVED, REVIEWED AND FULLY UNDERSTAND THIS AGREEMENT. ANY CHANGES TO THIS AGREEMENT MUST BE ADDRESSED WITH AN AMENDEMENT THAT BOTH PARTIES HAVE AGREED TO.

APOLLO VAN LINES, INC.
AND AFFILIATES

SCAC: APOV ICC#: MC-197962

BY:

TITLE: VICE-PRESIDENT

DATE: Dec 21, 1995

Williams Moving Co.
AND AFFILIATES

SCAC: WIIM ICC#: MC-135743

BY:

TITLE: V.P. -Operations

DATE: 1-16-96

# HAULING COMPENSATION SCHEDULE

## I. DEPARTMENT OF DEFENSE AND U.S. COAST GUARD

THE TOTAL BILLABLE LINEHAUL WILL BE REDUCED BY 4%, AND THE BILLABLE PACKI WILL BE REDUCED BY 3% TO HELP CLAIMS COSTS (SEE PAGE 2 PARAGRAPH 5 OF T HAULING AGREEMENT).

A. LINEHAUL / ** PACKING AND UNPACKING

| % OF REDUCTION | HAULER% | BOOKER% | % OF REDUCTION | PACKING | UNPACKI |
|---|---|---|---|---|---|
| 0% - 25% | 75% | 25% | 0% - 25% | 85% | ~~15~~ |
| 26% - 35% | 79% | 21% | 26% - 40% | 90% | 10 |
| 36% and UP | 83% | 17% | 41% and UP | 95% | 5 |

All rates based on applicable rate solicitation tender and all r issues and supplements.

** Packing when requested by Booking Carrier.
** Unpacking paid when proper documents of proof of unpacking are provide

B. ACCESSORIAL SERVICES: (long carry, stair carry, ATC, etc.) 10( hauling carrier performing service.

C. CARRIER CONVENIENCE PICKUP (APU): $3.00/cwt with a $15.0( minimum charge.

However, in order for the agent to qualify for the $3.00 per cw the shipment must be PICKED UP, INVENTORIED AND WEIGHED. If ar one or all of these requirements are not met, the $3.00 per cv pickup allowance will be reduced by .50 cent/cwt for each part nc done with a $10.00 minimum and paid to the carrier actuall performing the service.

D. BULKY ARTICLE: 100% to Hauling Carrier performing service, Regardless if shipment was APU'ed or not.

E. PIANO HANDLING: Direct pickup by Hauling Carrier - 100% If APU revenue is split 50/50 between origin ager and hauling carrier.

F. ALASKA TRAFFIC: The Hauling Carrier will receive 75% of the MTM R/S base-line rate based on the U.S. Tariff miles from point o pickup to point which the Hauling Carrier has been directed t delivery subject shipment.

## II. C.O.D., NATIONAL ACCOUNTS, AND GSA

THE BILLABLE LINEHAUL WILL BE REDUCED BY 4%, AND THE BILLABLE PACKING WILL B REDUCED BY 3% TO HELP CLAIMS COSTS (SEE PAGE 2 PARAGRAPH 5 OF THE HAULIN AGREEMENT).

A. LINEHAUL: Hauler receives 75% Booker receives 25%

B. PACKING AND UNPACKING:

PACKER to receive 100% of the container charges and 100% of th packing charges.

UNPACKER to receive 100% of authorized Carrier's tariff rate when documented proof of unpacking provided.

UNPACKING CERTIFICATE properly completed and signed by the shipper must be furnished in order to obtain unpacking credit, so that the carrier will have proof in its files showing that unpacking services were or were not performed.

C. **ACCESSORIAL SERVICES:** (long carry, stair carry, ATC, etc.) 100% to hauling carrier performing service.

D. **SEASONAL RATE ADJUSTMENTS** will be divided accordingly.

E. **DIVISION OF REVENUE OF BINDING ESTIMATES:** It is agreed that the booking carrier must make the Hauling Carrier aware when there is a binding estimate and the approximate percent of cut and what tariff the rates will be based on. Compensation is then to be negotiated on a per shipment basis between the two carriers.

F. **CLAIMS HANDLING:** On shipments releasing at more than .60 cent per pound per article, the booking carrier will retain the insurance premium and the hauling carriers liability will be limited to .60 cent per pound per article, EXCEPT for missing items for which the said hauling carrier will be responsible for 100% of the value of missing items (not to exceed booking carriers Insurance deductible).

G. **ALASKA TRAFFIC:** Compensation will be negotiated on a per shipment bases at time of booking between booking carrier and hauling carrier.

****PRIOR COMPENSATION SCHEDULES:** This schedule cancels, replaces, and supersedes any previously signed Interchange compensation schedule.

