UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON YORK and
MAUREEN YORK

v. C.A. NO. 04-551 S

DAY TRANSFER COMPANY,
APOLLO VAN LINES, INC. and
ANDREWS EXPRESS &
STORAGE WAREHOUSE, INC.

v.

WILLIAMS MOVING COMPANY

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56, Apollo Van Lines, Inc. ("Apollo") hereby submits this statement of material facts as to which there is no genuine issue necessary to be litigated:

1. Major Jason York, United States Marine Corps, was ordered to change his duty station from Texas to Rhode Island. Pursuant to his orders, Major York was entitled to ship his household goods at government expense. (Plaintiffs' Second Amended Complaint, ¶2).

2. The Surface Deployment and Distribution Command ("SDDC"), formerly the Military Traffic Management Command ("MTMC"), is the sole manager of the Personal Property Program for the transportation of household goods of military personnel and their dependents. In its Domestic Personal Property Program, SDDC solicits qualified carriers to submit rates for the transportation of household goods of service members pursuant to the terms of the solicitation. (Johnson Declaration, App. 1).[1]

[1] The reference "App." is to the section of the Appendix.

3. Plaintiffs' shipment was tendered to defendant Day Transfer Company ("Day") as a qualified participant in the SDDC Domestic Personal Property Program. (Johnson Declaration, App. 1) (GBL ZY-711231, App. 3).

4. At the time Major York's household goods were shipped in June 2004, Domestic Personal Property Solicitation D-8 was in effect. (Johnson Declaration, App. 1). Solicitation D-8 provided in Item 306a that the carrier's liability for loss or damage was limited to $1.25 times the net weight of the shipment unless the service member paid an additional charge for a higher valuation and the higher valuation was stated on the GBL. Item 306a provides:

> "a. Rates and charges in this rate solicitation apply to a released value of $1.25 times the net weight of the shipment (in pounds) unless otherwise stated on BL [bill of lading]. No additional payment shall be authorized for valuation, other than that shown in Item 415 or Item 416, when additional coverage is requested."

(Domestic Solicitation D-8, App. 2).

5. Domestic Rate Solicitation D-8, Item 308, also limits carrier liability for loss or damage to $1.25 times the net weight of the shipment. Item 308 provides:

> "a. The terms 'released value,' 'declared value,' and 'value declared by the shipper,' as used in this rate solicitation, shall have the same meaning.
>
> b. The carrier's maximum liability shall be $1.25 times the net weight (in pounds) of the shipment for any lost or damaged article unless the shipment is released at either a lump sum value declared by the shipper or an amount greater than $1.25 times the net weight (in pounds) of the shipment, whichever is greater.
>
> c. The BL is released at lowest value herein unless otherwise stated. The BL shall be annotated with appropriate statement citing the increased valuation.
>
> d. If the shipper fails to make the entry required above, the shipment shall be deemed released at $1.25 times the net weight (in pounds) of the shipment.
>
> e. The released value and the carrier's maximum liability (whether or not loss or damage occurred from carrier negligence), as determined under this item, shall apply to any claim resulting from the performance or failure to perform by the carrier of any services, including accessorial services, which the carrier contracted is to perform." (App. 2).

6. The Joint Personal Property Shipping Office ("JPPSO"), at San Antonio, Texas, tendered Major York's household goods to Day for transportation from Schertz, Texas to Rhode Island by issuing Government Bill of Lading ("GBL") ZY-711231. Block 31 of the GBL "Tariff or Special Rate Authorities" is "annotated RS D-8 160%." (App. 3). By this annotation, GBL ZY-711231 incorporated by reference the terms of Domestic Rate Solicitation D-8 and Day's rate of 160 percent of the baseline rate set forth in solicitation D-8, which are the terms on which Major York's household goods were shipped. (Johnson Declaration, App. 1).

7. Domestic Rate Solicitation D-8, Items 415 and 416, gave an option to Major York to purchase higher valuation coverage for his household goods than $1.25 per pound. Specifically, Item 415 provides for the service member to purchase additional valuation above $1.25 per pound times the net weight of the shipment in increments of $100 at a charge of $.64 per hundred dollars of extra valuation coverage. (App. 2). Item 416 provides that the service member may obtain full replacement value protection value of $21,000 or $3.50 for each pound in the shipment, whichever is greater, at a cost of $.85 for each hundred dollars of the valuation. (App. 2).

8. Prior to a move, a service member is counseled as to the option to purchase liability coverage greater than $1.25 per pound for his household goods. When the member elects to purchase the additional coverage, an annotation is entered in Block 13 of his Application for Shipment and/or Storage of Personal Property, DD Form 1299. Major York's DD Form 1299 does not contain an annotation that he purchased additional valuation coverage for his goods. (Rosalinda Kagebein Deposition, pp.92-93, DD Form 1299) (App. 17).

9. GBL No. ZY-711231 for plaintiffs' shipment is not annotated to increase the carrier liability to a valuation greater than $1.25 per pound. GBL No. ZY-711231 states that it is "issued

at lowest valuation cited in appropriate tender or tariff unless otherwise stated hereon." (GBL No. ZY-711231 beneath blocks 26 and 27) (App. 3).

10. Major York admits that the Military advised him that he had the right to purchase full replacement value coverage, but he declined. At that time, Major York, at his own expense, had insured his household goods for $75,000 (J. York, Deposition, pp. 225-229). (App. 4).

