# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON YORK and MAUREEN YORK,<br>Plaintiffs,<br><br>v.<br><br>DAY TRANSFER COMPANY,<br>APOLLO VAN LINES, INC. and<br>ANDREWS EXPRESS & STORAGE<br>WAREHOUSE, INC.,<br>Defendants,<br>v.<br><br>WILLIAMS MOVING COMPANY,<br>Third Party Defendant. | C.A. No. 04-551 S |

**DEFENDANT ANDREWS EXPRESS AND STORAGE WAREHOUSE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Andrews Express and Storage Warehouse Inc. ("Andrews") submits the following memorandum of law in support of its motion for summary judgment. Andrews is entitled to summary judgment because the undisputed facts demonstrate that the two counts for negligence alleged in the Complaint against Andrews arise out of the interstate transport of the Yorks' household goods. All such claims are governed by the Carmack Amendment and any state law claims, including claims for negligence, are preempted. Plaintiffs' remaining claim against Andrews for relief under the Carmack Amendment should also be dismissed because the carrier has already paid an amount equal to the limitation of liability contained in the bill of lading for the Yorks' shipment.

## I. STANDARD OF REVIEW

A party seeking summary judgment must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, the Court must view

the facts on the record and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Although the Court must examine the record in the light most favorable to the non-moving party, defeating a properly documented motion for summary judgment requires more than the "jingoistic brandishing of a cardboard sword." *Int'l Ass'n of Machinists v. Winship Green Nursing Ctr.*, 103 F.3d 196, 199-200 (1st Cir. 1996).

Initially, the burden in a summary judgment motion requires the moving party to aver "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets this burden, the onus falls upon the non-moving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) ("a genuine issue exists if there is sufficient evidence supporting this claimed factual dispute to require a choice between the parties' differing versions of the truth at trial."). To oppose the motion successfully, the non-moving party "may not rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. The non-moving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the non-moving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993). Moreover, the evidence presented by the non-moving party "cannot be conjectural or problematic; must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

## II. ARGUMENT

### A. Both Negligence Claims Asserted Against Defendant Andrews Are Barred As A Matter Of Law Because The Carmack Amendment Governs This Case.

All counts of the Plaintiffs' Complaint stem from damage that occurred to the Plaintiffs' goods while in the process of being shipped from San Antonio, Texas to Plaintiffs' new residence in Newport, Rhode Island. The Carmack Amendment to the Interstate Commerce Act exclusively governs the interstate shipment of goods and has long been held to preempt all state and common law claims arising from the interstate shipment of goods. Plaintiffs have asserted three claims against Defendant Andrews: one for relief under the Carmack Amendment (Count VI), and two counts under Rhode Island law sounding in negligence (Counts VII and VIII). Because the Carmack Amendment is controlling,[1] and preempts all state law claims arising from the interstate shipment of goods, including negligence, both negligence counts against Defendant Andrews should be dismissed as a matter of law.

The Carmack Amendment provides that:

> A carrier providing transportation or service subject to jurisdiction . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property . . . .

49 U.S.C § 14706 (formerly at 49 U.S.C. § 11707).

The United States Supreme Court has considered the preemptive effect of the Carmack Amendment and has held that "there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation

[1] Reference is hereby made to the discussion and analysis of the Carmack Amendment and its preemption of state law claims contained in the Memorandum of Law in Support of Day Transfer's and Williams Moving's Motion For Summary Judgment. Because the issues and analysis is substantially identical on this point for all Defendants, Andrews adopts the analysis and discussion contained in Day and Williams' Memorandum.

with reference to it." *Adams Express v. Croninger*, 226 U.S. 491, 505-506 (1913). The Court explained that Congress intended to end the diversity of state laws on the subject that had existed prior to the Carmack Amendment and which made it impossible for carriers or shippers to know the extent of their responsibility for goods being shipped. *Id.* at 505. The *Adams* Court therefore held that all state law claims arising out of loss or damage to property transported in interstate commerce are preempted by the Carmack Amendment. *Id.* at 506.

