**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JASON YORK and MAUREEN YORK**

**Plaintiffs**

**C.A. No. 04-551S**

**v.**

**DAY TRANSER MOVING & STORAGE CO.,**
**ET ALS**

**Defendants**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1. *Introductory Statement*

The Carmack Amendment is at the heart of all three motions for summary judgment. Because the Carmack Amendment is a federal statute with broad preemptive effect, defendants contend that (1) their liability for loss and damage to plaintiffs household goods is limited to $15,000; and (2) plaintiffs' state law tort claims are completely preempted. However, although the Carmack Amendment applies to the transaction at issue, the defendants have ignored an important exception that allows plaintiffs to pursue state and common law claims, without limitation on the defendants' liability, that are separate and apart from damage to the goods themselves. Thus, while Carmack preempts state law claims that enlarge defendants' liability for

damage to the goods, it does not preempt claims based on harms that are separate and apart from damage to the goods.

2. *Legal Summary*

In *Rini v. United Van Lines, Inc.*, 104 F. 3d 502, 506 (1st Cir. 1997), this Circuit held that "liability arising from separate harms—apart from the loss or damage of goods—is not preempted" by the Carmack Amendment. The court offered two examples of such liability, a claim based on an assault upon the shipper by a carrier's employee and a claim for intentional infliction of emotional distress. *Id.* On the other hand, *Rini* holds that a state law claim is preempted if it imposes liability on carriers based on the loss or damage of shipped goods (*i.e.*, "where, in the absence of an injury separate and apart from the loss or damage of goods, it increases the liability of the carrier."). *Id.*

Because the plaintiff in *Rini* suffered no injury other than the loss of property, her state law claims were preempted. The court noted, however, that had the plaintiff prevailed on her claim for intentional infliction of emotional distress before the trial court, that claim would not be preempted. *Id.*

Those circuits that have addressed the issue also have acknowledged exceptions to Carmack preemption. Citing to *Rini*, the Seventh Circuit held that emotional distress claims are not preempted by Carmack. *Gordon v. United Van Lines, Inc.*, 130 F. 3d 282, 289 (7th Cir. 1997). The Eleventh Circuit reached a similar conclusion in *Smith v. United Parcel Service*, 296 F. 3d 1244, 1248-49 (11th Cir. 2002), as did the Fifth Circuit in *Morris v. Covan World Wide Moving, Inc.*, 144 F. 3d 377, 382 (5th Cir. 1998).

Despite similar holdings that recognize exceptions to Carmack preemption, courts have struggled for consistency in determining whether or not a claim is preempted. A federal district court in California recently analyzed this state of the law:

> Unfortunately, the Supreme Court case law does not provide clear guidance on the reach of the preemption doctrine. In particular, the Court has not clarified the extent to which state or common law causes of action that pertain to alleged injuries that are altogether separate and distinct from any claim of damage or loss of a shipper's belongings are preempted. In the absence of such guidance, federal courts have struggled to reach a consensus. The rule that has ostensibly emerged is that the Carmack Amendment preempts claims based on loss or damage to goods shipped in interstate commerce while claims based on conduct separate and distinct from the delivery, loss of, or damage to goods survive preemption. [citations omitted]
>
> However, what constitutes a "separate and distinct" basis for liability is not at all clear. Some courts have taken an expansive view regarding the scope of preemption under Carmack. [discussion of cases omitted]
>
> * * *
>
> However, other courts have taken a more literal reading of the statute's scope. [discussion of cases omitted]
>
> * * *
>
> The precise scope of preemption under the Carmack Amendment is uncertain. Recognizing seemingly conflicting interpretations on the preemptive scope of the Carmack Amendment, the Court will apply the rule that Carmack preempts state law claims based on loss or damage to goods while claims based on conduct separate and distinct from the delivery, loss or, or damage to goods survive preemption.

*Roberts v. North American Van Lines, Inc.*, 394 F. Supp. 2d 1174, 1180-81 (N.D.Cal. 2004) (emphasis added). This court thus took the more literal approach to Carmack preemption. This also is the approach announced by the First Circuit in *Rini*.

