## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted on behalf of defendant DAY TRANSFER COMPANY ("DAY TRANSFER") and third-party defendant WILLIAMS MOVING COMPANY ("WILLIAMS MOVING") in support of their motion for an Order pursuant to Fed.R.Civ.P. 56 granting partial summary judgment (1) limiting their maximum liability with respect to all claims asserted by plaintiffs to the sum of $15,000.00 as stipulated in the relevant Government Bill of Lading ("GBL") contract and (2) dismissing all other claims and cross-claims against DAY TRANSFER and WILLIAMS MOVING.

## LEGAL ARGUMENTS

### POINT I

### PLAINTIFFS ADMIT ALL MATTERS SET FORTH IN DAY TRANSFER'S AND WILLIAMS MOVING'S STATEMENT OF MATERIAL FACTS

Plaintiffs submit a Statement of Disputed Facts, but do not object to any part of DAY TRANSFER's and WILLIAMS MOVING's Statement of Disputed Facts. Pursuant to L.R.Cv. 56(3), DAY TRANSFER's and WILLIAMS MOVING's Statement of Disputed Facts (¶¶ 1 through 91) should be deemed admitted.

### POINT II

### PLAINTIFFS DO NOT OPPOSE DAY TRANSFER'S AND WILLIAMS MOVING'S MOTION TO DISMISS PLAINTIFFS' BROKER LIABILITY CLAIMS AND, THUS, COUNTS III AND IX OF THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED

Count III of the Second Amended Complaint alleges a claim against DAY TRANSFER for negligent brokerage. DAY TRANSFER contends that (1) it was not acting as a

broker, but as the GBL carrier responsible for the subject shipment (Moving Brief, Point V) and (2) even if DAY TRANSFER was acting as a broker, it was not negligent (Point VII).

Count IX of the Second Amended Complaint alleges a claim against WILLIAMS MOVING for negligent brokerage. WILLIAMS MOVING contends that:

(1) it has no independent liability to plaintiffs as it was merely DAY TRANSFER's disclosed household goods booking agent (Point VI);

(2) even if WILLIAMS MOVING was acting as a broker, it was not negligent (Point VII); and

(3) WILLIAMS MOVING has no privity with plaintiffs and thus, cannot be held liable to plaintiffs (Point VIII).

Plaintiffs have set forth no opposition to DAY TRANSFER's and WILLIAMS MOVING's motion to dismiss Counts III and IX. Plaintiffs' silence should be construed as an admission that Counts III and IX are not meritorious and should be dismissed.

In any event, DAY TRANSFER and WILLIAMS MOVING are entitled to summary judgment dismissing Counts III and IX. "If the adverse party does not file an opposition, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Plaintiffs admit all the facts set forth in DAY TRANSFER's and WILLIAMS MOVING's Statement of Material Facts. Moreover, DAY TRANSFER and WILLIAMS MOVING have established in their moving Memorandum of Law that they are entitled to judgment as a matter of law dismissing Counts III and IX.

## POINT III

## PLAINTIFFS ADMIT THAT THEIR RECOVERY FOR PROPERTY DAMAGE IS LIMITED TO $15,000

Plaintiffs' Memorandum in Opposition to defendants' motion for summary judgment (Opposition Brief) argues that their claims for:

(1) alleged abandonment of their home;

(2) expenses for lodging, meals and incidental costs;

(3) alleged loss of their monthly housing allowance;

(4) alleged damage to Jason York's career; and

(5) alleged physical and emotional pain and suffering

are not governed by the Carmack Amendment. However, plaintiffs do admit that their claim for household goods damage is governed by Carmack. Plaintiffs' Opposition Brief argues:

