UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON YORK and MAUREEN YORK,<br><br>Plaintiffs,<br><br>v.<br><br>DAY TRANSFER COMPANY, APOLLO VAN LINES, INC. and ANDREWS EXPRESS & STORAGE WAREHOUSE, INC.,<br><br>Defendants,<br><br>v.<br><br>WILLIAMS MOVING COMPANY,<br><br>Third-Party Defendant. | C.A. No. 04-551S |

DECISION AND ORDER

William E. Smith, United States District Judge.

Defendant Day Transfer Company ("Day") and Third-Party Defendant Williams Moving Company ("Williams") move jointly for summary judgment on all claims against them based on their interpretation of the so-called Carmack Amendment, 49 U.S.C. § 14706(a)(1), and request entry of final judgment pursuant to Fed. R. Civ. P. 54(b). Defendant Andrews Express & Storage Warehouse, Inc. ("Andrews") moves for summary judgment independently, but under the same theory of preemption. Plaintiffs Jason and Maureen York (the "Yorks") oppose both motions. After careful

consideration, and for the reasons that follow, the Court will grant both motions for summary judgment, and deny as moot the request for judgment under Rule 54(b).

I

In February 2004, Jason York, a Major in the United States Marine Corps then stationed in Texas, received transfer orders to relocate to Rhode Island. The Yorks arranged to have their household goods shipped under the direction of the Department of Defense ("DOD"). To that end, the Joint Personal Property Shipping Office ("JPPSO"), an office within the DOD, issued a Government Bill of Lading ("GBL") for the Yorks' interstate shipment. The GBL identified Day as the responsible transportation company with instructions to store the goods in transit prior to delivery. Williams, Day's disclosed booking agent,[1] hired Apollo Van Lines, Inc. ("Apollo") to transport the goods to Rhode Island,[2] where Andrews would store them until the Yorks could move into their house. The goods arrived undamaged in Rhode Island on or about June 16, 2004. While in storage, however, the goods suffered considerable mold damage. Nevertheless, Andrews delivered the damaged goods to the Yorks' house on August 16, 2004, pursuant to

[1] Under an existing agreement, Williams was responsible for arranging shipments from the Yorks' military installation on Day's behalf.

[2] Apollo was dismissed from this case with prejudice pursuant to a stipulation of the parties.

the GBL. The damaged goods quickly befouled the living areas of the house, which the Yorks vacated pending remediation.

In October 2004, the Yorks sued Day, Apollo, and Andrews in state court, alleging several counts all sounding in negligence. The complaint did not specify damages. On November 30, 2004, Day served the Yorks with a request to admit that the amount in controversy was not above $10,000; they denied it. See 28 U.S.C. § 1337(a) (providing that the federal district courts shall have original jurisdiction in any proceeding arising under an act of Congress regulating commerce only if the matter in controversy for each bill of lading exceeds $10,000). On December 29, 2004, Day, with the express consent of Andrews and Apollo, removed the case to the federal court. See 28 U.S.C. §§ 1441(b), 1446(b) (providing that if the case stated in the initial pleading is not removable, a defendant may file a notice of removal within thirty days after receipt of a paper showing that the case is removable). In its notice of removal, Day posited that removal was proper due to this Court's exclusive jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), which, according to Day, preempted the Yorks' negligence claims. The Yorks did not move to remand; rather, they amended their Complaint by adding Carmack Amendment claims against each Defendant, and modifying the negligence allegations in an attempt to avoid preemption. Day then filed a third-party

complaint against Williams for indemnity and apportionment. The Yorks, in turn, amended their Complaint a second time, adding a negligence count against Williams and another against Day, essentially for hiring Williams.