I HAVE RECEIVED, REVIEWED AND FULLY UNDERSTAND THIS COMPENSATION SCHEDULE. ANY CHANGES TO THIS COMPENSATION SCHEDULE MUST BE ADDRESSED WITH AN AMENDMENT THAT BOTH PARTIES HAVE AGREED TO.

| | |
|---|---|
| APOLLO VAN LINES, INC. AND AFFILIATES | Williams Moving Co. AND AFFILIATES |
| BY: Richard W. [signature] | BY: Kirk Wells [signature] |
| TITLE: VICE-PRESIDENT | TITLE: V.P. Operations |
| DATE: Dec 21, 1995 | DATE: 1-16-96 |

# ADDENDUM

THIS ADDENDUM IS TO THE ORIGINAL HAULING AGREEMENT DATED 1-16-96 BETWEEN APOLLO VAN LINES, INC., APOLLO EXPRESS VAN CO., INC., APOLLO FORWARDERS, INC., AND APOLLO INTERSTATE FORWARDERS, INC. AND Williams Moving Company. THIS IS TO ADD TO THE ORIGINAL AGREEMENT ANY AFFILIATED COMPANYS, SO THAT IT MAY BE UNDERSTOOD THAT IF ONE SHIPMENT IS HAULED FOR OR BY ONE OF THE BELOW AFFILIATES, THE COMPENSATIONS WILL BE BASED ON THE ORIGINAL HAULING AGREEMENT BETWEEN THE ABOVE COMPANIES.

********* AFFILIATES TO BE ADDED TO THE HAULING AGGREEMENT ********

| COMPANY NAME | MC OR F # | 4 LETTER SCAC |
|---|---|---|
| Harold Williams Moving Co. of Blytheville | MC 205642 | WHMC |
| Allison Warehouse & Transfer Co. | FF 1697 | ALIS |
| H.A. Crawford Associated Van Service | MC 96395 | CRHA |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

APOLLO VAN LINES, INC
AND AFFILIATES
BY: [signature]
TITLE: VICE-PRESIDENT
DATE: 12/21/95

Williams Moving Co.
AND AFFILIATES
BY: [signature]
TITLE: V.P. Operations
DATE: 1-16-96

UNPACKER to receive 100% of authorized Carrier's tariff rate whe documented proof of unpacking provided.

UNPACKING CERTIFICATE properly completed and signed by the shippe must be furnished in order to obtain unpacking credit, so that th carrier will have proof in its files showing that unpacking services were or were not performed.

C. ACCESSORIAL SERVICES: (long carry, stair carry, ATC, etc.) 100% t hauling carrier performing service.

D. SEASONAL RATE ADJUSTMENTS will be divided accordingly.

E. DIVISION OF REVENUE OF BINDING ESTIMATES: It is agreed that th booking carrier must make the Hauling Carrier aware when there i a binding estimate and the approximate percent of cut and what tariff the rates will be based on. Compensation is then to be negotiated on a per shipment basis between the two carriers.

F. CLAIMS HANDLING: On shipments releasing at more than .60 cent pe pound per article, the booking carrier will retain the insuranc premium and the hauling carriers liability will be limited to .6 cent per pound per article, EXCEPT for missing items for which the said hauling carrier will be responsible for 100% of the value o missing items (not to exceed booking carriers Insuranc deductible).

G. ALASKA TRAFFIC: Compensation will be negotiated on a per shipmen bases at time of booking between booking carrier and haulin carrier.

**PRIOR COMPENSATION SCHEDULES: This schedule cancels, replaces, and supersedes any previously signed Interchange compensation schedule.

I HAVE RECEIVED, REVIEWED AND FULLY UNDERSTAND THIS COMPENSATION SCHEDULE. ANY CHANGES TO THIS COMPENSATION SCHEDULE MUST BE ADDRESSED WITH AN AMENDMENT THAT BOTH PARTIES HAVE AGREED TO.

| | |
|---|---|
| APOLLO VAN LINES, INC. AND AFFILIATES | Harold Williams Moving Co AND AFFILIATES |
| BY: [signature] | BY: [signature] |
| TITLE: VICE-PRESIDENT | TITLE: Operations |
| DATE: May 7, 1996 | DATE: 5-14-96 |

# HAULING COMPENSATION SCHEDULE

## . DEPARTMENT OF DEFENSE AND U.S. COAST GUARD

HE TOTAL BILLABLE LINEHAUL WILL BE REDUCED BY 4%, AND THE BILLABLE PACKINC VILL BE REDUCED BY 3% TO HELP CLAIMS COSTS (SEE PAGE 2 PARAGRAPH 5 OF THE HAULING AGREEMENT).

| A. LINEHAUL | | | ** PACKING AND UNPACKING | | |
|---|---|---|---|---|---|
| % OF REDUCTION | HAULER% | BOOKER% | % OF REDUCTION | PACKING | UNPACKING |
| 0% - 25% | 75% | 25% | 0% - 25% | 85% | ~~15%~~ 10% |
| 26% - 35% | 79% | 21% | 26% - 40% | 90% | 10% |
| 36% and UP | 83% | 17% | 41% and UP | 95% | 5% |

All rates based on applicable rate solicitation tender and all re-issues and supplements.