11. Day and third-party defendant Williams Moving Company ("Williams") entered into a "Billing Waiver Agreement" pursuant to which Williams contracted, inter alia, to "handle all dispatching" of military shipments tendered to Day. (App. 5).

12. Williams tendered the York shipment to Apollo, an interstate motor carrier, to transport the Yorks' household goods from Schertz, Texas to Rhode Island, (Williams' Response Nos. 1, 2, 3 to Apollo's Requests for Admissions) (App. 6), pursuant to William's Hauling Agreement with Apollo (App. 7). The Hauling Agreement identifies Williams as the "Booking Carrier" and Apollo as the "Hauling Carrier" and provides in subparagraph 2 to paragraph F, Claims Liability:

> "2. On all DOD, Commercial, and GSA shipments the Booking Carrier [Williams] will retain 100% of any valuation charges plus 4% of the linehaul and 3% of the packing revenue. The Booking Carrier will charge the Hauling Carrier [Apollo] at .60/lb./article for any damage claims deemed to be the hauling carrier's responsibility." (App. 7).

13. At the time of pickup of the shipment on June 4, 2004, Apollo completed an inventory of the Yorks' household goods which shows the condition of the household goods on that date. (App. 8). No mold, mildew or water damage is shown on this inventory, which was signed by Major York and by Apollo's driver, Tracey Keller. (Johnson Declaration, App. 1).

14. At the time of pickup of the shipment on June 4, 2004, Major York also signed a Day commercial bill of lading form (App. 16) on which he completed the statement "The value of

my shipment is", by writing "per GBL." At his deposition, Major York stated that he wrote "per GBL" on the Day commercial bill of lading form for the following reason:

> "Q. And tell me exactly what [Apollo Van Lines's driver] Tracy Keller said?
>
> * * *
>
> A. The words that Tracy Keller said, Tracy Keller told me that if I did not know the value of my property I could write per GBL in that space.
>
> Q. And that's all he said?
>
> A. And then I asked him, so that covers everything in the inventory, or words to that effect, and he nodded or made a signal in the affirmative.
>
> Q. So he said what he said about per GBL, and you said he nodded in the affirmative? He didn't say yes; he just nodded in the affirmative?
>
> A. I think he also said yes, I can't recall for certain, but the impression or what I took from him was that, yes, I was correct in my statement." (J. York Deposition, p. 230). (App. 4).

15. Apollo transported the Yorks' household goods from Texas to Rhode Island. Williams had selected Andrews Express and Storage Company ("Andrews") as the destination agent. (Williams Response No. 4 to Apollo's Request for Admissions). (App. 6). Upon arrival in Rhode Island, the Transportation Officer at the Newport Naval Station in Rhode Island directed Apollo to deliver the Yorks' household goods to the destination agent, Andrews, for storage-in-transit (SIT) in Andrews' warehouse. (DD Form 619-1) (App. 9). Apollo transferred plaintiffs' household goods to Andrews on June 16, 2004, at which time an Exception Sheet was executed to show the condition of the goods at the time Andrews took custody. (O'Laughlin Deposition, pp. 4-9 ). (App. 12). This Exception Sheet, signed by both Tracy Keller, Apollo's driver, and H. Zambrano, an Andrews employee, shows that there was no mold, mildew or water damage (the damage claimed by plaintiffs) to the Yorks' household goods at the time Andrews took possession of the goods. (O'Laughlin Deposition, pp. 4-9, App.12; Andrews' Response No. 9 to Apollo's

Request for Admissions, App. 11). Also, Mr. Rick Williams, President of Williams, testified that, based on the Exception Sheet, he had no reason to believe any water damage to plaintiffs' household goods was sustained while the goods were in the custody of Apollo (Williams Deposition, p. 97). (App. 13).

16. The Yorks' household goods were in SIT in the Andrews warehouse for 61 days, namely from June 16 to August 16, 2004. (DD Form 619-1) (App. 9). During that time, there was a water leak in the roof of the Andrews warehouse. (Andrews' Response No. 1 to Apollo's Requests for Admissions) (App. 11). The water leak was not repaired until August 19, 2004. (Andrews Answer No. 21 to Plaintiffs' Second Set of Interrogatories). (App. 15).

17. On or about August 16, 2004, plaintiffs' household goods were delivered to the Yorks' residence at 505 Wolcott Avenue, Middleton, Rhode Island by Andrews, acting either as destination agent for Day Transfer or as the delivering carrier. (Andrews' Response to Plaintiffs' Second Set of Interrogatories No. 17, App. 15). After delivery to the residence, the Yorks' household goods were found to have sustained damage by mold, mildew and water. (Plaintiff J. York and Plaintiff M. York Responses to Apollo's Request for Admissions Nos. 4, 5 and 6, (App. 14).

18. Plaintiffs claim for damage to their household goods is limited to damage due to mold, mildew and water. (Plaintiffs' Second Amended Complaint, ¶ 9).

Apollo Van Lines, Inc.

By its Counsel

/s/William R. Grimm
William R. Grimm (#1938)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
wgrimm@haslaw.com
medwards@haslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2006, a copy of the foregoing State of Undisputed Material Facts was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ William R. Grimm
William R. Grimm (#1938)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
wgrimm@haslaw.com
medwards@haslaw.com

#704280V1