This holding has been repeatedly reaffirmed. *See, e.g.*, *Charleston & Western Carolina Ry. Co. v. Varneville Furniture Co.*, 237 U.S. 597, 604 (1915)("When Congress has taken the particular subject-matter in hand coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go farther than Congress has seen fit to go."); *New York, N. H. & H. R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953)("With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."); *Thurston Motor Lines, Inc. v. Jordan K. Rand Ltd.*, 460 U.S. 533 (1983)("As to interstate shipment . . . the parties are held to the responsibilities imposed by federal law to the exclusion of all other rules of obligation")(quoting *Louisville & Nashville Ry. Co. v. Rice*, 247 U.S. 201, 203 (1918)).

The courts have also consistently held that negligence claims stemming from damage caused to goods shipped interstate are barred by the Carmack Amendment. *See, e.g.*, *Smith v. UPS*, 296 F.3d 1244, 1247 (11th Cir. 2002)(holding that claims under state law for negligence, wantonness, outrage, discrimination and conspiracy were preempted); *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992)(holding that claim for negligence is preempted by application of the Carmack Amendment); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 305-06 (5th Cir. 1993)(holding that claims for outrage, intentional and

negligent infliction of emotional distress, breach of contract, breach of implied warranty, breach of express warranty, slander, misrepresentation, fraud, negligence and gross negligence, and state statutory claims were all preempted by Carmack Amendment.); *Rini v. United Van Lines, Inc.*, 104 F.3d 506 (1st Cir. 1997) (holding that the Carmack Amendment preempted claims for negligence, misrepresentation, and use of unfair and deceptive acts in violation of Mass. Gen. L. c. 93A).

In *Rini*, the plaintiff hired the defendant to move her household goods from South Carolina to Massachusetts. When her goods arrived in Massachusetts, some items were missing. After an acrimonious and unsuccessful attempt to settle the claim with United, the plaintiff filed suit, asserting claims for negligence, misrepresentation, use of unfair and deceptive acts in violation of Mass. Gen. L. c. 93A, intentional infliction of emotional distress, as well as a claim for relief under the Carmack Amendment. A trial was held and the plaintiff prevailed on the negligence, misrepresentation and 93A claims in connection with the defendant's handling of the claims process. *Id.* at 503. On appeal, however, the First Circuit reversed, holding:

> We find that all state laws that impose liability on carriers based on the loss or damage of shipped goods are preempted. A state law 'enlarges the responsibility of the carrier for loss or at all affects the ground of recovery, or the measure of recovery' where, in the absence of an injury separate and apart from the loss or damage of goods, it increases the liability of the carrier. Preempted state law claims, therefore, include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims.

*Id.* at 506 (internal citation omitted).

In this case, there can be no doubt that the Yorks' two negligence claims against Andrews "stem" from the shipment of the Yorks' household goods from Texas to Rhode Island and disputes that arose during the claims process. There is no dispute that the Yorks' goods were damaged when they became moldy while in storage. Statement of Undisputed Facts (hereinafter "UF") ¶12. The Yorks' first negligence claim against Andrews seeks relief for this damage on a

theory of "Negligence as Bailee". This count, by its own allegations, seeks recovery for a breach of purported duties to "see to it that said goods and possessions would be stored safely and suitably and not be exposed to injury, loss, or damage." Second Amended Complaint at ¶ 40. It is clear that this count directly seeks to recover for the damage done to the goods while in storage. As such, it is squarely preempted by the Carmack Amendment.

The Yorks' second negligence claim against Andrews, entitled "Negligence in Making Dwelling Uninhabitable" is similarly preempted by the Carmack Amendment because it also "stem[s] from the loss or damage of goods." This count seeks recovery for Andrews having "placed mold infested articles in said dwelling and thereby rendered the same uninhabitable for occupancy…" Second Amended Complaint at ¶ 45. This count seeks damages solely for the effect that the delivery of the shipped goods, in their damaged condition, had on the Yorks. Such damages necessarily stem from the loss or damage of the goods as explained in *Rini*.