Thus, it is clear that the long line of Supreme Court decisions cited by defendants for the proposition that Carmack broadly preempts state law claims *do not* mandate preemption when the claims do not involve damage to goods. The rationale underlying this more literal approach to Carmack preemption is thoroughly described in a recent decision from a federal district court in Georgia:

> This Court's holding that claims for intentional infliction of emotional distress may coexist with Carmack Amendment claims for damages to goods is consistent with the history and language of the Amendment. The cases surrounding the passage of the Carmack Amendment were claims for damages to goods…[B]ut when the claim does not involve damages to goods, but to the shipper personally, these cases and the statute itself do not provide guidance. Whether these damages are recoverable or precluded is not so clear. Only the so-called "savings clause" and the statute's reference to "loss or injury to the property" suggest any Congressional intent one way or the other, and this Court believes this language points to a preservation of claims "separate and apart" from those for loss of goods.
>
> In the absence of clearer guidance, this Court feels that this conservative approach complies with the well-settled principles of preemption.…Simply because a claim is linked to the shipment of goods, does not mean it is a claim for damage to goods. Gordon, 130 F.3d at 289. Here, we do not have any indication that Congress meant for the Carmack Amendment to expand preemption beyond claims for damages to goods.
>
> Defendants cite the goal of uniformity as support for its contention that the Amendment preempts all possible claims. This Court recognizes the importance of uniformity and this opinion does not destroy that goal in claims for the loss of goods. All of the Plaintiff's claims for loss of goods are preempted. However, the separate claim for infliction of emotional distress may still succeed if Plaintiff proves an injury separate from the loss of his goods.
>
> Moreover, Defendants' approach would absolve carriers of all liability above the value of goods shipped, no matter how egregious their behavior toward a shipper. This Court does not believe that the language or earlier interpretations of the statute dictate such a result. An intent in Congress to provide such

> immunity to carriers is not clear and this Court will not deny plaintiffs a remedy without such guidance.

*Hubbard v. All States Relocation Services, Inc.*, 114 F. Supp. 2d 1374, 1380-81 (S.D.Ga. 2000) (emphasis added).

In the final analysis, the Yorks do not contest, nor do they need to contest, the long and undeniable history of the Carmack Amendment laid out by the defendants. That history, however, is incomplete. While the Carmack Amendment does limit the Yorks' recovery from carriers for the loss and damage to their household goods and it preempts state and common law claims that would increase the carriers' liability for damage to the goods, the Carmack Amendment does not preempt the Yorks' state and common law claims for damages that are "separate and apart" from damage to their goods. Those claims may not be resolved by summary judgment to the extent there is any set of facts by which the Yorks may prove that their damages are separate and apart from the damage to their goods.

3. *Application of the Law*

In this case, the Yorks have alleged harms separate and apart from the loss or damage to their goods. These include Counts II, V, VII, and VIII of the Complaint that, in addition to damage to the Yorks' household goods, seek damages for the forced abandonment of their home; expenses for lodging, meals and associated incidental costs; the loss of their monthly housing allowance from the military; damage to Major York's military career; and physical and emotional pain and suffering.

Furthermore, these harms arise from conduct that is distinct from the conduct that damaged the Yorks' goods. The Yorks' goods were damaged as a consequence of their negligent storage in Andrews Warehouse, where holes in the roof allowed water to soak the goods and cause substantial mold damage. *See* Declaration of Joseph R. Palumbo, Jr. ("Palumbo

Decl."), Ex. 1 at 30 (Andrews Depo.); Ex. 2 at 38 (O'Loughlin Depo.). It is undisputed that the water damage occurred when the goods were in storage from June 16, 2004 up until August 16, 2004, which was the government specified date when the goods were to be removed from the warehouse and delivered to the Yorks' residence on Wolcott Avenue in Middletown. The defendants' failure to deliver the goods to the residence on that date would have resulted in sanctions by the government up to and including being placed in a suspension status insofar as handling shipments of goods of military personnel. Palumbo Decl., Ex. 3 at 55-56 (Williams Depo.). So, to avoid such repercussions it was imperative to the defendants that they deliver the goods to the residence on that date no matter what condition the goods were in.

William O'Loughlin, who manages the warehouse, testified that during the time the Yorks' goods were in storage, he walked by the Yorks' goods anywhere from 2 to 50 times. *See* Palumbo Decl., Ex. 2 at 39-40 (O'Loughlin Depo.). In addition the Andrews' workers who loaded the Yorks' goods onto the truck for shipment to their Wolcott Avenue residence undoubtedly would have observed any water stained boxes. *Id.* at 31. The water damage, therefore, would have or should have been obvious to the defendants *before* the goods ever left the Andrews warehouse, which at the very latest would have been when the goods were loaded onto the delivery truck. In fact, Andrews did know that the goods were water logged before they left the warehouse but concealed that fact from the Yorks. On August 16, after most of the goods were brought into the house, Mrs. York went inside and after about 5 minutes she began to feel ill from the smell. *See* Palumbo Decl., Ex. 4 at 41 (Maureen York Depo.). She asked if anyone else felt sick and the driver of the truck which transported the goods to the Yorks' residence told Mrs. York "Yes, ma'am. We knew it was damaged, ma'am. We didn't want to bring it. We were waiting for you to find out." *Id.* at 43, 48. Mrs. York then began to notice

that many of the boxes were water damaged and there was mold growing on them and on the larger furniture items brought into the house. *Id.* at 43-48. The presence of the moldy goods in the house caused the house itself to become hazardous forcing the Yorks to abandon their home. *Id.* at 66-68.