> However, <u>although the Carmack Amendment applies to the transaction at issue</u>, the defendants have ignored an important exception that allows plaintiffs to pursue state and common law claims, without limitation on the defendants' liability, <u>that are separate and apart from damage to the goods themselves. Thus, while Carmack preempts state law claim that enlarge defendants' liability for damage to the goods</u>, it does not preempt claims based on harms that are separate and apart from damage to the goods. (Opp. Br. pp. 1-2)
>
> In this case, the YORKS <u>have alleged harm separate and apart from the loss or damage to their goods</u>. This includes Counts II, V, VII and VIII of the Complaint that, in addition to damage to the York's household goods, seek damages for the forced abandonment of their home; expenses for lodging, meals and associated incidental costs; the loss of their monthly housing allowance in the military; damage to Major York's military career; and physical and emotional pain and suffering. (emphasis added) (Oppos. Br. p. 5).

* * *

> These harms occurred *after* the goods themselves were damaged and arose from conduct separate and distinct from the conduct that damaged the YORKS' goods. These harms are not injuries to the goods themselves, but are harms to the YORKS personally as a consequence of the defendants' delivery of the moldy goods into the YORKS' home and concealment of the mold damage to the goods…. (Oppos. Br., p. 7) (emphasis added).

Essentially, plaintiffs classify their claimed damages in two (2) categories: one for the actual physical damage to the transported goods and the other for all other alleged consequential damages arising from the physical property damage. Plaintiffs admit that the first category of damages is governed by Carmack and <u>do not dispute that their claim for property damage is limited to $15,000.00 pursuant to the GBL.</u> Accordingly, it is respectfully requested that the Court limit plaintiffs' recovery for damage to their household goods to $15,000.00.

## <u>POINT IV</u>

## PLAINTIFFS FAIL TO OFFER ANY LEGALLY COGNIZABLE OBJECTION TO DAY TRANSFER'S MOTION TO DISMISS COUNT II OF THE SECOND <u>AMENDED COMPLAINT FOR NEGLIGENT REMEDIATION</u>

As set forth in DAY TRANSFER's and WILLIAMS MOVING'S Moving Brief (Point IV), plaintiffs' claim against DAY for negligent remediation is nothing more than a claim for negligent claim handling which is preempted by the Carmack Amendment. Among the legal authorities cited in defendants' Moving Brief is the unreported decision in <u>United Van Lines, LLC v. Weisberg</u>, Case No. 04-80160-CIV (S.D. Fla. 2004). In <u>Weisberg</u>, the District Court held that the shipper's state law claim for negligent repair against the carrier for post-shipment damage to the goods by the carrier's adjuster was preempted by Carmack. Plaintiffs attempt to distinguish <u>Weisberg</u> arguing:

> That decision concerned the carrier's attempt to repair the damage to the goods themselves. In contrast, the Yorks seek damages caused by the…negligent remediation…[of the house]…This

callous disregard for the Yorks and their situation caused damage to the Yorks personally, not to their goods. (Oppos. Br. p. 8).

The case law cited by defendants does not support plaintiffs' purported distinction. As set forth in the defendants' Moving Brief (Point IV(C), relevant precedents involving mold and chemical contamination of cargo have held that state law claims for consequential injury to persons and other property are preempted by the Carmack Amendment. See, Glass v. Crimmins Transfer Co., 299 F.Supp.2d 878 (C.D.Ill. 2004) [state law claims for breach of contract and fraudulent concealment of water damage and mold contamination held preempted as such claims arose from damage to the transported property]; Strike v. Atlas Van Lines, Inc., 102 F.Supp.2d 599 (M.D. Pa. 2000) [state law claims for negligent spillage of gasoline on plaintiffs' goods causing personal injury to plaintiffs held preempted]; Tayloe v. Kachina Moving & Storage, Inc., 16 F.Supp.2d 1123 (D.Ariz. 1998) [holding plaintiffs' state law claims for cost of decontaminating house, decline in property value and personal injury caused by delivery of mold contaminated household goods preempted by Carmack]; Alessandra v. Mullen Brothers, Inc., 1999 WL 959684 (Mass.Super. 1999) [holding plaintiff's claim for personal injury caused by exposure to pesticides negligently sprayed on household goods preempted by Carmack].