All told, the Second Amended Complaint advances nine counts; two of them (Counts IV and V, both claims against Apollo) have since been dismissed by stipulation of the parties. (See supra note 2.) The seven remaining counts allege as follows: Count I (Carmack Amendment claim against Day); Count II (negligent remediation against Day); Count III (negligent brokerage services against Day); Count VI (Carmack Amendment claim against Andrews); Count VII (negligent bailee against Andrews); Count VIII (negligence in making dwelling uninhabitable against Andrews); Count IX (negligent brokerage services against Williams). Collectively, the present motions seek summary judgment on all remaining counts.

II

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When

deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party," id. at 960 (internal quotation marks and citation omitted), and an issue of fact is "material" "only when it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996). Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to show "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Having established this, the burden then falls upon the nonmoving party, who must oppose the motion by presenting facts that demonstrate a genuine trialworthy issue remains. Cadle, 116 F.3d at 960. This burden can be satisfied by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993).

III

Even though the Yorks did not challenge removal, this Court is obliged to scrutinize the basis of its jurisdiction sua sponte. See 28 U.S.C. § 1447(c) (giving plaintiffs thirty days from removal in which to seek remand, but requiring remand "at any time before final judgment [if] it appears that the district court lacks subject matter jurisdiction"); Diaz-Rodriquez v. Pep Boys Corp., 410 F.3d 56, 58-59 (1st Cir. 2005) (remanding so that the district court could remand the case to the state court because it was improvidently removed, even though removal went unchallenged below); see also Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004) ("Federal courts are expected to monitor their jurisdictional boundaries vigilantly and to guard carefully against expansion by distended judicial interpretation."). This is especially true where, as here, that basis is not readily apparent.

A civil action filed in a state court may be removed to federal court if at least one of the claims arises under federal law. See 28 U.S.C. § 1441. A claim "arises under" federal law "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (describing this inquiry as the "well-pleaded complaint rule"); see also Louisville & Nashville R.

Co. v. Mottley, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). Under the rule, a federal claim must be alleged affirmatively: "It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States." Motley, 211 U.S. at 152; see also Taylor v. Anderson, 234 U.S. 74, 75-76 (1914) (holding that whether the case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose"). This includes defenses anticipated in a complaint that rely on the preemptive effect of a federal statute, "even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 14 (1983); see also Ten Taxpayer Citizens Group v. Cape Wind Assoc., LLC, 373 F.3d 183, 191 (1st Cir. 2004) (applying the rule to a claim of preemption under the Magnuson-Stevens Act). Thus, generally speaking, and absent diversity jurisdiction,[3] a case is not

[3] At least two of the parties (the Yorks and Andrews C both citizens of Rhode Island) were nondiverse, foreclosing removal based on diversity of citizenship. See Diaz-Rodriguez v. Pep Boys

removable unless the complaint affirmatively alleges a federal claim.

In the present case, at the time of removal, the claims in the Yorks' Complaint relied exclusively on state law. This is not the end of the inquiry, however. A state claim may nevertheless be removed to federal court, as an exception to the well-pleaded complaint rule, "when a federal statute wholly displaces the state-law cause of action through complete pre-emption."[4] Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8(2003) (involving the National Bank Act); see also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (involving the Employee Retirement Income Security Act); AVCO Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (involving the Labor Management Relations Act). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and is thus removable under § 1441(b). Beneficial, 539 U.S. at 8. Courts that have addressed this question directly agree that the Carmack

Corp., 410 F.3d 56, 58 (1st Cir. 2005) (holding that diversity of citizenship is not a basis for removal unless diversity is complete; "that is, when no plaintiff is a citizen of the same state as any defendant").

[4] The only other exception is when Congress expressly provides for removal of such actions even when they assert only state-law claims. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 484-85 (1999) (involving the Price-Anderson Act, which contains an unusual preemption provision). However, the Carmack Amendment contains no such language, so this exception does not apply.