* Packing when requested by Booking Carrier.
** Unpacking paid when proper documents of proof of unpacking are provided.

B. **ACCESSORIAL SERVICES:** (long carry, stair carry, ATC, etc.) 100% hauling carrier performing service.

C. **CARRIER CONVENIENCE PICKUP (APU):** $3.00/cwt with a $15.00 minimum charge.

However, in order for the agent to qualify for the $3.00 per cwt. the shipment must be **PICKED UP, INVENTORIED AND WEIGHED**. If any one or all of these requirements are not met, the $3.00 per cwt pickup allowance will be reduced by .50 cent/cwt for each part not done with a $10.00 minimum and paid to the carrier actually performing the service.

D. **BULKY ARTICLE:** 100% to Hauling Carrier performing service, Regardless if, shipment was APU'ed or not.

E. **PIANO HANDLING:** Direct pickup by Hauling Carrier - 100%
If APU revenue is split 50/50 between origin agent and hauling carrier.

F. **ALASKA TRAFFIC:** The Hauling Carrier will receive 75% of the MTMC R/S base-line rate based on the U.S. Tariff miles from point of pickup to point which the Hauling Carrier has been directed to delivery subject shipment.

## II. C.O.D., NATIONAL ACCOUNTS, AND GSA

THE BILLABLE LINEHAUL WILL BE REDUCED BY 4%, AND THE BILLABLE PACKING WILL BE REDUCED BY 3% TO HELP CLAIMS COSTS (SEE PAGE 2 PARAGRAPH 5 OF THE HAULING AGREEMENT).

A. **LINEHAUL:** Hauler receives 75% Booker receives 25%

B. **PACKING AND UNPACKING:**

**PACKER** to receive 100% of the container charges and 100% of the packing charges.

APOLLO

"Domestic & International Household Goods Transportation Services"

TO: All Interline Carriers

FROM: Richard W. Winn, Vice President

REF: Changes To Hauling Agreement

DATE: October 31, 1995

In response to MTMC's elimination of the valuation charge on DOD shipments. Apollo finds it necessary to make changes in the compensation schedule of our hauling agreement. These changes will continue to allow Apollo to limit your claims liability to 60 cents per pound on damaged articles. Your liability on missing items will remain at 100%.

This notice of change applies to all shipments with a GBL pickup date on or after November 1,1995. Your acceptance of shipments will be taken as agreeing to all changes shown herein:

1. Billed Line haul will be reduced by 4% prior to revenue distribution.

2. Billed packing will be reduced by 3% prior to revenue distribution.

3. The allowance for agent pickup charges will be 3.00/cwt with a $15.00 minimum charge.

I apologize for the short notice on these changes. A new Interline Agreement reflecting these changes will be sent to you in the near future. If you have any questions regarding this matter, please call me.

Regards,

Richard W. Winn
Vice President

Billing Office
509 FIRST STREET
P.O. BOX 369
RODEO, CA 94572
(510) 799-0794
1-800-367-5087
FAX# (510) 799-1184

Dispatch Office
10384 DOW-GIL ROAD
ASHLAND, VIRGINIA 23005
(804) 798-1556
1-800-533-6556
FAX# (804) 798-2857

B

# SERVICE COMMISSION SCHEDULE

## I. AGENT BOOKING AND HAULING

| | | BOOKING | HAULING |
|---|---|---|---|
| A. | Account and COD--500 miles and over and 1,500 pounds and over | 20.0% | 65.0% |
| B. | Military--500 miles and over and 1,500 pounds and over | 17.0% | 65.0% |
| C. | Non Williams Carriers | 15.0% | 65.0% |
| D. | Under 500 miles | 15.0% | 70.0% |
| E. | Under 1,500 pounds | 15.0% | 70.0% |
| F. | Reduced rate Installations | | |
| | Rates filed at 91% or more | 17.0% | 65.0% |
| | Rates filed at 81% to 90% | 15.0% | 70.0% |
| | Rates filed at 71% to 80% | 10.0% | 75.0% |
| | Rates filed at 70% or less | 7.0% | 79.0% |

## II. AGENTS BOOK AND HAUL

| | |
|---|---|
| Agents booking and hauling shipment moving less than 500 miles | 90% |

## III. PACKING SERVICES

| | PACKING / | UNPACKING / | CONTAINER |
|---|---|---|---|
| A. Account and COD | 90% | 100% | 100% |
| B. Military | 80% | 15% | N/A |

## IV. ACCESSORIAL SERVICES

| | ORIGIN | DESTINATION |
|---|---|---|
| A. Account and COD Appliance Service | 100% | 100% |
| B. Military-Appliance Service | 80% | 20% |
| C. All Other Accessorials | 100% | 100% |

## V. PICKUP CHARGE

A. Pickup for carrier's convenience $3.50 cwt

B. Line-haul is reduced by 4% and packing is reduced by 3% on Military shipments' before settling for .60 per pound claim liability.

C. 2% reduction in line-haul for PL&D when agent hauls under Williams' authority.