While *Rini*, in *dicta*, left open the possibility that "liability arising from separate harms, apart from the loss or damage of goods – is not preempted . . . ." the court in *Rini* is clear that such harms must be unrelated to the loss or damage of goods, offering the example of an employee of a carrier assaulting and injuring a shipper. *Rini,* 104 F.3d at 506. *See also,* Memorandum and Order of Magistrate Judge dated February 25, 2005 at 1-2 ("Whether the claim is preempted, in turn, depends on whether Plaintiffs allege injuries . . . which are separate and distinct from those resulting from the loss of the shopped property."). Here all of the Yorks' harm arises from the damage to their goods. Plaintiffs have neither alleged nor developed evidence, of tortious conduct by Andrews that is unrelated to its storage and delivery of the goods.

Other courts have considered cases that involved factual circumstances substantially identical to those in this case, wherein plaintiffs argued that they suffered separate

harms as a result of the delivery of damaged goods, and those courts found that such damages stemmed from the loss or damage of the shipped goods and were preempted by the Carmack Amendment. For example, in *Alessandra v. Mullen Brothers, Inc.*, 10 Mass. L. Rep. 546. Mass. Super. LEXIS 399 (1999)(applying federal law) the plaintiff engaged the defendant to pack her household belongings in her residence in New York, move them to a storage facility in Massachusetts, and then ultimately to her new residence in Belmont, Massachusetts. While the goods were in storage, the defendant had pesticides applied at the storage facility and these pesticides came into contact with plaintiff's goods. The defendant then delivered the plaintiff's goods to the plaintiff's residence, and shortly thereafter, she had "an immediate, severe physical reaction, which required medical attention and forced her to move out of her Belmont apartment. *Id.* at *2. Relying on *Rini*, plaintiff argued that her injuries were separate and apart from the damage to her property. The court, however, rejected this argument:

> Alessandra's claims arise directly out of the interstate transportation of her belongings because her injuries allegedly were caused by [defendant's] misconduct with regard to the storage of her property . . . . Stated another way, all of the harms of which Alessandra complains arise out of the pesticide damage to her belongings."

*Id*. at *14-15.

Other courts have held similarly. *See*, *Glass v. Crimmins Transfer Co*., 299 F. Supp.2d 878, 882 (C.D. Ill. 2004)(holding that claims for claims for emotional distress and personal injury due to exposure to goods damaged by mold are preempted by Carmack Amendment where such emotional and physical injury "arose directly from the carrier's mis-handling of the property"); *Strike v. Atlas Van Lines, Inc.*, 102 F. Supp.2d 599 (M.D. Pa. 2000)(holding that claims for breach of contract, loss of consortium and negligence are preempted where physical and emotional injuries were caused directly by plaintiff's exposure to the shipped goods, which had been damaged due to gasoline which spilled on them during

shipment); *Tayloe v. Kachina Moving & Storage, Inc.*, 16 F. Supp.2d 1123 (D. Ariz. 1998) (holding that state law claims were preempted where plaintiff's allergic reactions, which required hospitalization, were directly caused by plaintiff's exposure to the goods which had become moldy while in storage).

Plaintiffs' claim against Andrews for "Negligence In Making Dwelling Uninhabitable" is substantially the same as the claim raised by the plaintiff in *Alessandra*. The Yorks claim to have suffered harm as a result of their damaged goods being delivered and placed in their dwelling. Second Amended Complaint at ¶¶ 45-46. As was the case in *Alessandra*, the Yorks' alleged physical and emotional reactions to their damaged goods, including their decision that their dwelling was uninhabitable, all resulted from the mold damage that occurred to their goods and stem directly from it. It is therefore not a separate harm under *Alessandra* and *Rini* and is preempted by the Carmack Amendment.