The contamination of the house got worse because Rick Williams, president of Williams Moving Company -- who, *after the goods were delivered*, undertook responsibility to remediate the dwelling and the damaged goods -- opted to go on vacation to Mexico while the moldy conditions festered in the house and on the goods. Palumbo Decl., Ex. 3 at 75-78 (Williams Depo.).

But for defendants' intentional or negligent introduction of the moldy goods into the Yorks' dwelling (and their failure to even notify the Yorks of the damage to the goods), the house would not have been contaminated and the resulting damage to the Yorks and their home could have been avoided, despite the damage to the goods themselves.

These harms occurred *after* the goods themselves were damaged and arose from conduct separate and distinct from the conduct that damaged the Yorks' goods. These harms are not injury to the goods themselves, but are harms to the Yorks personally as a consequence of the defendants' delivery of the moldy goods into the Yorks' home and concealment of the mold damage to the goods. If defendants had revealed the mold damage to the Yorks, rather than simply delivering the goods to the Yorks' residence, the mold never would have entered the Yorks' house and these other damages would not have occurred. Despite the damage to the goods themselves, the Yorks would not have been forced to abandon their home. They would not have been forced to incur the expense (and inconvenience) of living in hotels, purchasing meals and other incidentals. They would not have lost their government housing allowance.

Major York would not have been forced to drop out of his War College class and thereby suffer damage to his military career. The Yorks would not have suffered psychological and emotional distress. It was not the damage to their "things" that caused these harms; it was the fact that the defendants caused the Yorks and their children to be homeless.

Defendants attempt to avoid this result by mischaracterizing the York's damages as arising from the claims process, which according to *Rini* would preempt the York's claims. *Rini*, 104 F. 3d at 505. But that characterization is not accurate. The Yorks were totally unaware of any damage when the moldy goods were delivered to their home. Indeed, the claims process had not even been initiated when the damage to the home occurred, which gave rise to many of the Yorks' other damages that are separate and apart from the damage to the goods themselves. To the extent the Yorks' claim for negligent remediation concerns the damage to their house and subsequent damages arising therefrom, that is separate and apart from the claims process for damage to the goods themselves.

This is not the situation in *United Van Lines, LLC v. Weisberg*, Case No. 04-80160-CIV (S.D.Fla. 2004), which defendants, Day and Williams, cite on pages 26-27 of their Memorandum. That decision concerned the carrier's attempt to repair damage to the goods themselves. In contrast, the Yorks seek damages caused by the intentional or negligent delivery of the moldy goods to their home and the negligent remediation thereof. In the Yorks' case, the clean-up of their mold-contaminated home was delayed because Williams was on vacation and neither he nor Day made any attempt to remediate sooner. This callous disregard for the Yorks and their situation caused damage to the Yorks personally, not to their goods.

Although defendants may argue that these claims are merely extensions of the Yorks' overall Carmack claim, the law neither mandates nor implies such a finding. *See Rosenthal v.*

*United Van Lines, LLC*, 209 F. Supp. 2d 1342, 1336-37 (N.D.Ga. 2002). In *Rosenthal*, the plaintiffs asserted a claim for emotional distress due to defendants' actions in delivery of their household goods. *Id*. at 1336. Although noting that these claims arguably were related to the household shipment and delivery, the court held they were not preempted because they "assert emotional distress for more than that related to the damage to their goods." *Id.* The court reached this conclusion based on the "savings clause" in the Interstate Commerce Act, 49 U.S.C. § 13103, which states "the remedies provided under this part are in addition to remedies existing under another law or common law." The court observed that the Supreme Court, in *Adams Express*, 226 U.S. at 507, concluded that this clause preserved rights and remedies "not inconsistent with the rules and regulations" of the Interstate Commerce Act. Based on these facts, the court concluded that "preservation of possible remedies for emotional distress and loss of consortium in this action comports with the 'letter and spirit of the Carmack Amendment.'" *Rosenthal* at 1337, *quoting Hubbard*, 114 F. Supp. 2d at 1381. *See also Gordon*, 130 F.3d at 289 (simply because a claim is linked to the shipment of goods does not mean it is a claim for damage to goods). Similarly, the Yorks' claims, although related to delivery of their moldy goods, seek damages that are separate and distinct from the damage to their goods.