Further, courts have consistently held that carrier claim processing is not legally "separate and apart" from the transportation of the goods. Therefore, state law claims pertaining to claim processing are preempted by the Carmack Amendment, regardless of how they are framed. See, Gordon v. United Van Lines, Inc., 130 F.3d 282, 289-90 (7th Cir. 1997) [Carmack preempts state law claims against the carrier for bad faith claim handling]; Rini v. United Van Lines, Inc., 104 F.3d 502, 506 (1st Cir. 1997) ["Preempted state law claims … include all liability…stemming from the claims process, and liability related to the payment of claims"];

Cleveland v. Beltman North American Van Lines Co., Inc., 30 F.3d 373, 379 (2nd Cir. 1994) [Carmack preempts federal common law claim for punitive damages based on alleged bad faith claims handling].

Whether plaintiffs fashion their theory as negligent claim handling or negligent remediation, their claims resulting from any collateral damage to the rental home, including any failure to remediate it to their liking, are still governed by Carmack and the GBL. See, Air Prods. & Chems., Inc. v. Illinois Cent. Gulf R.R. Co., 721 F.2d 483, 485 (5th Cir. 1983) [holding carrier's liability for contamination of storage tank caused by misdelivery of wrong chemical governed by Carmack]; American Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co., 422 F.2d 462, 466-67 (6th Cir. 1970) [holding damage to plaintiff's storage facility caused by carrier's misdelivery of wrong chemical governed by Carmack and not common law negligence]; Marquette Cement & Mfg. Co. v. The Louisville & Nashville R.R. Co., 281 F.Supp. 944, 947 (E.D.Tenn. 1967), aff'd per curium, 406 F.2d 731 (6th Cir. 1969) [holding plaintiff's claim against carrier for delivery of non-conforming cement resulting in defective construction of customer's floor governed by Carmack]; V.R. Compounding Corp. v. Occidental Chemical Corp., 2000 WL 1368045, *4 (N.D.Ill. 2000) [holding carrier's liability for spilling toxic chemicals during delivery resulting in ground and water contamination of plaintiff's property governed by Carmack which applies to "all foreseeable damages resulting from a breach of a transportation contract"].

All of plaintiffs' claims stem from DAY TRANSFER'S alleged failure to deliver their goods in sound condition, or alleged failure to remediate plaintiffs' property to their satisfaction. Thus, all liability for plaintiffs' claims is limited to the GBL's $15,000 released valuation amount.

It is respectfully requested that plaintiffs' claim against DAY TRANSFER for negligent remediation alleged in Count II of the Second Amended Complaint should be dismissed with prejudice.

## POINT V

## PLAINTIFFS' CONSEQUENTIAL DAMAGE CLAIMS DO NOT ARISE FROM ANY CONDUCT OF DEFENDANTS THAT IS SEPARATE AND APART FROM THE TRANSPORTATION OF THE GOODS

Despite plaintiffs' insistence that some of their claims are "separate and apart" from their household goods damage claim, all of plaintiffs' alleged losses directly stem from the cargo damage. Plaintiffs allege that ANDREWS EXPRESS was or should have been aware that their shipment had become damaged at the warehouse, but that ANDREWS EXPRESS still delivered the goods to the Wolcott Avenue house causing it to become mold-infested. Plaintiffs argue:

> But for defendants' intentional or negligent introduction of the moldy goods into the Yorks' dwelling (and their failure to even notify the Yorks of the damage to the goods), the house would not have been contaminated and the resulting damage to the Yorks and their home could have been avoided, despite the damage to the goods themselves.
>
> These harms occurred *after* the goods themselves were damaged and arose from conduct separate and distinct from the conduct that damaged the Yorks' goods…. (Oppos. Br. p. 7).