Amendment completely preempts state claims based on the loss or damage of goods shipped through interstate commerce. E.g., Hall v. N. Am. Van Lines, Inc., 476 F.3d 683, 687-89 (9th Cir. 2007); Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003); cf. Rini v. United Van Lines, Inc., 104 F.3d 502, 507 (1st Cir. 1997) (noting, outside the removal context, that "our ruling [that the Carmack Amendment preempts the plaintiff's claims] preserves the uniformity of the federal scheme by protecting the federal government's exclusive jurisdiction over the shipper-carrier relationship") (emphasis supplied). For reasons more fully discussed below, the Court finds that the Yorks' stated claims fall within the Carmack Amendment's sphere of complete preemption. Accordingly, those claims were removable once the Yorks admitted that the amount in controversy exceeded $10,000.[5] See §§ 1337(a).

As an aside, the rather unique circumstances of this case present an additional and independent basis for removal jurisdiction. After Day removed the case, the Yorks amended their Complaint with three claims under the Carmack Amendment. Because the Yorks admit that the matter in controversy exceeds $10,000, § 1337(a), these claims squarely present a federal question that

---

[5] Of course, if only one of the state claims fell within this sphere of complete preemption, the other claims would still be removable under 28 U.S.C. 1367(a). Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 n.3 (2003) (explaining that state claims can be removed under the supplemental jurisdiction statute as long as another claim in the complaint is removable).

satisfies the "arising under" requirement of § 1441(b). Adding these claims to the Complaint would have cured any jurisdictional defect that existed at the time the case was removed. Cf. Caterpillar Inc. v. Lewis, 519 U.S. 61, 75-78 (1996) (involving the dismissal of a dispensable nondiverse party in the context of removal based on diversity of citizenship). Consequently, even if the Carmack Amendment did not completely preempt one or all of the state claims, § 1447(c) would not require remand. Nor could the Yorks challenge removal at this point (to the extent that they would); by failing to seek remand within thirty days, they have waived any statutory objection to improper removal. Cf. Caterpillar, 519 U.S. at 74-78 (rejecting a statutory objection to removal because the jurisdictional defect had been cured, even though the statutory objection itself had been preserved).[6]

[6] Under the circumstances of this case, a similar "fix" is unavailable under the diversity statute. True, the Yorks moved to Alabama after filing the original Complaint (thus restoring complete diversity), but a change in the citizenship of a continuing party alone cannot cure a jurisdictional defect that existed at the time of filing. Grupo Dataflex v. Atlas Global Group, L.P., 541 U.S. 567, 574-75 (2004). Moreover, Andrews appears to be an indispensable party; it therefore cannot be dismissed under Fed. R. Civ. P. 21. See Newman-Green, Inc. v. Alfonzo-Larraine, 490 U.S. 826, 832-38 (1989) (recognizing that federal courts may dismiss a dispensable nondiverse party from a case under Rule 21 to preserve diversity jurisdiction); see also DCC Operating, Inc. v. Siaca (In re Olympic Mills), 477 F.3d 1, 8-12 & n.10 (1st Cir. 2007) (involving the intervention of a dispensable nondiverse party).

The short of the matter is that Day's basis for removal jurisdiction was, if not fully explained, nonetheless correct.

IV

Section 14706(a)(1) of Title 49 of the United States Code, routinely referred to as the Carmack Amendment,[7] in pertinent part provides:

> A carrier providing transportation . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . .

49 U.S.C. § 14706(a)(1). The Carmack Amendment "provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment." Roberts v. N. Am. Van Lines, Inc., 394 F. Supp. 2d 1174, 1179 (N.D. Cal. 2004); Gordon v. United Van Lines, Inc., 130 F.3d 282, 285-86 (7th Cir. 1997). Prior to its enactment, "the liability of carriers for loss of, or damage to interstate shipments was determined by common law or the law of the states." Roberts, 394 F. Supp. 2d at 1179. Upon the passage of the Carmack Amendment, however, the "regulations and policies of particular States upon

[7] Formerly 49 U.S.C. § 11707(a)(1).

the subject of the carrier's liability for loss or damage to interstate shipments and the contracts of carriers with respect thereto," became superceded by federal law. Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 603 (1915).