**B. Even If All Of Plaintiff's State Law Claims Against Andrews Are Not Preempted, Andrews, As The Agent of Day Moving & Transfer Co, A Disclosed Principal, Is Not A Party To The Bill Of Lading, And Has No Independent Liability.**

The bill of lading for the Yorks' shipment of household goods was issued by Day Transfer Company ("Day") on a form prepared by JPPSO for the Yorks. UF ¶¶6, 8, Exhibit F. The bill of lading explicitly stated that the goods would be placed in storage prior to their delivery to the Yorks' residence in Newport, by the reference "SIT-#4-168-011". *Id.* "SIT" stands for "storage in transit", which indicates that the property will be placed in storage prior to its final delivery, during which time, the goods are considered still "in transit". Andrews was a government-approved SIT facility, and as such was a disclosed agent for shipments of the household goods of military personnel. UF ¶ 1. Furthermore, with respect to the Yorks' shipment, the shipped goods were placed in SIT storage at Andrews at the express direction of the U.S. Navy Transportation Office in Newport. UF ¶ 11. Under 49 U.S.C. 13907, the agents

of a disclosed principal are not parties to a bill of lading, and even if acts or omissions of the agent caused the harm, only the carrier can be held liable. *See, Parramore v. Tru-Pak Moving Systems, Inc.*, 286 F.Supp 2d 643, 649 (M.D. N.C. 2003). Title 49 U.S.C. § 13907(a) provides:

> Carriers Responsible for Agents. Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

Case law interpreting this provision has held that agents of disclosed principals cannot be held liable pursuant to duly issued bills of lading. *Werner v. Lawrence Transportation Systems, Inc.*, 52 F. Supp. 2d 567 (E.D. N.C. 1998). In *Werner*, the plaintiff's goods were damaged while being transported and stored by several defendants. The bill of lading for the shipment was issued by United Van Lines ("United"). United in turn, had engaged two separate companies as agents to transport and store the goods and deliver them to their final destination. Plaintiff sued all of the carriers on claims alleging, *inter alia*, bailment and negligence. Without even considering the actions of either of the agents employed by United, the court dismissed both agents as defendants stating:

> Not only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract.

*Id.* at 568.

As was the case in *Werner*, Andrews is clearly an agent of a disclosed principal under 49 U.S.C. 13907. It is undisputed that Day is the carrier identified on the bill of lading and disclosed to the government (specifically, JPPSO) and the Yorks as the principal carrier for their shipment. UF ¶ 8, Exhibit F. Andrews was a government approved facility for purposes of providing SIT storage of the household goods of military service members, and in doing so for

the York shipment, acted as agent for Day. Under 49 U.S.C. 13907 and applicable case law, including *Werner*, Day is solely liable for damage occurring to the Yorks' goods. Defendant Andrews should therefore be dismissed as a defendant in this action.[2]

### C. <u>The Yorks' Recovery Under The Carmack Amendment is Limited To $15,000, Which The Yorks' Have Already Received From Defendant Williams.</u>

The Carmack Amendment permits carriers to limit their liability. *See* U.S.C. § 14706(f). The bill of lading for the Yorks' shipment explicitly references the applicable sections of the Code of Federal Regulations, in box 16, as well as the applicable government tariff or special rate authority, Rate Solicitation D-8 ("R.S. D-8") in box 31. UF ¶ 7, Exhibit E.

R.S. D-8, Item 306(b)(1) states that:

> [The] carrier's legal liability for loss or damage to goods shall be the same as set forth in the Interstate Commerce Act, (Title 49, U.S.C. 14706)(in conformity with the rules of the Surface Transportation Board), limited to the amount declared by the shipper times the net weight in pounds of the shipment.

UF ¶ 7, Exhibit E.