The Yorks' claims also are similar to those that were not preempted in *Opp v. Wheaton Van Lines, Inc.*, 1999 U.S. Dist. LEXIS 3513 (N.D.Ill. 1999). In that case, the plaintiff alleged fraud based on defendant's actions in demanding payment *after* it knew the goods were damaged. The court phrased the issue as "whether [defendant's] alleged act of demanding full payment for the shipment, even though it allegedly knew that the shipment had been damaged or destroyed, was sufficiently separate and distinct from its alleged liability on the damage claim so

as to warrant preemption." *Id.* at *4-5. Since the court concluded that more evidence was needed to resolve this issue, it denied defendant's motion for summary judgment. *Id.* at *6.

The Yorks' claims are based on defendants' actions in delivering the mold damaged goods to the Yorks' residence after they knew the goods were damaged, thereby causing harm to the Yorks personally and their home that is separate from the damage to their household goods. The issue in this case, therefore, is whether defendants' act of delivering mold damaged goods to the York residence, with full knowledge of the mold damage and the harm that the mold would cause to the Yorks and their residence, was sufficiently separate and distinct from their liability for damage to the goods themselves. If so, those damage claims are not preempted. In order to grant summary judgment to the defendants, this court would have to find that there is no set of facts by which a jury could conclude that the Yorks have alleged separate and distinct harms. By ignoring this exception to Carmack preemption altogether in their motions for summary judgment, the defendants have not even begun to carry their burden on this issue.

In *Schwarz v. National Van Lines, Inc.*, 2004 U.S.Dist. LEXIS 9398, at *12 (N.D.Ill. 2004), the court framed the issue of preemption as "whether each of Plaintiff's common law claims allege liability on grounds separate and distinct from the loss of, or damage to, the shipped household goods." In a subsequent decision denying defendant's motion for summary judgment, the court noted that:

> On the present record, a factual issue remains as to whether Schwarz's state law emotional distress claims stem from the "loss of, or damage to, the shipped household goods" itself, or from grounds separate and "distinct from" that loss or damage. Contrary to National's conclusory assertion that "everything alleged by [Schwarz] falls squarely within the ambit of the interstate transportation of goods…the temporary loss of [Schwarz's] property, the recovery of her property, and the claims process," a reasonable jury could find that Schwarz's damages stem from other sources, namely the way in which National treated

> her while her shipment was missing.…National's preemption theory does not warrant summary judgment on Schwarz's state law claims for emotional distress.

*Schwarz v. National Van Lines, Inc.*, 375 F. Supp. 2d 690, 697 (N.D.Ill. 2005) (record citations omitted) (emphasis added).

In the instant case, the defendants make similar conclusory assertions that the Yorks' state law claims fall entirely within the ambit of the interstate transportation of goods. A reasonable jury, however, could find that the Yorks' damages stem from other sources, such as the way in which the defendants treated them after discovering the damage to the goods by inflicting additional damage on the Yorks in their attempt to be rid of the mold contaminated goods themselves and then causing further damage by delaying their remediation of the Yorks' home while defendant Williams took a vacation. Therefore, summary judgment is not appropriate.

The *Hubbard* court best expressed the perversion of complete Carmack preemption of claims that extend beyond damage to the goods themselves. Such an approach "would absolve carriers of all liability above the value of goods shipped, no matter how egregious their behavior toward a shipper." 114 F.Supp.2d at 1381. Although some courts indeed have concluded that Carmack allows carriers to get away with such behavior, the *Hubbard* court correctly observes that such a result is not mandated by Carmack itself or the vast body of Supreme Court precedent construing Carmack. The First Circuit, in *Rini*, has enunciated a standard consistent with *Hubbard* where, if a plaintiff alleges an injury separate and apart from the damage to the goods, that claim is not preempted by Carmack.

## CONCLUSION

Based on the foregoing plaintiffs submit that their common law claims are not preempted by the Carmack Amendment and that there are genuine issues of material fact which preclude the grant of summary judgment.

JASON YORK and MAUREEN YORK

By Their Attorney,

/s/Joseph R. Palumbo, Jr.
Joseph R. Palumbo, Jr. (#0405)
294 Valley Road
Middletown, Rhode Island 02842
(401) 846-5200
(401) 848-0984 FAX
joseph@palumbolaw.net

DATED: October 2, 2006

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October 2006 I electronically filed the foregoing Plaintiff's Memorandum In Opposition to Defendants' Motions for summary Judgment with the Clerk of the United States District Court of the District of Rhode Island and that the following participants received notice electronically:

James P. Marusak
Robert K. Taylor
William Grimm

and I hereby certify that I have sent by prepaid first class mail a copy of the foregoing document to George W. Wright, a non-CM/EFC participant, at his usual business address.

/s/ Joseph R. Palumbo, Jr.