According to plaintiffs' view, only carrier conduct directly causing physical damage to the goods is pertinent to Carmack preemption of state law claims. Plaintiffs' attempt to reduce to the subatomic level the carrier conduct covered by Carmack's broad preemption flies in the face of the early U.S. Supreme Court precedents cited in defendants' Moving Brief (Points III and IV). Plaintiffs' truncated view of Carmack is also flatly at odds with the ICCTA's

expansive definition of "transportation" which includes all "…services related to [the] movement, including … delivery … storage, handling … unpacking …" 49 U.S.C. Section 13102(23)(B). See Margetson v. United Van Lines, Inc., 785 F.Supp. 917, 920-921 (D.N.M. 1991) [holding that under the broad definition of "transportation," plaintiff's claim for damage during storage-in-transit and all claims arising from "acts that occurred before or after the transport of her possessions" were preempted by Carmack].

**A. Count II of the Second Amended Complaint Does Not Allege Negligent Delivery of Damaged Goods but Merely Negligent Remediation.**

As a threshold issue, Count II of the Second Amended Complaint, the only Count alleging negligence of DAY TRANSFER, avers that DAY is liable for negligent remediation which is purported to be conduct separate and apart from the transportation of plaintiffs' goods. Plaintiffs' negligent remediation claim against DAY is addressed above in Point IV of this Reply Memorandum of Law. Count II however, does not allege that DAY is liable for knowingly delivering damaged goods to plaintiffs' residence. As this claim is not alleged against DAY or WILLIAMS MOVING, summary judgment should not be denied DAY TRANSFER or WILLIAMS MOVING based on any such unasserted claim.

**B. DAY TRANSFER Had a Legal Duty to Deliver and Plaintiffs Had a Duty to Accept the Shipment in its Partially Damaged Condition.**

As plaintiffs admit (Statement of Disputed Facts, ¶8), under the GBL, DAY TRANSFER was obligated to the Government to deliver plaintiffs' goods to their residence in Newport. "As a general rule … delivery under a straight bill of lading should be made to the consignee designated in the bill of lading or contract of transportation." Sorkin, Goods in Transit, §4.00[2]. "Under the Carmack Amendment, the initial carrier remains liable until the cargo is delivered to the destination set forth in the bill of lading…." Id. at §4.00[1], n. 61,

Comment. Furthermore, "a consignee has a duty to accept goods which have been damaged in transit from a common carrier unless the goods are considered to be worthless. The term 'totally worthless' has been defined to mean that the damaged goods were worthless for their intended purpose…." Id. at §4.09. [citing Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110, 111, 62 S.Ct. 156, 86 L.Ed. 89 (1941)]. "The reason for the imposition of such duty upon the consignee stems from the obligation of each party to mitigate damages." Id.

DAY TRANSFER was obligated by the GBL and Carmack to deliver plaintiffs' goods to their Newport residence. Plaintiffs were obligated to and did accept the shipment, because it was not a total loss. Plaintiffs' attempt to create a new non-preempted intentional carrier tort of knowing-delivery-of-partially-damaged-cargo should be rejected by the Court as a matter of law. DAY TRANSFER'S liability cannot be increased beyond that stipulated in the GBL for performing its contractual and common law duty to deliver the shipment to plaintiffs in a partially damaged condition so that they could fulfill their duty to mitigate any damages.

**C. Case Law Does Not Support Plaintiffs' Argument That the Delivery of Damaged Goods to their Residence Constitutes Conduct Separate and Apart from the Transportation of the Goods.**

Plaintiffs acknowledge that the Carmack Amendment is a comprehensive legislative scheme regulating the interstate transportation of goods. However, they mistakenly contend that their claims for negligence against DAY TRANSFER are not preempted under the holdings of Smith v. United Parcel Service, 296 F.3d 1244 (11th Cir. 2002); Gordon v. United Van Lines, Inc. 130 F.3d 282 (7th Cir. 1997); Rini v. United Van Lines, Inc., 104 F.3d 506 (1st Cir. 1997), Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 388 (5th Cir. 1998); Roberts v. North American Van Lines, Inc., 394 F.Supp.2d 1174, 1180-81 (N.D.Cal. 2004);