The principle purpose of the Carmack Amendment was "to achieve national uniformity in the liability assigned to carriers." Rini, 104 F.3d at 504; see, e.g., New York, New Haven & Hartford R.R. Co. v. Nothnagle, 346 U.S. 128, 131 (1953); Atchison, Topeka & Santa Fe Ry. Co. v. Harold, 241 U.S. 371, 378 (1916). Through the enactment, "Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." Rini, 104 F.3d at 504. The Carmack Amendment exists to provide "a measure of predictability for interstate carriers in the exposure to damages they face." Gordon, 130 F.3d at 287. To accomplish this goal, "the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods." Smith v. United Parcel Serv. (UPS), 296 F.3d 1244, 1246 (11th Cir. 2002).

"The notion that federal law reigns supreme and preempts state law when uniformity on a national level is required is one of long standing." Cleveland v. Beltman N. Am. Co., Inc., 30 F.3d 373, 378 (2nd Cir. 1994). In that vein, the preemptive scope of the Carmack

Amendment is far-reaching. See Adams Express Co. v. Croninger, 226 U.S. 491, 505-06 (1913) (observing that the Carmack Amendment covers "[a]lmost every detail of the subject . . . so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it"); see also Se. Express Co. v. Pastime Amusement Co., 299 U.S. 28 (1936) (preempting a claim for negligence for failure to deliver a film reel on time); Charleston, 237 U.S. 597 (preempting a state statute that imposed a penalty on the shipper for failure to pay claims within forty days).

The Carmack Amendment, with few exceptions, "provide[s] the exclusive cause of action for loss or damage to goods arriving from the interstate transportation of those goods by a common carrier." Harris v. Crown Moving, No. 07-CV-126-JLQ, 2007 WL 1724299 at *2 (E.D. Wash. June 14, 2007); Hall, 476 F.3d at 688. However, though "the Carmack Amendment's preemptive scope is broad, . . . it is not all-inclusive." Schwarz v. Nat'l Van Lines, Inc., No. 03 C 7096, 2004 WL 1166632 at *4 (N.D. Ill. May 21, 2004). Rather, there is an exception to the Amendment's seemingly overarching preemptive powers, such that "liability arising from separate harms-apart from the loss or damage of goods-is not preempted." Rini, 104 F.3d at 506. This exception has been embraced widely, resulting in the general rule that while "situations may exist in which the Carmack

Amendment does not preempt all state and common law claims . . . only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption." Smith, 296 F.3d at 1248-49; see also Gordon, 130 F.3d at 289 ("the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce"); Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 383 (5th Cir. 1998).

Some courts have recognized that claims for intentional torts, and specifically intentional infliction of emotional distress, may, under certain circumstances, be separate and distinct enough to escape the preemptive powers of the Carmack Amendment.[8] See generally Rini, 104 F.3d at 506 ("a claim for intentional infliction of emotional distress alleges a harm to the shipper that is independent from the loss or damage to goods and, as such, would not be preempted"); Gordon, 130 F.3d at 286; Hubbard v. All States Relocation Servs., Inc., 114 F. Supp. 2d 1374, 1380 (S.D. Ga. 2000); but see Moffit v. Bekins Van Lines Co., 6 F.3d 305, 307 (5th Cir. 1993) (holding that the Carmack Amendment preempts state law

---

[8] Despite peppering their briefs with references to allegedly "intentional" acts committed by the Defendants, Plaintiffs' Second Amended Complaint is devoid of any intentional claims. As such, this writer will not address whether Defendants' allegedly intentional conduct falls outside the preemptive scope of the Carmack Amendment.

claims including those for intentional and negligent infliction of emotional distress); Glass v. Crimmins Transfer Co., 299 F. Supp. 2d 878, 887 (C.D. Ill. 2004) (where claims for emotional distress and personal injury "arose directly from the carrier's mis-handling of the property and the subsequent claims," preemption applied). However, there is little explicit guidance as to what other claims may reside outside the reach of the Amendment.