Item 306(a) of R.S. D-8 sets a released value of $1.25 per pound. The Yorks' shipment weighed approximately 12,000 pounds, resulting in a limitation of liability of $15,000. UF ¶ 9. R.S. D-8 further makes clear that a carrier's liability cannot exceed $1.25 per pound "unless the shipment is released either at either a lump sum value declared by the shipper or an amount greater than $1.25 times the net weight in pounds of the shipment, whichever is greater." R.S. D-8 Item 308(b). It is undisputed that the Yorks did not declare any lump sum value or amount in excess of $1.25 per pound. UF ¶ 9. It is also undisputed that Major York was

---

[2] Reference is hereby made to the discussion and analysis of 49 U.S.C. 13907 contained in the Memorandum of Law in Support of Day Transfer's and Williams Moving's Motion For Summary Judgment. Because the issues and analysis is substantially identical on this point as between Defendant Andrews and Defendant Williams, Andrews adopts the analysis and discussion contained in Day and Williams' Memorandum.

counseled by the military in San Antonio prior to the shipment as to the availability of additional coverage for his shipment. UF ¶¶ 4-5. Further, Major York testified at his deposition that he did not obtain increased coverage from the government because he believed he already had renter's insurance that would be in effect during the move. UF ¶ 5.

Because Major York did not declare a higher release amount, and did not pay for any additional coverage for such increased amount, the limitation of liability contained in R.S. D-8 is binding on Major York, regardless of whether he explicitly accepted it. *See*, *Howe v. Allied Van Lines, Inc*. 622 F.2d 1147 (3rd Cir. 1980)(holding that limitations of liability of carriers shipping goods of military service members are binding on the service members); *Hollingsworth & Vose, Co., v. A-P-A Transportation Corp.*, 158 F.3d 617 (1st Cir. 1998)(holding that limitation of liability contained on Bill of Lading was binding because shippers are charged with knowledge of applicable tariffs and shipper had declined to accept a higher rate for shipment of the goods with additional coverage over that provided for in the tariff). As was the case in both *Howe* and *Hollingsworth*, Major York declined additional coverage for his shipment (offered in the government counseling session) and the bill of lading contained no declaration of value for the shipment in excess of the $1.25 per pound provided by R.S. D-8. The limitation of liability to $1.25 per pound for the Yorks' 12,000 pound shipment is therefore binding and represents the uppermost recovery available to the Yorks from the carrier. Defendant Williams has already paid $15,000 on account of damage to the Yorks' goods. UF ¶¶ 14, 20. Separately, the United States Government has also paid York $52,000 for his goods. UF ¶ 19. The Yorks have therefore already received the maximum recovery allowed under the Carmack Amendment.

Because the Yorks' have already received the maximum possible recovery available under the Carmack Amendment from Defendant Williams, their claim seeking additional recovery under the Carmack Amendment against Andrews should be dismissed. In

the event that this court does not find that the Yorks' claim is barred as a matter of law because of the payment already received from Williams, this court should make a finding that any liability under the Carmack Amendment is capped at $15,000 as a result of the limitation of liability contained in R.S. D-8, as referenced in the bill of lading.[3]

## III. CONCLUSION

For all of the foregoing reasons, Andrews' motion for summary judgment should be granted.

ANDREWS EXPRESS & STORAGE
WAREHOUSE, INC.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor
Robert K. Taylor (#6514)
Carolyn P. Medina (#7109)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: August 25, 2006

[3] Reference is hereby made to the discussion and analysis of the limitation of liability contained in the Memorandum of Law in Support of Day Transfer's and Williams Moving's Motion For Summary Judgment. Because the issues and analysis is substantially identical on this point as to all defendants, Defendant Andrews adopts the analysis and discussion contained in Day and Williams' Memorandum.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of August, 2006, I electronically filed the foregoing ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of the United States District Court for the District of Rhode Island. The following participants have received notice electronically:

Joseph R. Palumbo, Jr., Esq.
James P. Marusak, Esq. / Gidley, Sardi & Marusak, LLP
William Grimm, Esq., Mitchell Edwards, Esq. / Hinckley Allen & Snyder, LLC

and I hereby certify that I have sent by prepaid first class mail a copy of this documents to the following non CM/ECF participant:

George W. Wright, Esq.
George W. Wright & Associates, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601

/s/ Robert K. Taylor

873359_1/4004-2