Rosenthal v. United Van Lines, LLC, 209 F.Supp.2d 1342 (N.D.Ga. 2002);[1] Schwarz v. National Van Lines, Inc., 375 F.Supp.2d 690 (N.D.Ill 2001); Hubbard v. All States Relocation Services, Inc., 114 F.Supp.2d 1374, 1380-81 (S.D.Ga. 2000); Schwarz v. National Van Lines, Inc., 2004 WL 1166632, 2004 U.S.Dist. LEXIS 9398 (N.D.Ill. 2004); Opp v. Wheaton Van Lines, Inc., 1999 U.S.Dist. LEXIS 3513 (N.D.Ill. 1999).

Plaintiffs' reliance on these cases for their anti-preemption arguments is entirely misplaced. Gordon and Rini both held that all state law claims that "stemmed from the loss of the goods" are preempted (emphasis added). Gordon, supra at 289. The only claims not preempted under Rini and Gordon are a carrier's intentional torts that are unrelated to the handling of the goods, loss or damage to the goods or the making and performance of the contract of carriage:

> For example, if any employee of the carrier assaulted and injured the shipper, state law remedies would not be preempted. Similarly, a claim for intentional infliction of emotional distress alleges a harm to the shipper that is independent from the loss or damage to goods and, as such, would not be preempted. Gordon at 289 [quoting Rini].

Plaintiffs' alleged emotional distress and consequential economic damages directly "stemmed from" the handling of the goods during storage and final delivery. Accordingly, there can be no viable intentional tort claim against DAY TRANSFER or WILLIAMS MOVING and, in fact, none is alleged in the Second Amended Complaint. Plaintiffs do not allege any breach of a legal duty owed by DAY TRANSFER or WILLIAMS MOVING other than DAY'S contractual duty owed to plaintiffs under the GBL to deliver the goods to their final destination in the same condition as when they were received in Texas.

[1] Plaintiffs' citation is incorrect. The correct citation is Rosenthal v. United Van Lines, LLC, 174 F.Supp.2d 1331 (N.D. Ga. 2001), vacated by 209 F.Supp.2d 1342 (N.D.Ga. 2002).

All conduct of DAY TRANSFER, WILLIAMS MOVING and the other defendants in connection with the shipment was related to the interstate transportation and handling of plaintiffs' claim under the GBL. Therefore, neither DAY nor WILLIAMS can have any independent tort duty or liability to plaintiffs for damage to the shipment, the manner in which it was delivered, the handling of their claim for property remediation or any consequential losses alleged by plaintiffs.

The Eleventh Circuit addressed the scope of Carmack preemption of state law remedies in Smith v. United Parcel Service, 296 F.3d 1244 (11th Cir. 2002). In Smith, the Court explained that "separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment." (emphasis added) 296 F.3d at 1249. The plaintiffs argued that Carmack did not preempt their state law discrimination claims or their common law claims for fraud, negligence, wantonness and outrage. The Eleventh Circuit held, however, that "Carmack Amendment preemption embraces all of these claims because it embraces 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" 296 F.3d at 1247 [quoting Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 196, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916)].

The Smith panel rejected the plaintiffs' contention that UPS's alleged misrepresentations "created a new relationship apart from the contract of carriage so that the Carmack Amendment preemption does not apply." Id. The Court of Appeals reasoned:

> While we agree that situations may exist in which the Carmack Amendment does not preempt all state and common law claims, including ones for outrage, only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption ... In other words, separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment. Id. at 1248-1249.

To reiterate, "only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption." ANDREWS' alleged fault in damaging plaintiffs' goods and then delivering the goods to their residence in a damaged state was an integral part of ANDREWS' performance of DAY TRANSFER'S duties with respect to the storage-in-transit (SIT) and final transportation and delivery of the goods pursuant to the GBL. Plaintiffs allege no conduct of any defendant amounting to intentional infliction of harm or false statements to plaintiffs.