Based on the reasoning in Rini, the Carmack exception is a narrow one, as preemption applies not only to claims arising out of the physical transport of goods, but also from the claims process itself. Rini, 104 F.3d at 506 (Carmack preemption covers "all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims"). Thus, to avoid preemption a party must allege conduct on the part of the carrier that is independent from the shipping and transportation of goods at issue, and even from the claims process that may follow - something akin to an allegation of assault and injury inflicted by the carrier upon the shipper. Rini, 104 F.3d at 506; see also Smith, 296 F.3d at 1249 ("separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment"); Roberts, 394 F. Supp. 2d at 1180 ("the Carmack Amendment preempts claims based on loss or damage to goods shipped in interstate commerce while claims

based on conduct separate and distinct from the delivery, loss of, or damage to goods survive preemption") (emphasis added).

Plaintiffs argue that the harms complained of in the Second Amended Complaint occurred after the goods arrived at their new Rhode Island home, that the harms were to the Yorks themselves, personally and financially, rather than to their transported items, and that as a result, preemption does not apply. However, Plaintiffs do not present evidence of any conduct separate and apart from the transport of their goods and from the claims process undertaken by the parties after the delivery of the moldy goods.[9] Rather, Plaintiffs seek compensation for their damaged items, and remuneration in the form of "damages for the forced abandonment of their home; expenses for lodging, meals and associated incidental costs; the loss of their monthly housing allowance from the military; damage to Major York's military career; and physical and emotional pain and suffering." As discussed below, such damages stem directly from the shipment and delivery of their goods, and as such, fall under the Carmack umbrella.

---

[9] In their opposition briefs, Plaintiffs state that the harms alleged "are harms to the Yorks personally as a consequence of the defendants' delivery of the moldy goods into the Yorks' home," and that their claims "are based on defendants' actions in delivering the mold damaged goods to the York residence after they knew the goods were damaged." (Emphasis added.) These assertions are at odds with Plaintiffs' argument that the harms alleged stem from conduct separate and distinct from the transportation process.

Under a set of facts akin to those alleged here, the Court in Glass, 299 F. Supp. 2d at 883, 890, granted summary judgment to the defendant carriers on the shippers' claims for breach of contract, fraudulent concealment, and negligence, as well as claims for emotional distress, personal injury, and punitive damages. There, the plaintiffs contracted with a mover, who in turn designated an agent for transportation and other moving services. That agent packed the plaintiffs' goods, moved them to a storage facility, and eventually transported the goods to plaintiffs' new home. While in storage, the plaintiffs' goods were damaged or destroyed by flooding in the warehouse which caused mold, mildew, and fungus to envelop the plaintiffs' goods. Over a year later, the plaintiffs' goods were moved into their new home by defendants, where the damage was evident to both the plaintiffs and to the defendant movers. Despite this, the items remained in the home for an unspecified period, and as a result, the plaintiffs sought damages for both the damaged items and for health problems allegedly resulting from the mold and mildew contamination. Based on the facts alleged, the court concluded that all of the plaintiffs' non-Carmack claims were preempted, as they "ar[o]se directly from and [were] based solely upon loss of and/or damage to the property that the [plaintiffs] consigned to the defendants for shipment." Id. at 887. Because the plaintiffs' claims arose directly out of the

contractual relationship between shipper and carrier, no viable tortious conduct existed independent of the shipment, and preemption governed.