At most plaintiffs complain that ANDREWS failed to disclose the damage when it delivered the goods. Yet, plaintiffs admit that water and mold damage was "visible" when the shipment arrived (Statement of Disputed Facts, ¶5). Thus, plaintiffs cannot contend in good faith that any defendant willfully or actively concealed any condition from them, or even tried to do so. Even if ANDREWS had a duty to disclose "visible" damage to plaintiffs, it could only be based on DAY'S contractual duty of care with respect to the goods.

Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir. 1987) further establishes the principle that Carmack's application is based on the carrier's conduct, not on the shipper's alleged harm. Hughes held that the plaintiffs' state law claims including a claim for negligent infliction of emotional distress was preempted by Carmack where their state law claims were based on the damage to their goods. Id. at 1412, 1415.

Plaintiffs' reliance on Schwarz v. National Van Lines, Inc., 2004 WL 1166632, 2004 U.S.Dist. LEXIS 9398 (N.D.Ill. 2004) is also misplaced. Schwarz supports defendants' view that, for state law claims to survive, they must not be based on damage to the goods or their transportation. In Schwarz, the carrier could not find plaintiffs' shipment for several months. The goods were finally discovered in the carrier's agents' landlord's garage. The carrier

allegedly made no attempt to locate the goods and allegedly made misrepresentations to the plaintiff regarding the delivery of her goods, compensation for her traveling to Texas to inspect the goods and sending a representative to meet her. After a four-month delay when her goods were finally delivered, plaintiff allegedly had a "severe hysterical, hyperventilating reaction." Id. at 3.

Despite the defendant's alleged conduct, the District Court held, "If the harm alleged arises solely out of Defendants' handling of Plaintiff's goods and Plaintiff's claim, the Carmack Amendment preempts Plaintiff's claims for intentional and negligent emotional distress." (emphasis added) Id. at 6. The Court distinguished between emotional distress arising from the carrier's handling of the goods or claim, and the carrier's personal treatment of the plaintiff. The Court noted that the plaintiff's count for emotional distress was based on a combination of the defendant's alleged mishandling of her goods and its alleged misleading statements to her. The Court held that the plaintiff's emotional distress claim could not be based on the alleged mishandling of her goods and granted her leave to amend the Complaint to remove allegations linking her alleged distress to the carrier's cargo or claim handling. Id. at 7.

In Schwarz v. National Van Lines, Inc., 375 F.Supp.2d 690 (N.D.Ill. 2005) the District Court later held there was a factual issue whether the plaintiff's emotional distress claim stemmed from damage to the goods or from the carrier's alleged false promises and withholding of information solely within its knowledge while the shipment was missing. Id. at 697. No such conduct by any of the defendants herein is alleged.

The other cases cited by plaintiffs in their Opposition Brief are clearly distinguishable. Roberts v. North American Van Lines, Inc., 394 F.Supp.2d 1174 (N.D.Ca. 2004) did not involve alleged damage to goods in interstate commerce. It involved a class action

alleging that the defendant carrier engaged in unlawful billing practices. The Court correctly held that the plaintiffs' claims were not based on the Carmack Amendment and, thus, were not preempted by Carmack. The Court further held that the plaintiffs' claims were barred by the doctrine of regulatory field preemption. Roberts sheds no light on the issues in this case.

Hubbard v. All States Relocation Services, Inc., 114 F.Supp.2d 1374 (S.D.Ga. 2000) involved a claim for intentional infliction of emotional distress. The Court defined the issue as follows: "One point of debate on the issue of preemption is the extent to which the Carmack Amendment preempts claims that are not for damage to goods, particularly some claims for intentional infliction of emotional distress." Id. at 1379. Relying on Rini, Gordon and other cases holding that intentional infliction of emotional distress claims are not preempted by Carmack, Hubbard held that the plaintiffs' claim against the defendant carrier withstood Carmack preemption.