In a similar case of mold-contamination, the court in Tayloe v. Kachina Moving & Storage, Inc., 16 F. Supp. 2d 1123 (D. Ariz. 1998) granted summary judgment on the plaintiff-shippers' state law claims for negligence and breach, where plaintiffs sought actual and consequential damages for mold-related decontamination and personal injury resulting from the delivery of goods that had become wet and moldy in transit. In that case, while the court did not address the issue of whether the "separate and distinct" exception to Carmack preemption applied, it nonetheless explicitly held that the plaintiffs' claims "ar[o]se out of the interstate transportation of their household goods," and thus dismissed the claims. Id. at 1128. The Tayloe court refused to grant summary judgment on the plaintiffs' claim for special and consequential damages, finding there to be a triable issue of fact "as to whether Defendants were put on notice of the need to take special precautions with respect to the transportation and storage" of the plaintiffs' goods. Id. at 1229. There, the plaintiffs allegedly gave specific notice to the defendants of Mrs. Tayloe's allergies and the need to be particularly careful in the transport and storage of their goods so as to avoid exposure to mold and other

allergens. Because Plaintiffs here have failed to allege any facts sufficient to raise such a notice issue, the scenario is inapplicable to this case.

Plaintiffs here seem to rest on their belief that because the harm alleged goes beyond physical damage and destruction to their goods and furniture, their claims fall outside the preemptive scope of the Carmack Amendment. However, as the above cases reveal, courts consistently have found that Carmack preemption covers nearly all damages arising out of the transportation and claims process. Claims such as those in Tayloe and Glass, based on lingering and consequential effects of conduct performed in the transportation, shipment, and claims process are subject to preemption, regardless of whether the alleged harm is to the person or to the property. See also Strike v. Atlas Van Lines, Inc., 102 F. Supp. 2d 599, 601 (M.D. Pa. 2000) (where gasoline spilled on goods during transport and exposed shippers to noxious fumes causing lingering health problems, and where damages went beyond the loss of or value of the property itself, plaintiffs' claims were "not separate from the matter of the alleged damage or injury to the goods," and thus were within the scope of the Carmack Amendment); Power Standards Lab, Inc. v. Fed. Express Corp., 127 Cal. App. 4th 1039, 1048 (2005) (Carmack preemption applies to allegations stemming from "how the carrier handles claims for

damage to the shipper's property"); Alessandra v. Mullen Bros., Inc., No. 98-5967, 1999 WL 959684 (Mass. Super. Ct. Sept. 22, 1999) (dismissing shipper's claims, in reliance on Rini, where plaintiff suffered disabling health problems as a direct result of pesticide that had been spilled on her belongings while in storage by the defendant mover, and finding that because the plaintiff's injuries were so closely related to the performance of the shipping contract, preemption applied).

None of the facts alleged by Plaintiffs give rise to conduct or harm sufficiently separate and distinct from the shipment and claims process as to warrant exemption from the preemptive reach of the Carmack Amendment. As to Defendant Day, Plaintiffs have alleged both negligent remediation (Count II) and negligent broker liability (Count III). As to the negligence claim, it is well established that causes of action arising out of the claims process are covered by the Carmack Amendment; likewise, while Plaintiffs allege Day to have been negligent in its engagement of Williams Moving to facilitate the movement of the Yorks' property, their attempt to circumvent the Carmack Amendment fails. The role played by Day clearly falls within the Carmack Amendment, particularly where the Amendment defines covered transportation services as being "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage,

handling, packing, [and] unpacking." See 49 U.S.C. § 13102 (23)(B); see also Glass, 299 F. Supp. 2d at 884 (Carmack Amendment covered the services of United Van Lines, whose sole role was to engage agents for transportation and related services). Thus, any allegation that Day served any role other than as a covered carrier, is without merit. Inasmuch as the Plaintiffs have asserted a claim for negligent brokerage against Defendant Williams (Count IX), the disclosed agent of Day, the same reasoning applies.[10]

As to Defendant Andrews, Plaintiffs allege negligence as bailee (Count VII) and negligence in making the dwelling uninhabitable (Count VIII). Plaintiffs provide no legal or factual support for their claim that Andrews owed to Plaintiffs any separate duties as a bailee. While some courts have recognized