In Opp v. Wheaton Van Lines, Inc., 1999 WL163041 (N.D.Ill. 1999), the Court held that it required more evidence to decide whether preemption applied to the plaintiff's fraud claim against the carrier for allegedly demanding freight charges while knowing the shipment was destroyed. Opp provides no guidance in this case.

Rosenthal v. United Van Lines, LLC, 174 F.Supp.2d 1331 (N.D.Ga. 2001) is not good law as it was vacated. See, 209 F.Supp.2d 1342 (N.D.Ga. 2002). Further, Rosenthal is distinguishable as it involved a claim for intentional infliction of emotional distress. Here, there is no claim for intentional infliction of emotional distress alleged in the Second Amended Complaint and no evidence whatever supporting such a claim.

The above precedents establish that if the shipper's state law claims arise from the carrier's handling of the goods, or a related claim, they are preempted by Carmack. No

intentional misconduct is alleged by plaintiffs in their pleadings or supported by any evidence in the record. At most, plaintiffs merely insinuate intentional wrongdoing belatedly to avoid summary judgment.

**D. Plaintiffs' Claims for Consequential Economic Damages Are Governed by the Carmack Amendment and the GBL.**

In addition to plaintiffs' emotional claims, they allege the following consequential economic losses:

(1) abandonment of their home;

(2) expenses for lodging, meals and incidental costs;

(3) loss of their monthly housing allowance;

(4) damage to Jason York's career.

**(1) The Carmack Amendment Allows Recovery of Consequential Economic Losses.**

Plaintiffs neither have nor require any state law remedy for their consequential economic claims. The United States Supreme Court held long ago in Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 196, 36 S. Ct. 541 (1916), that the Interstate Commerce Act and the Carmack Amendment are "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." (emphasis added). Carmack governs all claims arising out of "damage, or injury to the property…." The phrase "injury to the property" contained in 49 U.S.C. Section 14706(a) includes consequential economic losses not directly related to physical damage to the transported goods. Wang Labs, Inc. v. Burts, 612 F.Supp. 441, 444 (D.Md. 1984); Reagan v. Commonwealth Theaters of P.R., Inc., 300 F.Supp. 676, 678 (D.P.R. 1969). See also, Margetson v. United Van Lines, Inc., 785 F. Supp. 917, 920 (D.N.M. 1991) [Carmack Amendment

encompasses claims for "loss of use of the goods"]. Plaintiffs' argument that their consequential claims escape the GBL and preemption because "these harms are not injuries to the goods themselves" misconceives Carmack's scope and the relevant case law.

The Carmack Amendment does not alter the common law rule that special or consequential damages may be recoverable in an action for breach of contract. Contempo Metal Furniture Co. of California v. East Texas Motor Freight Lines, Inc., 661 F.2d 761, 765 (9th Cir. 1981); Reed v. Aaacon Auto Transport, Inc., 637 F.2d 1302, 1305-06 (10th Cir. 1981).

Under Carmack, a shipper's recoverable damages may include damages for: (1) delay, Southeastern Express Co. v. Pastime Amusement Co., 229 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936); (2) lost profits unless speculative, Camar Corp. v. Preston Trucking Co., 221 F.3d 271, 277 (1st Cir. 2000); and (3) other reasonably foreseeable consequential damages, Air Prods. & Chems, Inc. v. Illinois Cent. Gulf R.R. Co., 721 F.2d 483, 485 (5th Cir. 1983). As under common law, to recover under Carmack for special damage, the plaintiff must show that the carrier had notice of special circumstances from which such damages would flow. Illinois Cent. Gulf R.R. v. Southern Rock, Inc., 644 F.2d 1138, 1141 (5th Cir. 1981). As Carmack allows recovery of consequential damages beyond direct physical damage, plaintiffs' state law negligence claims for such damages are preempted.