[10] Despite asserting negligent brokerage claims against both Defendants Day and Williams, and a negligent bailee claim against Defendant Andrews, Plaintiffs fail to provide support for or develop any legal argument on these points. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Massey v. Stanley-Bostitch, Inc., 255 F. Supp. 2d 7, 16 (D.R.I. 2003). Plainly, "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal quotation marks and citation omitted). Here, Plaintiffs failed in their obligation to research, develop, and assert any argument as to the negligent brokerage and bailee claims, and it is not this Court's role to "cast about blindly" for a basis upon which to deny Defendants' summary judgment motion as to these claims. See Hadaja, Inc. v. Evans, 263 F. Supp. 2d 346, 353 (D.R.I. 2003).

that "carriers may be liable to shippers in tort for incidental harms associated with the loss or damage of cargo," Id., at 886 (quoting N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc., 89 F.3d 452, 458 (7th Cir. 1996)), including liability of a bailee to its bailor, such claims are viable only if the "claim for relief does not depend upon existence of a contract." Id.; Starmakers Publ'g Corp. v. Acme Fast Freight, Inc., 615 F. Supp. 787, 791 (S.D.N.Y. 1985). Here, the only duty allegedly breached was the duty to exercise care in the storage and delivery of Plaintiffs' goods, conduct clearly within the ambit of the Carmack Amendment, and clearly part and parcel of the contract entered into by Plaintiffs for the shipment of their property. Plaintiffs' negligence claim against Andrews fails for all the reasons described above, as the delivery by Andrews of Plaintiffs' goods, the conduct which allegedly caused the dwelling to become uninhabitable, is neither separate nor distinct from the shipment, transportation, and claims process.

Having declared Plaintiffs' common law claims against Defendants Day, Andrews, and Williams preempted by the Carmack Amendment, this Court moves to Plaintiffs' Carmack claims against Defendants Day (Count I) and Andrews (Count VI). Defendants have moved for summary judgment on all Counts in the Second Amended Complaint, including those brought under the Carmack Amendment.

Plaintiffs fail to address Defendants' assertions as to those claims. Furthermore, while Day seeks summary judgment limiting Plaintiffs' recovery to contractually agreed-upon $15,000, Andrews asserts that the Carmack claims should be barred as a matter of law because Plaintiffs' have already received the maximum recovery possible under the Carmack Amendment, and because Andrews, as Day's agent, cannot be held liable to Plaintiffs for any harm to themselves or their goods.

Plaintiffs have neither responded to nor rebutted Defendants' legal and factual assertions as to the Carmack claims. Therefore, this Court finds that Plaintiffs' claims against Defendants Day and Andrews are limited to $15,000, based on the per pound released valuation terms of the agreement into which the Yorks voluntarily entered. However, based on the parties' submissions, it is not entirely clear whether such amounts already have been paid to the Yorks in satisfaction of their Carmack claims. Defendants Day and Williams assert that as of September 2004, they made payments to the Yorks totaling $10,696.24, whereas Defendant Andrews claims to be free of liability due to Defendant Williams having already paid $15,000 on account of damage to the Yorks' goods.[11] Plaintiffs fail

[11] In its papers, Defendant Day has agreed to the entry of Final Judgment against it in the amount of $15,000 on the Carmack Amendment claims.

to assert any facts relating to payments received from any of the Defendants.

Irrespective of these discrepancies, and based upon the above, the Court Orders as follows: 1) Defendants' liability for the harm alleged by Plaintiffs is limited by the Carmack Amendment; 2) For the reasons stated above, Defendants' liability under the Carmack Amendment is capped at $15,000; 3) Defendant Day is liable to Plaintiffs in the amount of $15,000 based upon its stipulation to the entry of Final Judgment against it;[12] and 4) Any payments already made by Defendants may be credited against said $15,000.

It is so ordered.

William E. Smith
United States District Judge
Date: 11/20/07

[12] While Plaintiffs did not challenge Defendant Andrews' argument as to its liability-limiting status as Day's agent, this Court need not address the issue, as Day's assumption of Carmack liability over Plaintiffs' claims renders the issue moot.