**(2) Plaintiff's Alleged Consequential Damages Are Limited to the Released Valuation.**

Even if plaintiffs are entitled to recover consequential damages, such damages are limited to the GBL's $15,000.00 released valuation amount. As set forth in DAY TRANSFER's and WILLIAMS MOVING's Moving Brief (Point II), the United States Supreme Court held in Southeastern Express Co., supra, that a carrier's liability for a shipper's consequential economic

losses resulting from failure to deliver a movie film was limited to the $50.00 per shipment released valuation stipulated in the Bill of Lading.

Plaintiffs' attempt to place their consequential claims beyond Carmack and the GBL is merely to avoid the $15,000 limitation of liability to which the Government and plaintiffs' stipulated in the GBL long before the shipment was picked up in Texas. Plaintiffs fail to cite any legal authority holding that consequential damages arising from loss or damage to goods are not governed by Carmack or that such claims are not limited by the GBL's released valuation terms. Therefore, their common law negligence claims against DAY TRANSFER and WILLIAMS MOVING for consequential losses arising from physical damage to their shipment must be dismissed and any recovery for such losses is limited to the maximum sum of $15,000 pursuant to the GBL.

## POINT VI

## WHETHER OR NOT THEY ARE PREEMPTED BY CARMACK, PLAINTIFFS' CONSEQUENTIAL CLAIMS ARE LIMITED BY THE GBL AND DOD RATE SCHEDULE RELEASED VALUATION TERMS

In Penske Logistics v. KLLM, Inc., 285 F.Supp.2d 468 (D.N.J. 2003), the plaintiff argued that the limitation of liability in the relevant bill of lading was not enforceable because the defendant carrier allegedly waived application of the Carmack Amendment to the shipment. The District Court held:

> The limitation of liability found in the Bill of Lading is applicable to limit Defendant's liability whether this issue is construed as one of classic contract interpretation or as within the provisions of the Carmack Amendment. Therefore, the Court makes no determination of whether the Contract Carriage provision in the KLLM Agreement conforms to the requirements of the Carmack Amendment's waiver provision (emphasis added). Id. at 474.

The DOD'S RS D-8 and the GBL constitute the governing contract between DAY TRANSFER and the DOD acting as plaintiffs' shipping agent. Regardless of whether Carmack applies to plaintiffs' consequential claims, the provisions of the RS D-8 and the GBL still apply. The RS D-8 provides, in part:

> The released value and the carrier's maximum liability (<u>whether or not loss or damage occurred from carrier negligence</u>), as determined under this item, shall <u>apply to any claim resulting from the performance or failure to perform by the carrier of any services</u>, including accessorial services, <u>which the carrier contracted is to perform</u> (emphasis added). (Exhibit "M").

All of plaintiffs' consequential claims "result from" DAY TRANSFER'S alleged failure to properly care for and deliver the shipment as required by the GBL. Therefore, all such claims are limited by the GBL's $15,000 contractual liability limit mandated by the DOD and accepted by DAY prior to the shipment.

## <u>**CONCLUSION**</u>

It is respectfully submitted that the Court should grant summary judgment (1) limiting DAY TRANSFER's maximum liability to plaintiffs to the sum of $15,000 pursuant to the GBL and RS D-8 and (2) dismissing all other claims and cross-claims against DAY TRANSFER and WILLIAMS MOVING with prejudice.

Dated: October 16, 2006

/s/ James P. Marusak

______________________________

James P. Marusak, Esq.
GIDLEY SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644

-and-

George W. Wright, Esq. (Pro Hac Vice)
Narinder S. Parmar, Esq.
GEORGE W. WRIGHT & ASSOCIATES, LLC
Continental Plaza
401 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
(201) 342-8884

Attorneys for Defendant DAY TRANSFER
COMPANY and Third-Party Defendant
WILLIAMS MOVING COMPANY

The document has been filed electronically and it is available for viewing and downloading from the ECF system. I hereby certify that on the 16th day of October, 2006, a true and correct copy of the within was mailed first class, postage pre-paid to the above addresses.

/s/ JAMES P. MARUSAK